THE O'MARA LAW FIRM, P.C.
WILLIAM M. O'MARA (Nevada Bar No. 837)
DAVID C. O'MARA (Nevada Bar No. 8599)
311 East Liberty Street
Reno, NV 89501
Telephone: 775/323-1321
775/323-4082 (fax)

Attorneys for Plaintiff

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| PATRICK SWEENEY, Individually and on Behalf of All Others Similarly Situated, | ) ) ) No.  ) ) CLASS ACTION |
| Plaintiff, | ) ) COMPLAINT FOR BREACH OF |
| vs. | ) FIDUCIARY DUTIES ) |
| HARBIN ELECTRIC, INC., TIANFU YANG, CHING CHUEN CHAN, BOYD PLOWMAN, DAVID GATTON, YUNYUE YE and LANXIANG GAO, | ) ) ) ) ) |
| Defendants. | ) ) ) ) |

Plaintiff, by his attorneys, submits this complaint against the defendants named herein and alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332(a)(1) and (2) in that plaintiff and defendants are citizens of different states or subjects of a foreign state and the matter in controversy exceeds $75,000, exclusive of interest and costs. The Court also has jurisdiction over this action pursuant to 15 U.S.C. §78bb(f)(3)(A)(i), because it is a class action based on the statutory or common law of Nevada, defendant Harbin Electric, Inc.'s ("Harbin" or the "Company") state of incorporation, and thus may be maintained in federal court. This Court has supplemental jurisdiction under 28 U.S.C. §1367.

2.      This Court has jurisdiction over each defendant because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

3.      Venue is proper in this District pursuant to 28 U.S.C. §1391 because Harbin is incorporated in Nevada and defendants include officers and/or directors of a Nevada corporation.

## SUMMARY OF THE ACTION

4.      This is a stockholder class action brought by plaintiff on behalf of the holders of Harbin common stock against Harbin and its Board of Directors (the "Board") arising out of their efforts to complete a management-led buyout of Harbin via an unfair process at a grossly inadequate and unfair price of $24 per share (the "Buyout"). The individuals seeking to purchase the Company include Tianfu Yang ("Yang"), the Company's Chairman and Chief Executive Officer ("CEO"), Hero Wave Investments Limited ("Hero"), a company affiliated with Yang that, collectively with

- 1 -

Yang, controls over 30% of the Company's common stock, and Baring Private Equity Asia Group Limited, the largest regional growth equity firm in Asia (collectively referred to as the "Buyout Group").

5.      In pursuing the unlawful plan to squeeze out Harbin's public stockholders for grossly inadequate consideration, and without a fair process, including full and fair disclosure of all material information, the defendants have breached their fiduciary duties of loyalty, due care, independence, candor, good faith and fair dealing, and/or have aided and abetted such breaches by Harbin officers and directors.  Instead of attempting to obtain the highest price reasonably available for the Company's stockholders, defendants are spending a substantial effort to tailor the Buyout to meet the specific needs of the Buyout Group.

6.      Because defendants dominate and control the business and corporate affairs of Harbin and are in possession of private corporate information concerning Harbin's assets, business and future prospects, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of Harbin, which makes it inherently unfair for them to pursue any proposed transaction wherein they will reap disproportionate benefits to the exclusion of maximizing stockholder value.

7.      In short, the Buyout is designed to unlawfully divest Harbin's public stockholders of a large portion of the valuable assets of the Company for grossly inadequate consideration. Defendants know that the Company possesses numerous assets that will continue to produce substantial revenue and earnings, which defendants wish to keep for themselves. Although the Company has formed a so-called Special Committee to evaluate the Buyout, the Buyout is essentially a *fait accompli* because the Special Committee is acting to appease the Buyout Group,

which has no interest in a fair evaluation of the Buyout.  Accordingly, plaintiff seeks to enjoin the Buyout.

## PARTIES

8.      Plaintiff Patrick Sweeney ("Sweeney") is, and at all times relevant hereto was, a shareholder of Harbin.  Sweeney is a resident of the State of Michigan.

9.      Defendant Harbin is a holding company incorporated in Nevada. Through its U.S. and China-based subsidiaries, it designs, develops, manufactures, supplies and services a wide range of electric motors, including linear motors, specialty micro-motors and industrial rotary motors, with a focus on innovation, creativity and value-added products.

10.     Defendant Yang is and at all relevant times has been the Chairman and CEO of Harbin.  Yang beneficially owns 31.11% of the Company's common stock.  Yang is a resident of China.

11.     Defendant Ching Chuen Chan ("Chan") is a member of Harbin's Board.  Chan is a resident of China.

12.     Defendant Boyd Plowman ("Plowman") is a member of Harbin's Board.  Plowman is a resident of the State of California.

13.     Defendant David Gatton ("Gatton") is a member of Harbin's Board.  Gatton is a resident of the State of Virginia.

14.     Defendant Yunyue Ye ("Ye") is a member of Harbin's Board.  Ye is a resident of China.

15.     Defendant Lanxiang Gao ("Gao") is a member of Harbin's Board.  Gao is a resident of China.

16.     The defendants named above in ¶¶10-15 are collectively referred to herein as the "Individual Defendants."

## DEFENDANTS' FIDUCIARY DUTIES

17.     Where the directors of a publicly traded corporation undertake a transaction that will result in either (i) a change in corporate control or (ii) a break up of the corporation's assets, the directors have an affirmative fiduciary obligation to obtain the highest value reasonably available for the corporation's shareholders, and if such transaction will result in a change of corporate control, the shareholders are entitled to receive a significant premium.  To diligently comply with these duties, the directors and/or officers may not take any action that:

(a)     adversely affects the value provided to the corporation's shareholders;

(b)     will discourage or inhibit alternative offers to purchase control of the corporation or its assets;

(c)     contractually prohibits themselves from complying with their fiduciary duties;

(d)     will otherwise adversely affect their duty to search and secure the best value reasonably available under the circumstances for the corporation's shareholders; and/or

(e)     will provide the directors and/or officers with preferential treatment at the expense of, or separate from, the public shareholders.

18.     In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Harbin, are obligated under Nevada law to refrain from:

(a)     participating in any transaction where the directors' or officers' loyalties are divided;

- 4 -

    (b)  participating in any transaction where the directors or officers receive, or are entitled to receive, a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

    (c)  unjustly enriching themselves at the expense or to the detriment of the public shareholders.

  19.  Plaintiff alleges herein that defendants, separately and together, in connection with the Buyout, are knowingly or recklessly violating their fiduciary duties, including their duties of loyalty, good faith, and independence owed to plaintiff and the other public shareholders of Harbin. Defendants stand on both sides of the transaction, are engaging in self-dealing, are obtaining for themselves personal benefits, including personal financial benefits, not shared equally by plaintiff or the Class (as defined herein), and are choosing not to provide shareholders with all information necessary to make an informed decision in connection with the Buyout and/or are aiding and abetting other defendants' breaches. As a result of defendants' self-dealing and divided loyalties, neither plaintiff nor the Class are being treated fairly in connection with the proposed Buyout.

  20.  Defendants also owe the Company's stockholders a duty of truthfulness under Nevada law, which includes the disclosure of all material facts concerning the Buyout and, particularly, the fairness of the price offered for the stockholders' equity interest. Defendants are knowingly or recklessly breaching their fiduciary duties of candor and good faith by failing to disclose all material information concerning the Buyout, and/or aiding and abetting other defendants' breaches.

  21.  Defendants are knowingly or recklessly breaching their duties of loyalty, good faith, independence and candor in connection with the Buyout, and/or aiding and abetting other

defendants' breaches, and have the burden of proving the inherent or entire fairness of the Buyout, including all aspects of its negotiation, structure, price and terms.

## BACKGROUND

22.     Harbin is a holding company incorporated in Nevada. Through its U.S. and China-based subsidiaries, it designs, develops, manufactures, supplies and services a wide range of electric motors, including linear motors, specialty micro-motors and industrial rotary motors, with a focus on innovation, creativity and value-added products.

23.     Harbin has recently reported excellent financial results and has tremendous prospects. For example, in an August 9, 2010 press release entitled "Harbin Electric Reports Significantly Higher Second-Quarter Earnings," the Company stated:

> Harbin Electric, Inc. ("Harbin Electric" or the "Company"), a leading developer and manufacturer of a wide array of electric motors in the People's Republic of China, today reported its financial results for the second quarter of 2010.
>
> Financial Highlights
>
> – Total revenues were $105.44 million, up 175% from $38.36 million in 2Q09
>
> – Operating income totaled $28.08 million, up 219% from $8.82 million in 2Q09
>
> – Adjusted net income attributable to controlling interest was $24.02 million, up 224% compared to $7.42 million in 2Q09
>
> – GAAP earnings per diluted share attributable to controlling interest were $0.82, compared to a net loss of $0.24 in 2Q09
>
> – Adjusted earnings per diluted share attributable to controlling interest were $0.77 per diluted share, compared to $0.33 in 2Q09
>
> \*       \*       \*
>
> "We are very pleased with our outstanding second quarter earnings," said Mr. Yang, Chairman and Chief Executive Officer of Harbin Electric. "Adjusted net income, by which we judge our management performance, was up 224% year-over-year at $24.02 million. We have made remarkable progress in the restructuring and integration of Xi'an Tech Full Simo Motor, which has led to a significant improvement in our operating efficiency. During this quarter, we restructured its

subsidiaries, acquiring full ownership in four partially owned subsidiaries and disposing of non-strategic businesses. This brings us enhanced synergies across our diversified product lines and strengthens profit margins and earnings power. While our top line benefited from the acquisition of Xi'an Tech Full Simo Motor, earlier strategic moves continued to add to revenues. Weihai revenues were up 39% and oil pumps and coal transportation project performed strongly."

Revenues

For the second quarter of 2010, total revenues were $105.44 million, up 175% compared with $38.36 million in the second quarter of 2009, which was negatively impacted by the global financial crisis. The significant sales growth was mainly the result of higher sales across all product lines and a contribution of $44.57 million from Xi'an Tech Full Simo which was acquired in October 2009. Excluding the acquisition, organic growth was 59% year over year.

By product line, linear motor sales were up 76% driven by higher oil pump sales (150 units in the second quarter of 2010 compared to 105 units in the second quarter of 2009) and revenues from coal transportation project ($5.31 million), which started to contribute in the fourth quarter of 2009. Sales of specialty micro motors were up 77% from the second quarter of 2009. Sales of industrial rotary motors increased from $17.00 million to $68.12 million including $44.57 million from Xi'an Tech Full Simo. Sales of rotary motors at Weihai Tech Full Simo totaled $23.56 million for the quarter, up 39% compared with $17 million in the second quarter of 2009.

International sales totaled $5.60 million, or 5.3% of total sales, for the quarter, an increase of 56% compared with $3.58 million in the second quarter of 2009, when the global economic downturn hit our international business severely. The international sales growth was driven primarily by increased sales in our specialty micro motor and rotary motor products.

\*   \*   \*

Operating Income

Operating income in the second quarter of 2010 totaled $28.08 million, compared with $8.82 million in the second quarter of 2009, representing a 219% year over year growth. Higher operating income was mainly due to increased sales, the acquisition of Xi'an Tech Full Simo, and improved operating efficiency. Total operating costs including selling, general and administrative ("SG&A") expenses and research & development (R&D) expenses totaled $7.25 million, compared with $4.05 million a year ago. The higher operating costs were mainly due to the addition of Xi'an Tech Full Simo, higher expenses related to higher sales such as shipping and handling costs, higher depreciation expense, and higher costs associated with the production start-up at our Shanghai facility. As a percentage of total sales, total operating costs decreased from 10.6% to 6.9%. Operating margin improved to

26.6% in the current quarter from 23.0% in the second quarter of 2009, reflecting a significant improvement in operating efficiency as a result of business integration and consolidation.

\*     \*     \*

Outlook

"Despite concerns about the slowing down of the Chinese economy, we continue to see strong demand for many of our products. As we expect continued strong order volume for our rotary motors, our focus in the months ahead is to address production capacity constraints at our Weihai and Xi'an facilities. In our specialty motor lines including linear motors and specialty micro-motors, where speed of product development and market launch is the key to future growth, we have made substantial capital investments. We believe that capacity expansion and the expected and long-awaited launch of new products, coupled with our success in business integration, restructuring, and consolidation, will help us further extend our leadership position in the industry."

24.     These tremendous results came on the heels of earlier excellent results. As the

Company stated in a May 10, 2010 press release entitled "Harbin Electric Delivers Record Quarterly

Earnings":

Harbin Electric, Inc. ("Harbin Electric" or the "Company"), a leading developer and manufacturer of a wide array of electric motors in the People's Republic of China, today reported its financial results for the first quarter of 2010.

Financial Highlights

– Total revenues were $105.49 million, up 243% from $30.72 million in 1Q09

– Operating income totaled $27.73 million, up 246% from $8.03 million in 1Q09

– Adjusted net income attributable to controlling interest (excluding non-cash item due to change in fair value of warrant) was $20.79 million, up 242% from $6.08 million in 1Q09

– GAAP earnings attributable to controlling interest were $0.66 per diluted share, compared with $0.39 in 1Q09

– Adjusted earnings attributable to controlling interest (excluding non-cash item due to change in fair value of warrant) were $0.66 per diluted share, compared with $0.27 in 1Q09

\*     \*     \*

- 8 -

Revenues

In the first quarter of 2010, total sales more than tripled to $105.49 million compared to $30.72 million in 1Q09, which was negatively impacted by the global financial crisis. The acquisition of Xi'an Tech Full Simo Electric Motor Co. Ltd. ("Xi'an Simo") in October 2009 contributed $45.03 million. Excluding this acquisition, sales increased by 97% year over year. The higher sales were primarily driven by increased sales in all product lines resulting from strong economic recovery in China.

By product line, linear motor sales were up 60% driven by higher oil pumps sales (105 units in 1Q10 compared to 30 units in 1Q09) and sales from our linear motor propulsion systems developed for coal transportation trains ($5.5 million), which started to contribute in the fourth quarter of 2009. Sales of specialty micro motors were up 165% from 1Q09. Sales of industrial rotary motors increased from $10.8 million to $67.5 million including $45.03 million from Xi'an Simo. Sales of rotary motors at our Weihai facility more than doubled.

International sales totaled $7.06 million, up 117% compared with $3.26 million in 1Q09, when the global economic downturn hit our international business severely. The international sales growth was driven by increased sales in our specialty micro motor and rotary motor products.

*     *     *

Net Income

Net income attributable to controlling interest in the quarter totaled $20.55 million ($0.66 per diluted share), up 137% from $8.65 million ($0.39 per diluted share) in 1Q09. Excluding non-cash charges due to the change in fair value of warrants related to the debt issued in 2006, adjusted net income attributable to controlling interest in the quarter totaled $20.79 million ($0.66 per diluted share), compared with $6.08 million ($0.27 per diluted share) a year ago. The higher net income was primarily driven by higher sales across all product lines, contributions from the acquisition of Xi'an Simo, and higher other income ($1.12 million in 1Q10 versus $0.54 million in 1Q09).

*     *     *

Operating Income

Operating income totaled $27.73 million, compared with $8.03 million in 1Q09, representing a 246% year over year growth. Higher operating income was mainly due to increased sales and the acquisition of Xi'an Simo. Total operating costs including selling, general and administrative ("SG&A") expenses and research & development (R&D) expenses totaled $8.01 million, compared with $2.90 million a year ago. The higher operating costs were mainly due to the addition of Xi'an

- 9 -

Simo, higher expenses related to higher sales such as shipping and handling costs, higher depreciation expense, and higher costs associated with the production start-up at our Shanghai facility. As a percentage of total sales, the Company's total operating costs decreased from 9.4% to 7.6%. Operating margin was relatively stable at 26.3% and 26.1% in 1Q10 and 1Q09, respectively.

"Despite a long Chinese new-year holiday, we maintained the momentum from the fourth quarter 2009 and delivered another set of strong results, thanks to the hard work of our employees even during the traditional holiday season. While we are quite pleased to see the significant impact of our recent acquisition on all our revenues and profits, we are very satisfied with the progress made across all our existing business lines and in our international sales." said Mr. Yang, Chairman and Chief Executive Officer of Harbin Electric.

Outlook

"We believe that our business diversification efforts are paying off. We exited the quarter seeing continued strength in demand, setting us up nicely for the seasonally stronger second quarter. We are also encouraged by signs of stronger global economic activity, particularly in our North American market," commented Mr. Yang.

"We understand that some of our investors are concerned that the recent Chinese government efforts to cool down the real estate market and combat inflation might impact our business negatively. However, we believe that our business is a key foundation of China's overall economic growth and supports a wide range of economic sectors from agriculture to industry and manufacturing. Thanks to our diversification strategy, we do not expect a slowdown in the real estate sector in China to negatively impact our business. We continue to be very focused on restructuring our newly acquired Xi'an Simo business and improving manufacturing efficiency in Weihai. Our first quarter results reflect some early achievements in a very short period of time. We expect to expand on these positive results in the coming quarters."

25.    These results in turn came on the heels of record fourth quarter and fiscal year 2009

results, as the Company disclosed in a March 10, 2010 press release entitled "Harbin Electric

Reports Record Fourth Quarter and Full Year 2009 Results":

Harbin Electric, Inc. ("Harbin Electric" or the "Company"), a leading developer and manufacturer of a wide array of electric motors in the People's Republic of China, today reported its preliminary full-year and fourth quarter 2009 financial results. The Company will release fully audited financials in its 10K filing in the coming days and does not expect any material changes.

Fourth Quarter 2009 Financial Highlights

– Total revenues were $107.2 million, up 209% from $34.7 million in 4Q08

– Adjusted net income attributable to controlling interest (excluding non-recurring items) was $19.4 million, up 220% from $6.0 million in 4Q08

– GAAP earnings attributable to controlling interest were $0.59 per diluted share, compared with $0.27 in 4Q08

– Adjusted earnings attributable to controlling interest (excluding non-recurring items) were $0.62 per diluted share

Fiscal Year 2009 Financial Highlights

– Total revenues were $223.2 million, up 85% from $120.8 million in 2008

– Adjusted net income attributable to controlling interest (excluding non-recurring items) was $43.8 million, up 73% from $25.4 million in 2008

– GAAP earnings attributable to controlling interest were $0.77 per diluted share, compared with $1.19 in 2008

– Adjusted earnings attributable to controlling interest (excluding non-recurring items) were $1.71 per diluted share

\*      \*      \*

In the fourth quarter of 2009, total sales more than tripled to $107.2 million compared to $34.7 million in 4Q08, which was negatively impacted by the global financial crisis. The acquisition of Xi'an Tech Full Simo Electric Motor Co. Ltd. ("Xi'an Simo") in October 2009 contributed approximately $44 million in the fourth quarter. Excluding this acquisition, sales in the fourth quarter increased 82% year over year. The higher sales were primarily driven by increased sales in all product lines resulting from strong economic growth in China. The linear motor propulsion systems developed by the Company for coal transportation trains contributed $7.3 million to total sales as the Company started the delivery during the quarter and 116 oil pumps were sold in 4Q09, up from 31 units in 4Q08.

Net income attributable to controlling interest in the quarter totaled $18.3 million ($0.59 per diluted share), up from $6.0 million ($0.27 per diluted share) in 4Q08. Excluding the $1.04 million non-cash charge for the change in fair value of warrants, adjusted net income for 4Q09 was $19.4 million ($0.62 per diluted share).

\*      \*      \*

For the year 2009, revenues increased by 85% to $223.2 million from $120.8 million in 2008. Strong sales growth resulted from the acquisition of Xi'an Simo

- 11 -

($44 million) as well as higher sales across all product lines. The Company delivered 519 oil pumps compared to 214 units in 2008. Linear motor propulsion systems developed for coal transportation trains contributed $7.3 million to our sales as the Company started to deliver units during the 4th quarter.

Net income attributable to controlling interest in 2009 totaled $19.6 million ($0.77 per diluted share), which included $24.2 million charges related to non-recurring and non-cash items. Excluding these non-recurring items and non-cash charges, adjusted net income attributable to controlling interest for 2009 was $43.8 million ($1.71 per diluted share) compared to net income of $1.19 per diluted share in 2008.

\*     \*     \*

Overall gross profit margin declined to 34.3% in 2009 from 39.3% in 2008 due to changes in the product mix as sales of lower-margin industrial rotary motors expanded, in part as a result of the acquisition of Xi'an Simo. Operating profits in 2009 were $55.8 million compared to $34.4 million in 2008.

"We are extremely pleased to have delivered the best quarter and the best year in our Company's history despite weak economic conditions early on," said Mr. Tianfu Yang , Chairman and Chief Executive Officer of Harbin Electric. "2009 was also a year of great strategic, operational and financial accomplishments as we further strengthened our leadership position in the electric motor industry in China. The acquisition of Xi'an Simo, one of China's leading electric motor companies, and its successful integration allowed us to start realizing synergies and provided a solid platform for continuous growth. Faster economic growth in the second half of the year fueled by the massive government stimulus program created a positive environment for our business. On the financial front, we raised additional equity capital which allowed us to repay a significant portion of our existing indebtedness, complete the acquisition of Xi'an Simo, and maintain a strong balance sheet as we continue to implement our growth strategy. We view these record results, accomplished with the hard work and dedication of our employees, as well as the continuous support of our shareholders, as a validation of our vision, strategic focus and relentless execution."

Looking ahead, Mr. Yang commented, "We are ready to move the Company forward to a sustained profitability in 2010 supported by a solid platform that we have built over the past years as we expect continuous growth and leverage our strong financial position and promising portfolio of products. Although the first quarter is traditionally slower with the long Chinese new-year holiday, we do not expect this seasonality to impact our business significantly compared to the fourth quarter. We also expect that the Chinese government's commitment to sustainable economic growth and the accelerated industrialization and urbanization of China will continue to drive our business and support our long term growth objectives. We look forward to a productive 2010 as we continue to capture the synergies of the Xi'an

Simo acquisition, advance R&D and strengthen growth in all core businesses. We believe that 2010 will be another strong year for Harbin Electric and we remain committed to our strategies to achieve both our near and long term goals and maximize value for our shareholders."

26.     These results in turn followed still other excellent results. As a consequence, the

Company's stock traded at nearly $25 per share in mid-2010, and analysts had target prices

substantially higher than that.

## THE BUYOUT

27.     On October 11, 2010, Harbin's shareholders were dismayed when they learned that

defendants had been diligently working to sell Harbin – to themselves. The Company issued a

release entitled "Harbin Electric, Inc. Announces Receipt of 'Going Private' Proposal at $24.00 Per

Share," which stated:

> Harbin Electric, Inc. ("Harbin" or the "Company"), a leading developer and manufacturer of a wide array of electric motors in the People's Republic of China, today announced that its Board of Directors has received a proposal letter from its Chairman and Chief Executive Officer, Mr. Tianfu Yang ("Mr. Yang") and Baring Private Equity Asia Group Limited ("Baring") for Mr. Yang and an investment fund advised by Baring (the "Baring Fund") to acquire all of the outstanding shares of Common Stock of Harbin not currently owned by Mr. Yang and his affiliates in a going private transaction for $24.00 per share in cash, subject to certain conditions. Mr. Yang owns 31.1% of Harbin's Common Stock. According to the proposal letter, an acquisition vehicle for the purpose of completing the acquisition will be formed and the acquisition is intended to be financed with a combination of debt and equity capital. The proposal letter states that the equity portion of the financing would be provided by Mr. Yang, the Baring Fund and related sources. The proposal letter also states that Goldman Sachs (Asia) LLC ("Goldman") is acting as financial advisor to the acquisition vehicle to be formed by Mr. Yang and the Baring Fund.
>
> Harbin's Board of Directors has formed a special committee of independent directors consisting of David Gatton, Boyd Plowman and Ching Chuen Chan (the "Special Committee") to consider this proposal. The Special Committee intends to retain independent advisors, including an independent financial advisor, to assist it in its work. No decisions have been made by the Special Committee with respect to Harbin's response to the proposal. There can be no assurance that any definitive offer will be made, that any agreement will be executed or that this or any other transaction will be approved or consummated.

28.     The release was false and misleading as the defendants were aware that the so-called "Special Committee" was appointed for the sole purpose of immunizing defendants from liability for their unlawful conduct and the approval of a sale of Harbin to the Buyout Group was a *fait accompli*. Moreover, the $24 per share offered does not properly take into account the expected growth in earnings potential that the Company can expect from its assets and operations.

## DEFENDANTS FAILED TO MAXIMIZE SHAREHOLDER VALUE

29.     As a result of defendants' conduct, Harbin's public stockholders have been and will continue to be denied the fair process and arm's-length negotiated terms to which they are entitled in a sale of their Company.  In order to meet their fiduciary duties, defendants are obligated to refrain from structuring a preferential deal for themselves.

30.     The process used to sell Harbin was defective and did not reflect the true inherent value of the Company, which far exceeds the $24 per share Buyout offer.

## CLASS ACTION ALLEGATIONS

31.     Plaintiff brings this action on his own behalf and as a class action on behalf of all holders of Harbin stock who are being and will be harmed by defendants' actions described below (the "Class").   Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

32.     This action is properly maintainable as a class action.

33.     The Class is so numerous that joinder of all members is impracticable.  According to Harbin's U.S. Securities and Exchange Commission ("SEC") filings, there were more than 31 million shares of Harbin common stock outstanding as of August 6, 2010.

34.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, *inter alia*, the following:

(a)     whether the Individual Defendants are breaching their fiduciary duties of undivided loyalty, independence, or due care with respect to plaintiff and the other members of the Class in connection with the Buyout;

(b)     whether defendants are engaging in self-dealing in connection with the Buyout;

(c)     whether defendants are unjustly enriching themselves and other insiders or affiliates of Harbin;

(d)     whether the Individual Defendants are breaching any of their other fiduciary duties to plaintiff and the other members of the Class in connection with the Buyout, including the duties of good faith, diligence, honesty and fair dealing;

(e)     whether the Individual Defendants are breaching their fiduciary duties of candor to plaintiff and the other members of the Class in connection with the Buyout by failing to disclose all material information concerning the Buyout;

(f)     whether defendants, in bad faith and for improper motives, are impeding or erecting barriers to discourage other offers for the Company or its assets;

(g)     whether the Buyout terms are unfair and inadequate to plaintiff and the other members of the Class; and

(h)     whether plaintiff and the other members of the Class would be irreparably harmed were the Buyout complained of herein consummated.

35.     Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff does not have any interests adverse to the Class.

36.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

37.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

38.     Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

39.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## COUNT I

### Claim for Breach of Fiduciary Duties
### Against the Individual Defendants

40.     Plaintiff repeats and realleges each allegation set forth herein.

41.     The Individual Defendants are knowingly or recklessly and in bad faith violating fiduciary duties of care, loyalty, good faith, candor, and independence owed to the public shareholders of Harbin and have acted to put their personal interests ahead of the interests of Harbin shareholders.

42.     By the acts, transactions and courses of conduct alleged herein, the Individual Defendants, individually and as a part of a common plan, have acted knowingly or recklessly and in bad faith.

43.     The Individual Defendants have knowingly or recklessly and in bad faith violated their fiduciary duties by approving the Buyout without regard to the fairness of the transaction to Harbin shareholders and by failing to disclose all material information concerning the Buyout to such shareholders.

44.     As demonstrated by the allegations above, the Individual Defendants are knowingly or recklessly failing to exercise the care required, and breaching their duties of loyalty, good faith, candor and independence owed to the shareholders of Harbin because, among other reasons:

        (a)     they are taking steps to avoid competitive bidding, to cap the price of Harbin stock and to give the Buyout Group an unfair advantage, by, among other things, failing to solicit other potential acquirers or alternative transactions;

        (b)     they are ignoring or are not protecting against the numerous conflicts of interest resulting from the directors' own interrelationships or connection with the Buyout; and

        (c)     they are failing to disclose all material information that would permit Harbin stockholders to cast a fully informed vote on the Buyout, including both financial information and regulatory information which may materially affect the Company and the Company's shareholders.

45.     Because the Individual Defendants dominate and control the business and corporate affairs of Harbin, and are in possession of private corporate information concerning Harbin's assets, business and future prospects, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of Harbin which makes it inherently unfair for

them to pursue any proposed transaction wherein they will reap disproportionate benefits to the exclusion of maximizing stockholder value.

46.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants are knowingly or recklessly and in bad faith failing to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward plaintiff and the other members of the Class.

47.     Unless enjoined by this Court, the Individual Defendants will continue to knowingly or recklessly and in bad faith breach their fiduciary duties owed to plaintiff and the Class, and may consummate the proposed Buyout which will exclude the Class from its fair share of Harbin's valuable assets and businesses, and/or benefit them in the unfair manner complained of herein, all to the irreparable harm of the Class.

48.     The Individual Defendants are engaging in self-dealing, are not acting in good faith toward plaintiff and the other members of the Class, and knowingly or recklessly have breached and are continuing to breach their fiduciary duties to the members of the Class.

49.     As a result of defendants' unlawful actions, plaintiff and the other members of the Class are being harmed in that defendants will deprive plaintiff and the Class of a fair sale process. Unless the proposed Buyout is enjoined by the Court, the Individual Defendants will continue to knowingly or recklessly and in bad faith breach their fiduciary duties owed to plaintiff and the other members of the Class, will not engage in arm's-length negotiations on the Buyout terms, and will not supply to Harbin's minority stockholders sufficient information to enable them to cast informed votes on the proposed Buyout and may consummate the proposed Buyout, all to the irreparable harm of the members of the Class.

50.     Plaintiff and the other members of the Class have an inadequate remedy at law.  Only

through the exercise of this Court's equitable powers can plaintiff and the other members of the

Class be fully protected from the immediate and irreparable injury which defendants' actions

threaten to inflict.

## COUNT II

### Claim for Aiding and Abetting Breaches of Fiduciary Duty
### Against Harbin

51.     Plaintiff repeats and realleges each allegation set forth herein.

52.     Harbin aided and abetted the Individual Defendants in breaching their fiduciary duties

owed to the public shareholders of Harbin, including plaintiff and the other members of the Class.

53.     The Individual Defendants owed to plaintiff and the other members of the Class

certain fiduciary duties as fully set out herein.

54.     By committing the acts alleged herein, the Individual Defendants breached their

fiduciary duties owed to plaintiff and the other members of the Class.

55.     Harbin colluded in or aided and abetted the Individual Defendants' breaches of

fiduciary duties, and was an active and knowing participant in the Individual Defendants' breaches

of fiduciary duties owed to plaintiff and the other members of the Class.

56.     Plaintiff and the other members of the Class shall be irreparably injured as a direct

and proximate result of the aforementioned acts.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff demands injunctive relief, in his favor and in favor of the Class and

against defendants as follows:

A.     Declaring that this action is properly maintainable as a class action;

B.      Declaring and decreeing that any Buyout agreement entered into by the Company was approved in breach of the fiduciary duties of defendants and is therefore unlawful and unenforceable;

C.      Enjoining defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Buyout, unless and until the Company adopts and implements a fair sale process;

D.      Directing defendants to exercise their fiduciary duties to obtain a transaction which is in the best interests of Harbin's shareholders;

E.      Rescinding, to the extent already implemented, the Buyout or any of the terms thereof;

F.      Awarding plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

G.      Granting such other and further equitable relief as this Court may deem just and proper.

November 1, 2010.                         THE O'MARA LAW FIRM, P.C.
                                          WILLIAM M. O'MARA
                                          DAVID C. O'MARA

                                          _____
                                                  DAVID C. O'MARA

                                          311 East Liberty Street
                                          Reno, NV  89501
                                          Telephone:  775/323-1321
                                          775/323-4082 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
RANDALL J. BARON
A. RICK ATWOOD, JR.
DAVID T. WISSBROECKER
DAVID A. KNOTTS
EUN JIN LEE
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

RYAN & MANISKAS, LLP
RICHARD A. MANISKAS
995 Old Eagle School Road, Suite 311
Wayne, PA 19087
Telephone: 484/588-5516
484/450-2582 (fax)

Attorneys for Plaintiff

S:\CptDraft\Deal\Cpt Harbin Electric_Fed.doc