1  KIRK B. LENHARD, ESQ.
   Nevada Bar No. 1437
2  TAMARA BEATTY PETERSON, ESQ.
   Nevada Bar No. 5218
3  BROWNSTEIN HYATT FARBER SCHRECK, LLP
   100 N. City Parkway, Suite 1600
4  Las Vegas, NV 89106
   Telephone: (702) 382-2101
5  Facsimile:  (702) 382-8135
   Email: klenhard@bhfs.com
6  Email: tpeterson@bhfs.com
   *Attorneys for Defendant Harbin Electric, Inc.*

7

8                 **UNITED STATES DISTRICT COURT**

9                     **DISTRICT OF NEVADA**

10 PATRICK SWEENEY, Individually and          CASE NO.:  3:10-CV-00685-LRH-VPC
   on Behalf of All Others Similarly Situated,
11                                            **DEFENDANT HARBIN ELECTRIC, INC.'S**
              Plaintiff,                      **MOTION TO DISMISS AND SUPPORTING**
12                                            **MEMORANDUM OF LAW**
   v.
13
   HARBIN ELECTRIC, INC., TIANFU
14 YANG, CHING CHUEN CHAN, BOYD
   PLOWMAN, DAVID GATTON,
15 YUNYUE YE and LANZIANG GAO
16            Defendant(s).
17
18
19
20
21
22
23
24
25
26
27
28

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................. iii

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 3

    A.    The Proposed Transaction ........................................................................ 3

    B.    The Numerous, Duplicative Actions Commenced by the Class Action Lawyers ....................................................................................................... 5

        1.    The Nevada State Court Actions ................................................... 5

        2.    The Nevada Federal Court Actions ............................................... 7

        3.    The New York State Court Actions ............................................... 7

ARGUMENT .................................................................................................................... 8

I.    THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT-MATTER JURISDICTION. ...................................................................................... 8

    A.    Plaintiff Fails to Plead Facts Demonstrating that His Claims Satisfy the Jurisdictional Amount in Controversy. ................................................... 8

    B.    Plaintiff Fails to Demonstrate that this Court has Subject-Matter Jurisdiction under SLUSA. ..................................................................... 10

    C.    Plaintiff's Claims are Not Yet Ripe For Adjudication. .......................... 12

II.    PLAINTIFF FAILS TO STATE A COGNIZABLE CLAIM FOR BREACH OF FIDUCIARY DUTY BECAUSE HE FAILS TO PLEAD FACTS TO REBUT THE BUSINESS JUDGMENT RULE. ............................................................... 13

        1.    Plaintiff's Allegation that Defendants Stand to Benefit from the Proposed Transaction. ............................................................... 16

        2.    Plaintiff's Allegation that Defendants Are Withholding Relevant Information. ................................................................................. 17

        3.    Plaintiff's Allegation that Defendants Are Not Taking Appropriate Steps to Evaluate the Proposal. .............................. 17

III.    PLAINTIFF'S CLAIMS SHOULD BE DISMISSED OR, ALTERNATIVELY, STAYED TO AVOID DUPLICATIVE LITIGATION. .................................... 18

CONCLUSION ............................................................................................................... 22

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

# TABLE OF AUTHORITIES

**CASES**                                                                                          **PAGE(S)**

*A.R. DeMarco Enters., Inc. v. Ocean Spray Cranberries, Inc.,*
   No. Civ. A. 19133-NC, 2002 WL 31820970 (Del. Ch. 2002)..............................................13

*Ashcroft v. Iqbal,*
   129 S. Ct. 1937 (2009)....................................................................................................13-14

*Barkan v. Amsted Indus., Inc.,*
   567 A.2d 1279 (Del. 1989) ..................................................................................................18

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007)..............................................................................................2, 13, 16

*Citadel Equity Fund Ltd. v. Aquila, Inc.,*
   168 Fed. Appx. 474, 2006 WL 451986 (2d Cir. 2006) ...........................................................4

*Colorado River Water Conservation Dist. v. U.S.,*
   424 U.S. 800 (1976)..................................................................................................3, 18, 19

*County of Clark v. Hsu,*
   No. 38853, 2004 WL 5046209 (Nev. Sept. 30, 2004) .........................................................13

*Davis v. DCB Fin'l Corp.,*
   259 F. Supp.2d 664 (S.D. Ohio 2003).................................................................................10

*Dreiling v. Am. Exp. Co.,*
   458 F.3d 942 (9th Cir. 2006)..................................................................................................4

*Epstein v. Wash. Energy Co.,*
   83 F.3d 1136 (9th Cir. 1996)................................................................................................16

*Fierle v. Perez,*
   219 P.3d 906 (Nev. 2009) ..................................................................................................3-4

*Gibson v. Chrysler Corp.,*
   261 F.3d 927 (9th Cir. 2001)...............................................................................................2, 8

*Horwitz v. Sw. Forest Indus., Inc.,*
   604 F. Supp. 1130 (D. Nev. 1985) ......................................................................................14

*In re Encore Computer Corp. S'holders Litig.,*
   No. 16044, 2000 WL 823373 (Del. Ch. June 16, 2000) ......................................................14

*In re Wheelabrator Techs. Inc. S'holders Litig.,*
   C.A. No. 11495, 1992 WL 212595, 18 Del. Corp. L. 778, 797 (Del. Ch. Sept. 1, 1992).......18

*Joaquin v. GEICO Gen. Ins. Co.,*
   No. C-07-3259 MMC, 2007 WL 1821403 (N.D. Cal. June 25, 2007) .....................................8

*Jumara v. State Farm Ins. Co.,*
   55 F.3d 873 (3d Cir. 1995)..................................................................................................21

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

iii

*Kircher v. Putnam Funds Trust,*
547 U.S. 633 (2006)............................................................................................................ 12

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
511 U.S. 375 (1994)............................................................................................................ 8

*Landis v. N. Am. Co.,*
299 U.S. 248 (1936)............................................................................................................ 19

*Leavitt v. Leisure Sports Inc.,*
734 P.2d 1221, 103 Nev. 81 (1987) ................................................................................... 16

*Manzo v. Rite Aid Corp.,*
Civ. A. 18451-NC, 2002 WL 31926606 (Del. Ch. Dec. 19, 2002), *aff'd*, 825 A.2d 239
(Del. 2003) ......................................................................................................................... 18

*Maryland Cas. Co. v. Pacific Coal & Oil Co.,*
312 U.S. 270 (1941)............................................................................................................ 12

*McCauley v. Ford Motor Co. (In re Ford Motor Co./ Citibank (S.D.), N.A.),*
264 F.3d 952 (9th Cir. 2001).............................................................................................. 9

*McColm v. Foremost Ins. Co.,*
No. C 09-04132 SI, 2010 WL 1691681 (N.D. Cal. Apr. 23, 2010)..................................... 8, 9

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit,*
547 U.S. 71 (2006).............................................................................................................. 10

*Morally v. Marabella Partners, LLC,*
No. 05-cv-02080-LTB-PAC, 2006 WL 2038388 (D. Colo. July 19, 2006) .......................... 13

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,*
460 U.S. 1 (1983)............................................................................................................... 19

*Proctor v. Vishay Intertechnology Inc.,*
584 F.3d 1208 (9th Cir. 2009)............................................................................................ 11

*Schoen v. SAC Holding Corp.,*
137 P.3d 1171 (Nev. 2006) ................................................................................................. 14

*Skeen v. Jo-Ann Stores, Inc.*
750 A.2d 1170 (Del. 2000)................................................................................................. 17

*Snow v. Ford Motor Co.,*
561 F.2d 787 (9th Cir. 1977).............................................................................................. 9

*Texas v. U.S.,*
523 U.S. 296 (1998)............................................................................................................ 12

*U.S. v. Southern Pac. Transp. Co.,*
543 F.2d 676 (9th Cir. 1976).............................................................................................. 9

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

iv

STATUTES, RULES & OTHER AUTHORITIES

15 U.S.C. § 77b(a)(1) .................................................................................................... 19

15 U.S.C. § 78bb(f)(1) ................................................................................................... 11

15 U.S.C. § 78bb(f)(3)(A) ............................................................................................. 10

15 U.S.C. § 78bb(f)(3)(A)(i) ......................................................................................... 10

28 U.S.C. § 1332(a)(1) .................................................................................................... 1

28 U.S.C. §§ 1332(a)(1) and (2) ..................................................................................... 8

28 U.S.C. § 1332(d)(2) .................................................................................................. 19

28 U.S.C. § 1332(d)(6) .................................................................................................... 9

28 U.S.C. § 1332(d)(9) ................................................................................................ 219

Fed. R. Civ. Proc. 12(b)(1) ........................................................................................ 1, 8

Fed. R. Civ. Proc. 12(b)(6) ...................................................................................... 1, 13

NRS §§ 47.130(2)(b) and 47.150(1) ...........................................................................3-4

NRS § 47.150(1) .............................................................................................................. 4

NRS § 78.125 ................................................................................................................ 17

NRS § 78.138(3) ........................................................................................................... 14

NRS § 78.138(4) ........................................................................................................... 18

NRS § 78.139(l) ....................................................................................................... 2, 14

NRS § 78.140 ................................................................................................................ 16

NRS §§ 78.140.1(a) and 2(d) ....................................................................................... 16

EDCR 1.61 .................................................................................................................... 20

Moore's-Civil § 101.75 ................................................................................................ 13

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

1   Defendant Harbin Electric, Inc. ("Harbin" or the "Company"), by and through its

2   attorneys of record, respectfully moves this Court for an order dismissing Plaintiff's Complaint

3   for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil

4   Procedure and for failure to state a claim upon which relief may be granted pursuant to Rule

5   12(b)(6), or, in the alternative, staying this action pending the resolution of nearly identical

6   actions simultaneously proceeding in Nevada state court.

7   **PRELIMINARY STATEMENT**

8   This action is the one of seven putative shareholder class actions currently pending in

9   Nevada's state and federal courts, all of which were hastily and prematurely commenced, hard on

10   the heels of Harbin's October 11, 2010 announcement that it had received a non-binding buyout

11   proposal from Defendant Tianfu Yang, Hero Wave Investments Limited, and Baring Private

12   Equity Group Limited (the "Buyout Group").   The Buyout Group proposed to acquire all

13   outstanding shares of Harbin common stock not already owned by Mr. Yang and his affiliates.

14   Although the Buyout Group's proposal was preliminary and non-specific, a race to the courthouse

15   by the plaintiffs' bar ensued.

16   The first suit was filed within a few days, followed by a virtual daily parade of filings.  In

17   three weeks' time, a total of ten nearly identical actions had been filed in five separate courts in

18   Nevada and New York, each purportedly on behalf of the same putative shareholder class.[1]  This

19   action is the tenth (and, so far, the last) action filed against Harbin and its Board of Directors, and

20   the third such action commenced by Plaintiff's counsel.

21   Plaintiff's Complaint should be dismissed for the fundamental reason that Court lacks

22   subject-matter jurisdiction over the action.  *First*, although Plaintiff contends that this Court may

23   exercise its diversity jurisdiction under 28 U.S.C. Section 1332(a)(1), Plaintiff fails to plead either

24   that his *own* claims exceed the $75,000 minimum for diversity jurisdiction or facts from which

25   [1]   There are two suits pending in this Court, two suits in the Eighth Judicial District Court
26   (Clark County), two suits in the First Judicial District Court (Carson City), and one in the Second
     Judicial District Court (Washoe County) (collectively, the "Nevada Actions").  There are also
27   three suits pending in state court in New York (Suffolk County), one of which names only Mr.
     Yang. Each of the ten actions arises out of the same set of operative facts and seeks substantially
28   the same relief on behalf of the same putative class of shareholders.

1

this inference could made, as he must. *See Gibson v. Chrysler Corp.*, 261 F.3d 927, 941 (9th Cir. 2001) (court examines "only the claims of named class plaintiffs for purposes of the amount-in-controversy requirement in diversity class actions").

*Second*, Plaintiff contends in the alternative that this Court has subject-matter jurisdiction pursuant to the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. § 78bb(f)(3)(A)(i), which permits certain "covered class actions" to survive SLUSA's preemptive bar on state-law securities actions. But this carve-out for covered class actions simply requires this Court to remand certain types of state-law claims following removal, instead of dismissing them—the carve-out does not provide an independent basis of subject-matter jurisdiction to hear what is otherwise a state-law claim.

*Third*, Plaintiff's Complaint should also be dismissed for want of subject-matter jurisdiction because this dispute is not yet ripe for adjudication. The Complaint erroneously characterizes the Buyout Group's mere proposal as a sale of the Company that is destined to occur, in breach of Defendants' fiduciary obligations to the Company's shareholders.[2] But as the Company's October 11, 2010 press release makes clear, the Buyout Group has only made a proposal, which a special committee of three disinterested directors (the "Special Committee") has been appointed to evaluate. There is no breach of fiduciary duties, much less a transaction, to be enjoined now or perhaps ever. Plaintiff's Complaint asserts nothing more than a claim for "anticipatory breach of fiduciary duty," which is not a legally cognizable claim under any applicable law, and should be dismissed for this reason alone.

Apart from these jurisdictional defects, Plaintiff fails to state a claim for breach of fiduciary duty because he has not pleaded any facts that would allow him to overcome the protections of the business judgment rule, NRS Section 78.139(l). *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (complaint must allege "enough facts to state a claim to relief that is plausible on its face").

---

[2]  *See* Compl. ¶ 7 ("the Buyout is essentially a *fait accompli*"); ¶ 30 ("The process used to sell Harbin was defective and did not reflect the true inherent value of the Company, which far exceeds the $24 per share Buyout offer.").

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

1    Finally, this Court should abstain from exercising its jurisdiction (or, at a minimum, stay

2    this action) pending the resolution of the overlapping actions pending in Nevada state court. *See*

3    *Colorado River Water Conservation Dist. v. U.S.,* 424 U.S. 800, 817 (1976) (permitting district

4    court to abstain from exercising federal jurisdiction where there are parallel actions in both

5    federal and state court). Allowing these various lawsuits, brought by the same putative class of

6    shareholders, to proceed in multiple courts will duplicate efforts and waste judicial and private

7    resources, and expose Defendants to inconsistent rulings. Witnesses may be forced into repetitive

8    depositions and the parties into redundant discovery. One court needs to serve as the locus for the

9    Nevada cases, and as plaintiffs and their counsel have been unable to agree upon a single forum,

10   Harbin seeks to rationalize the numerous Nevada cases by bringing them before the specialized

11   Business Court in Clark County, where two pending cases have already been assigned.[3]

12   In sum, the Complaint should be dismissed because: (1) this Court lacks subject-matter

13   jurisdiction under any statute conferring such jurisdiction; (2) there is no controversy ripe for

14   resolution; (3) Plaintiff has not alleged facts sufficient to overcome Nevada's business judgment

15   rule, which affords a strong presumption of correctness to decisions made by fiduciaries; and (4)

16   the suit should proceed, if at all, in one forum, and this one is not the most appropriate forum.

17                                    **STATEMENT OF FACTS**

18   **A.    The Proposed Transaction**

19   Plaintiff's Complaint paints a cropped and misleading picture of the potential transaction

20   at issue. On October 11, 2010, the Chairman of Harbin, Mr. Yang, presented the Board with a

21   Proposal Letter, setting forth a nonbinding offer to purchase the outstanding shares at $24 per

22   share. The Proposal Letter is appended to Mr. Yang's SEC filing on Schedule 13D/A (the

23   "13D"), of which this Court may take judicial notice[4] and which is submitted herewith as Exhibit

24   ─────────────

[3]   To this end, Harbin has filed a motion to transfer or stay one of the Nevada state court actions

25   pending in Carson City (the *Hurewitz* action), and will be filing such a motion in the other action
     in Carson City (the *Fisher* action) and the action pending in Washoe County. Harbin also will be

26   moving to dismiss or stay another nearly identical case pending before this Court (the *Sellier*
     action) – where subject-matter jurisdiction is also lacking – and the three cases pending in New

27   York.

28   [4]   *See* NRS 47.130(2)(b) and 47.150(1). *See also Fierle v. Perez,* 219 P.3d 906, 912 (Nev.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

1   A to the Declaration of Tamara Beatty Peterson, Esq., dated November 22, 2010 ("Peterson

2   Decl."). As described in the 13D (at 6), Mr. Yang and an investment fund advised by Baring

3   Private Asia Equity Group Limited ("Baring") would "form an acquisition vehicle (the

4   'Acquirer') for the purpose of pursuing the Acquisition through a merger, and [] the Acquirer

5   intends to finance the acquisition with a combination of debt and equity capital," with the equity

6   being provided by Mr. Yang and the Baring-advised fund.

7       This nonbinding proposal was just that—a proposal. Typical of such early stage offers,

8   the Proposal Letter is not only nonbinding, but also so preliminary that virtually no details of the

9   possible transaction are included. The Proposal Letter does not describe the debt structure of the

10   acquiring entity, the terms of the merger, or even the structure of the transaction. The only

11   specific term is the acquirer's current intention to offer $24 for each share, and even that term is

12   subject to change.

13       Despite Plaintiff's claims that the Company and its directors are allowing the buyout

14   proposal to go forward in dereliction of their fiduciary duties,[5] no such thing has happened. As

15   detailed in Harbin's public filings (see also Complaint ¶ 27),[6] all that has occurred at this point is

---

2009) ("[Courts] may take judicial notice of facts generally known or capable of verification from a reliable source, whether we are requested to or not. NRS 47.150(1). Further, [courts] may take judicial notice of facts that are '[c]apable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, so that the fact is not subject to reasonable dispute.' 47.130(2)(b)."). Courts routinely take judicial notice of a company's SEC filings. *See, e.g., Dreiling v. Am. Exp. Co.*, 458 F.3d 942, 946 (9th Cir. 2006) (SEC filings subject to judicial notice); *Citadel Equity Fund Ltd. v. Aquila, Inc.*, 168 Fed. App'x 474, 475-476, 2006 WL 451986, at *1 (2d Cir. 2006) (same).

[5]   Plaintiff claims, among other things, that defendants have pursued an "unlawful plan to squeeze out Harbin's public shareholders for grossly inadequate consideration, and without a fair process, including full and fair disclosure of all material information...." Compl. ¶ 5.

[6]   The appointment of the Special Committee was announced to the public in the Company's press release dated October 11, 2010, which is attached to the Company's Form 8-K filed on October 12, 2010 (Peterson Decl., Ex. B). The Company's 8-K makes clear that the Special Committee has made "no decision . . . with respect to the Company's response to the proposal." Moreover, the Company states that "[t]here can be no assurance that any definitive offer will be made, that any agreement will be executed or that this or any other transaction will be approved or consummated." In a Form 8-K filed on November 2, 2010 (Peterson Decl., Ex. C), the Company announced that the Special Committee had informed the Company that it had retained Morgan Stanley & Co. as its financial advisor and Gibson Dunn & Crutcher LLP as its legal

that the Company's Board of Directors appointed a Special Committee of the Board, comprised solely of disinterested directors, which will, among other things, fully evaluate the proposal and determine whether it is fair to Harbin's shareholders. The Special Committee has not made any recommendation to the Board with regard to the October 11, 2010 Proposal or any other proposal; nor is there any specific timeline for doing so.

Plaintiff tells a bit of a different story. According to Plaintiff, the Company is doing very well under the management of Defendants and increasing in value. Compl. ¶¶ 23-26. So much so, according to Plaintiff, that "the Defendants" (presumably all of the Defendants) have "been working diligently to sell Harbin – to themselves" at a sweetheart price. *Id.* ¶¶ 27, 28. The directors, including the independent directors, according to Plaintiff, are co-opted and have approved the offer, *id.* ¶ 28, notwithstanding that no formal, detailed offer has been made. The Defendants are doing this, according to Plaintiff, because they stand to benefit financially from the transaction in some unspecified manner. *Id.* ¶ 19. Plaintiff does not share with the reader the source of his beliefs or the basis for any of them.

### B.    The Numerous, Duplicative Actions Commenced by the Class Action Lawyers

The following provides the Court with a brief chronology of the actions pending in Nevada and New York.

#### 1.    The Nevada State Court Actions

**The *Hurewitz* Action.** On October 13, 2010—just two days after Harbin's announcement of the buyout proposal, plaintiff Kay Hurewitz filed a complaint against Harbin and its Board of Directors in the First Judicial District Court of the State of Nevada in and for Carson City ("*Hurewitz*"). The *Hurewitz* action is a proposed class action on behalf of all Harbin stockholders, seeking injunctive and other relief based upon defendants' alleged breaches of fiduciary duty (and aiding and abetting those breaches) in connection with the Proposal now under consideration by the Special Committee. *See* Peterson Decl., Ex. D (*Hurewitz* Complaint).

advisors.

5

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

1   Harbin has filed a motion to transfer this action to the Eighth Judicial District Court of the State

2   of Nevada in and for Clark County, where the *Necuze* and *Elliott* actions are pending, or,

3   alternatively, to stay the action.

4       **The *Necuze* and *Elliott* Actions – the two Clark County Actions.**   On October

5   15, 2010, Plaintiff's counsel filed the *Necuze* action in Clark County.   Then, just four days later,

6   on October 19, 2010, the same Plaintiff's counsel filed a second action in the same court, entitled

7   *Elliott v. Harbin Electric, Inc.* (Case No. A-10-627656-C) ("*Elliott*").   Like *Hurewitz*, *Necuze* and

8   *Elliott* are putative class actions brought on behalf of all Harbin stockholders against Harbin and

9   its Board of Directors.   The complaints in *Necuze* and *Elliott* seek injunctive and other relief

10   based upon alleged breaches of fiduciary duty (and, in *Necuze*, aiding and abetting those

11   breaches) in connection with the Proposal.   *See* Peterson Decl., Exs. E (*Necuze* Complaint) & F

12   (*Elliott* Complaint).

13       Plaintiffs in the *Necuze* and *Elliott* actions have filed a motion pending to

14   consolidate their two actions before a single court and seek to be appointed as Lead Counsel.

15   Harbin has objected to any appointment of Lead Counsel unless and until all the Nevada state

16   court cases, including their named plaintiffs and legal counsel, are before the same court.   On

17   November 8, 2010, the *Necuze and Elliott* actions were transferred to the Business Court pursuant

18   to EDCR 1.61.

19       **The *Fisher* Action.**   On October 22, 2010, plaintiff Randolph Fisher filed a

20   complaint against Harbin and its Board of Directors in the First Judicial District Court of the State

21   of Nevada in and for Carson City ("*Fisher*").   (Case No. 10-498-B.)   *Fisher* is a proposed

22   shareholder class action against Harbin and its Board of Directors, seeking injunctive and other

23   relief based upon the Board's alleged breaches of their fiduciary duties in connection with the

24   Proposal, and the Company's alleged aiding and abetting of those purported breaches.   *See*

25   Peterson Decl., Ex. G (*Fisher* Complaint).   Harbin intends to file a motion to transfer the *Fisher*

26   action to Clark County.

27       **The *Rosen* Action.**   On October 28, 2010, plaintiff Mark Rosen filed a complaint

28   against Harbin, its Board, and Baring in the Second Judicial District Court of the State of Nevada

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

6

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

in and for the County of Washoe ("*Rosen*").  (Case No. CV10-03283.)  *Rosen* is a proposed class action on behalf of all Harbin stockholders, seeking injunctive and other relief based upon the Board's alleged breaches of fiduciary duties (and the Company's alleged aiding and abetting of those supposed breaches) in connection with the Proposal.  *See* Peterson Decl., Ex. H (*Rosen* Complaint).  Harbin intends to file a motion to transfer the Rosen Action to Clark County.

### 2.     The Nevada Federal Court Actions.

There are two pending federal court actions – the instant action and the *Sellier* action.

**The *Sellier* Action.**  On October 13, 2010—the same day as the filing of the *Hurewitz* action—plaintiff Bertrand Sellier filed a complaint against Harbin and its Board of Directors in the United States District Court for the District of Nevada ("*Sellier*").  (Case No. 10cv00645-RCJ-VPC.)  Like *Hurewitz*, the *Sellier* action is a proposed class action on behalf of Harbin stockholders seeking various remedies in connection with the Proposal.  *See* Peterson Decl., Ex. I (*Sellier* Complaint).  Harbin intends to move to dismiss this action on numerous grounds, including lack of subject-matter jurisdiction, or, alternatively, to stay the action pending the resolution of the Nevada state court actions.

**The *Sweeney* Action.**  On November 1, 2010, plaintiff Patrick Sweeney filed this action against Harbin and its Board of Directors.  *Sweeney* is a proposed shareholder class action against Harbin and its Board of Directors, seeking injunctive and other relief based upon the Board's alleged breaches of their fiduciary duties in connection with the Proposal, and the Company's alleged aiding and abetting those purported breaches.  *See* Peterson Decl., Ex. J (*Sweeney* Complaint).

### 3.     The New York State Court Actions

In addition to *Hurewitz, Necuze, Elliott, Fisher, Rosen, Sweeney,* and *Sellier*, all of which are pending in Nevada state and federal courts, between October 15 and 25, three other actions were filed in New York state court – one against Harbin and Yang (*Norfolk County Retirement System or "NCRS"*), one against Harbin and its Board of Directors (*Yun*), and one against Yang (*Gould*) – all related to the Proposal.  *See* Peterson Decl., Exs. K (*NCRS* Complaint), L (*Yun* Complaint), and M (*Gould* Complaint).  Harbin expects to have these actions dismissed or stayed

7

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

on various grounds.  Indeed, there is no obvious connection to New York:  Harbin is incorporated in Nevada; its operations are located in China; none of its directors are found in New York; and Nevada law governs the directors' duties to shareholders.

## ARGUMENT

## I.   THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT-MATTER JURISDICTION.

As Plaintiff originally filed this action in federal court, Plaintiff bears the burden of establishing subject-matter jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  "A complaint will be dismissed if, looking at the complaint as a whole, it appears to lack federal jurisdiction either 'facially' or 'factually.'" *McColm v. Foremost Ins. Co.*, No. C 09-04132 SI, 2010 WL 1691681, at *1 (N.D. Cal. Apr. 23, 2010) (citing *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)).  As demonstrated below, Plaintiff's allegations utterly fail to establish this Court's subject-matter jurisdiction over this action.  The Complaint therefore should be dismissed pursuant to Rule 12(b)(1).

### A.   Plaintiff Fails to Plead Facts Demonstrating that His Claims Satisfy the Jurisdictional Amount in Controversy.

Plaintiff contends that this Court has diversity jurisdiction over this action pursuant to 28 U.S.C. Section 1332(a)(1) and (2) because "plaintiff and defendants are citizens of different states or subjects of a foreign state and the matter in controversy exceeds $75,000, exclusive of interest and costs." Compl. ¶ 1.  However, Plaintiff fails to plead, as he must, that his own claim exceeds that amount.  Plaintiff's Complaint should be dismissed for this reason alone.  *See Joaquin v. GEICO Gen. Ins. Co.*, No. C-07-3259 MMC, 2007 WL 1821403, at *1 (N.D. Cal. June 25, 2007) (dismissing complaint for lack of subject-matter jurisdiction where class action plaintiff alleged that amount in controversy exceeded $75,000, but failed to allege her own claim exceeded that amount).

In a putative class action such as this one, the named plaintiff must satisfy the jurisdictional minimum on his own:  he cannot aggregate the claims of the entire class to satisfy the amount-in-controversy threshold. *See Gibson*, 261 F.3d at 940-41 (subject-matter jurisdiction

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

1    depends on named plaintiff's claims because claims of unnamed plaintiffs are not added to

2    litigation until after Rule 23 certification of a class).[7]   Because Plaintiff bears the burden to

3    establish jurisdiction, he must show that it does **not** appear to a legal certainty that his claims are

4    for less than the required amount. *See U.S. v. Southern Pac. Transp. Co.*, 543 F.2d 676, 682 (9th

5    Cir. 1976).

6        The burden is no different where, as here, a plaintiff seeks injunctive relief rather than

7    damages; the named plaintiff bears the burden to allege and prove that the threshold amount in

8    controversy has been met. *See Gibson*, 261 F.3d at 941 ("Examining only the claims of named

9    class plaintiffs for purposes of the amount-in-controversy requirement in diversity class actions

10   mirrors the treatment of the complete diversity requirement."). Only the math is different. "The

11   amount in controversy requirement may be met where the value of the injunction sought to either

12   party meets or exceeds the statutory minimum." *McCauley v. Ford Motor Co. (In re Ford Motor*

13   *Co./ Citibank (S.D.), N.A.)*, 264 F.3d 952, 958 (9th Cir. 2001).  But even then, the value of the

14   injunctive relief to the putative class of plaintiffs cannot be aggregated, but must be considered

15   individually to determine whether the named plaintiff's claims exceed $75,000 in controversy.  In

16   both instances, subject-matter jurisdiction depends solely on the named plaintiffs. *See Snow v.*

17   *Ford Motor Co.*, 561 F.2d 787, 790 (9th Cir. 1977) (where "the equitable relief sought is but a

18   means through which the individual claims may be satisfied, the ban on aggregation (applies)

19   with equal force to the equitable as well as the monetary relief.").

20       Here, taking as true all of the well-pleaded facts and drawing all inferences in favor of

21   Plaintiff, the Complaint still lacks any factual averment to show that Plaintiff's claim exceeds the

22   jurisdictional minimum. *See McColm*, 2010 WL 1691681, at *2 (dismissing complaint for lack of

23   subject-matter jurisdiction where complaint contained no factual support for alleged $100,000 in

24   controversy). Not only has Plaintiff failed to allege any facts regarding his holdings, but since no

25   binding, final proposal has been made, there is no way of doing the math to determine whether

---

[7]    The Complaint contains no allegation that this Court has jurisdiction pursuant to the Class
Action Fairness Act, pursuant to which the individual class members' claims are aggregated to
determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of
interest and costs. *See* 28 U.S.C. § 1332(d)(6).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

1   the jurisdictional amount has been satisfied. *See Davis v. DCB Fin'l Corp.*, 259 F. Supp. 2d 664,

2   671 (S.D. Ohio 2003) (dismissing shareholder derivative action for failure to plead jurisdictional

3   amount in controversy where alleged damages were speculative and claims unripe).   Injunctive

4   relief to maintain the status quo and prevent the buyout from being consummated would,

5   according to Plaintiff, result in the avoidance of alleged damages measured arguably by the

6   difference between (a) the fair market value of Harbin's common stock and (b) the proposed

7   buyout price per share, multiplied by (c) the number of shares Plaintiff owns. None of those facts

8   is alleged in the Complaint.

9        Because Plaintiff has failed to plead any facts demonstrating that his own claims satisfy

10   the jurisdictional minimum, the Complaint should be dismissed for lack of subject-matter

11   jurisdiction.

12   **B.**     **Plaintiff Fails to Demonstrate that this Court has Subject-Matter Jurisdiction under SLUSA.**

13        Plaintiff claims in the alternative that subject-matter jurisdiction is proper under SLUSA,

14   15 U.S.C. § 78bb(f)(3)(A)(i), "because it is a class action based on the statutory or common law

15   of Nevada, defendant Harbin Electric, Inc.'s . . . state of incorporation, and thus may be

16   maintained in federal court." (Compl. ¶ 1.)  SLUSA, however, provides not a sword to plaintiffs,

17   but a shield to defendants improperly sued in state court.  Plaintiff's invocation of SLUSA's

18   familiar "Delaware Carve-Out" to justify federal jurisdiction here is, to put it mildly, bizarre.

19        SLUSA "provides that no covered class action based on state law and alleging a

20   misrepresentation or omission of a material fact in connection with the purchase or sale of a

21   covered security may be maintained in any State or Federal court by any private party." *Merrill*

22   *Lynch, Pierce, Fenner & Smith, Inc. v. Dabit,* 547 U.S. 71, 74 (2006) (internal quotation marks

23   omitted) (citing 15 U.S.C. § 78bb(f)(1)(A)).  Excepted from this preclusion provision, however,

24   are certain covered class actions based upon the statutory or common law of the issuer's state of

25   incorporation, which may be maintained in state or federal court by a private party. *See* 15

26   U.S.C. § 78bb(f)(3)(A) (the "Delaware Carve-Out").

27        Plaintiff's attempt to rely on SLUSA as a basis for this Court's subject-matter jurisdiction

28

10

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

1   misperceives both SLUSA and the Delaware Carve-Out.   SLUSA was enacted to stop the

2   plaintiffs' bar from circumventing the reforms to abusive class actions that Congress intended to

3   adopt through the enactment of the Private Securities Litigation Reform Act ("PSLRA").

4   Following the adoption of the PSLRA, state courts were inundated with the kinds claims that

5   historically had been federal securities claims, now in the guise of state law claims.   In response,

6   Congress passed SLUSA, which creates a federal defense to certain class actions, prohibiting

7   them from proceeding in state or federal court, 15 U.S.C. § 78bb(f)(1), and separately gives

8   defendants the right to remove such cases to federal court and have them dismissed.   *Id.* §

9   78bb(f)(2).   *See Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1220-21 (9th Cir. 2009).

10       At the same time, Congress recognized that there were a limited number of actions that

11   fell within the ambit of SLUSA that should not be subject to the judicial death penalty afforded

12   under that statute.   Hence, Congress included the Delaware Carve-Out, which allowed those cases

13   to survive.   There is nothing, however, in SLUSA or judicial precedent remotely suggesting that it

14   provides an independent basis for federal court jurisdiction over what otherwise are purely state-

15   law causes of action.

16       Rather, as the Ninth Circuit has explained, a federal court's jurisdiction under SLUSA

17   exists only through a defendant's assertion of the preclusion defense and removal of the case from

18   state court.

19       While the Act's removal provision, 15 U.S.C. § 78bb(f)(2), alone is not sufficient
         to confer jurisdiction within constitutional bounds, ... the separate provision for a

20       preclusion defense requiring the dismissal of covered class actions, *id.* §
         78bb(f)(1), creates a federal question hook on which removal can hang.   As

21       SLUSA's removal provision makes clear, Congress intended to permit federal
         court adjudication of such claims.   Section 78bb(f)(2) is therefore constitutionally

22       sufficient to support removal jurisdiction, and no recourse to another jurisdictional
         statute—such as 28 U.S.C. § 1331—is necessary.

23

24   *Proctor*, 584 F.3d at 1220-21.   Plaintiff thus must establish subject-matter jurisdiction through

25   conventional means – a federal question or diversity of citizenship and an amount in controversy

26   exceeding $75,000 – both of which are lacking here.

27       Even where a case is properly removed under SLUSA, the federal court's exercise of

28   jurisdiction is circumscribed.   The federal court has two options:   it can dismiss the removed

                                                        11

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

1   action if it finds that the action is pre-empted by the PSLRA or remand to state court if it finds to

2   the contrary.  The remand is mandated <u>because the court lacks subject-matter jurisdiction</u>.  As the

3   Supreme Court explained in *Kircher v. Putnam Funds Trust*, 547 U.S. 633 (2006):

> 4   [SLUSA] avails a defendant of a federal forum in contemplation not of further
>     litigation over the merits of a claim brought in state court, but of termination of
> 5   the proceedings altogether .... [I]f a claim is precluded, it "may [not] be
>     maintained," 15 U.S.C. § 77p(b), and if the claim is not, the federal courts no
> 6   longer have any business being involved, as there is no longer any federal
>     question on which to moor the district court's jurisdiction.
> 7

8   *Id.* at 644 n.12.

9       SLUSA plainly provides no basis for this Court's exercise of subject-matter jurisdiction

10   over Plaintiff's claims.  As Plaintiff has failed to adequately plead any other grounds upon which

11   this Court has subject-matter jurisdiction, the Complaint should be dismissed.

12   **C.      Plaintiff's Claims are Not Yet Ripe For Adjudication.**

13       For no reason other than to join the contest for appointment of lead counsel and lead

14   plaintiff, Plaintiff has asserted claims for injunctive and declaratory relief that are not ripe for

15   adjudication.  Plaintiff has labeled as unacceptable and unfair an offer that is at a nascent stage.

16   Plaintiff has condemned the Board's reaction to the buyout proposal, even though the Board has

17   taken the appropriate steps in response to the Proposal.

18       "A claim is not ripe for adjudication if it rests upon contingent future events that may not

19   occur as anticipated, or indeed may not occur at all."  *Texas v. U.S.*, 523 U.S. 296, 300 (1998)

20   (citations and internal quotation marks omitted).  In determining the difference between an

21   abstract question and a ripe controversy, the basic question is "whether the facts alleged, under all

22   the circumstances, show that there is a substantial controversy, between parties having adverse

23   legal interests, of sufficient immediacy and reality."  *Maryland Cas. Co. v. Pacific Coal & Oil*

24   *Co.*, 312 U.S. 270, 273 (1941).

25       Here, there is neither immediacy nor reality to Plaintiff's claims.  Rather, Plaintiff,

26   anticipating a breach of fiduciary duty (though not alleging any basis for that belief), asks this

27   Court to issue award declaratory and injunctive relief based upon hypothetical possibilities that

28   may never occur.  *See* Compl. Prayer for Relief, ¶ B (seeking a declaration and decree "that any

12

Buyout agreement entered into by the Company was approved in breach of the fiduciary duties of defendants and is therefore unlawful and unenforceable"). As discussed below, the proposed buyout that Plaintiff seeks to enjoin may never be put to a proxy vote, and there is no evidence that the Company's directors have or will breach their fiduciary duties to the shareholders. Any potential harm to Harbin's shareholders relating to the proposed buyout is thus purely speculative, contingent upon future events that may or may not transpire. *See County of Clark v. Hsu*, No. 38853, 2004 WL 5046209, at *15 (Nev. Sept. 30, 2004) ("An unripe case presents a situation where there is no concrete controversy and an alleged injury is merely speculative.").

The law is well established that unripe claims like these should be dismissed without prejudice. *See A.R. DeMarco Enters., Inc. v. Ocean Spray Cranberries, Inc.*, No. Civ. A. 19133-NC, 2002 WL 31820970, at *6 (Del. Ch. 2002) (dismissing breach of fiduciary duty claim as unripe where alleged damage – forced redemption of plaintiff's shares – had neither occurred nor been sought). *See also Morally v. Marabella Partners, LLC*, No. 05-cv-02080-LTB-PAC, 2006 WL 2038388, at *7 (D. Colo. July 19, 2006) (dismissing breach of fiduciary duty claim contingent upon future events as "premature and not fit for judicial review, because any injury or resulting damage is speculative and may never occur"); MOORE'S-CIVIL § 101.75 ("If the facts are uncertain and the court is being asked to make a legal ruling based on the possibility that certain facts will be found to exist and some point in the future, then a decision would constitute nothing more than an advisory opinion based on a hypothetical scenario."). Plaintiff's claims therefore should be dismissed as unripe.

## II.   PLAINTIFF FAILS TO STATE A COGNIZABLE CLAIM FOR BREACH OF FIDUCIARY DUTY BECAUSE HE FAILS TO PLEAD FACTS TO REBUT THE BUSINESS JUDGMENT RULE.

Plaintiff's claims – against the individual defendants for alleged breaches of their fiduciary duties and against Harbin for allegedly aiding and abetting those supposed breaches – also should be dismissed under Rule 12(b)(6). To survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. *See also Ashcroft v. Iqbal*, 129 S. Ct. 1937,

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

1   1950 (2009) ("Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing

2   more than conclusions."). Plaintiff has come nowhere near satisfying that standard here.

3       The Complaint is virtually devoid of any factual allegations whatsoever, and none are

4   sufficient to rebut the business judgment rule, which affords directors' decisions a strong

5   presumption of correctness.[8] Nevada has codified the business judgment rule: "[D]irectors and

6   officers confronted with a change or potential change in control of the corporation are presumed

7   to act in good faith, on an informed basis and with a view to the interests of the corporation."

8   NRS 78.139(l) (incorporating NRS 78.138(3)).[9] The burden of rebutting this heavy presumption

9   rests entirely with Plaintiff. *See Horwitz v. Sw. Forest Indus., Inc.*, 604 F. Supp. 1130, 1135 (D.

10  Nev. 1985) (applying Nevada law). Plaintiff must plead facts – not conclusory allegations and

11  not speculation – demonstrating a breach of fiduciary duty to overcome the presumption. *See In*

12  *re Encore Computer Corp. S'holders Litig.*, No. 16044, 2000 WL 823373, at *5 (Del. Ch. June

13  16, 2000) (requiring plaintiff to plead specific facts demonstrating a breach of fiduciary duty to

14  rebut business judgment rule); *see also Ashcroft*, 129 S. Ct. at 1953.

15      To say that the Complaint pleads inadequate facts to overcome the presumption is too

16  generous. Plaintiff pleads only the most conclusory allegations, and even those are largely

17  nonsensical. What tries to pass as factual allegations are contained in only three of the numbered

18  paragraphs of the Complaint, in which Plaintiff challenges the independence of the Special

19  Committee and the Board, the adequacy of their disclosures of information, and the entire fairness

20  of the proposed transaction:

21          19.   Plaintiff alleges herein that defendants, separately and

22          together, in connection with the Buyout, are knowingly or

23          recklessly violating their fiduciary duties, including their duties of

24

---

25  [8]  *See Schoen v. SAC Holding Corp.*, 137 P.3d 1171, 1178-79 (Nev. 2006) (business judgment
26  rule establishes judicial presumption that "in making a business decision, the directors of a
    corporation acted on an informed basis, in good faith and in the honest belief that the action taken
27  was in the best interests of the company.").
    [9]  Harbin is incorporated under the laws of Nevada. There is no dispute that Nevada law
28  governs defendants' fiduciary obligations to its shareholders.

loyalty, good faith, and independence owed to plaintiff and the other public shareholders of Harbin.   Defendants stand on both sides of the transaction, are engaging in self-dealing, are obtaining for themselves personal benefits, including personal financial benefits, not shared equally by plaintiff or the Class (as defined herein), and are choosing not to provide shareholders with all information necessary to make an informed decision in connection with the Buyout and/or are aiding and abetting other defendants' breaches.   As a result of defendants' self-dealing and divided loyalties, neither plaintiff nor the Class are being treated fairly in connection with the proposed Buyout.

20.   Defendants also owe the Company's stockholders a duty of truthfulness under Nevada law, which includes the disclosure of all material facts concerning the Buyout and, particularly, the fairness of the price offered for the stockholders' equity interest. Defendants are knowingly or recklessly breaching their fiduciary duties of candor and good faith by failing to disclose all material information concerning the Buyout, and/or aiding and abetting other defendants' breaches.[10]

28.   The release [issued by Harbin on October 11, 2010] was false and misleading as the defendants were aware that the so-called "Special Committee" was appointed for the sole purpose of immunizing defendants from liability for their unlawful conduct and the approval of a sale of Harbin to the Buyout Group was a *fait*

---

[10]   Plaintiff similarly asserts that defendants have failed to disclose "all material information that would permit Harbin stockholders to cast a fully informed vote on the Buyout, including both financial information and regulatory information...." Compl. ¶ 44(c).  But it is too early in the process for there to have been such disclosures.  The Special Committee is evaluating the proposal and has hired financial advisors and legal counsel to assist it in that process.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

*accompli.* Moreover, the $24 per share offered does not properly take into account the expected growth in earnings potential that the Company can expect from its assets and operations.

Plaintiff's boilerplate allegations cannot rebut the strong presumption that the actions of the directors and the Company are consistent with their fiduciary duties.   The essence of Plaintiff's claims is: 1) the directors are "on both sides of the transaction," stand to benefit financially, and therefore are conflicted; 2) the directors are withholding relevant, material information that prevents the putative class from making an informed decision; and 3) the Company lied when it told the public that the Special Committee would take appropriate steps to consider whatever proposal is made and to advise the Company.  Leaving aside the estimable fact that no specific proposal has yet been made, and the Special Committee has not yet been heard, these supposed "factual" allegations are nothing more than conclusory barbs entirely bereft of facts.  *See Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."); *see also Twombly*, 550 U.S. at 570 (complaint must allege "enough facts to state a claim to relief that is plausible on its face").

### 1.   *Plaintiff's Allegation that Defendants Stand to Benefit from the Proposed Transaction.*

Plaintiff offers no fact to support the allegation that Defendants will profit personally from the transaction.  To be sure, Mr. Yang, the Chairman, is the offeror, and one might therefore characterize him as being on "both sides of the transaction."  But if that were a debilitating fact, then no insider could ever seek to engage in a change of control transaction, and there clearly is no such per se rule.  *See* NRS 78.140.1(a)(1) and 2(d) ("A contract or other transaction is not void or voidable solely because … [t]he contract or transaction is between a corporation and … one or more of its directors or officers …[if] the contract or transaction is fair as to the corporation at the time it is authorized or approved.").  *Accord Leavitt v. Leisure Sports Inc.*, 734 P.2d 1221, 1224-25, 103 Nev. 81, 86-87 (1987).

Rather, the Nevada statutory scheme contemplates such duality by interposing

16

independent parties – here the committee of independent directors – to evaluate the proposal (should one be made) so that an accepted proposal is fair to everyone and therefore no one benefits at the expense of others.[11] If Plaintiff had some factual basis for alleging that that is not what is occurring here, he should have pleaded it. He has not and cannot.

### 2. *Plaintiff's Allegation that Defendants Are Withholding Relevant Information.*

The allegation that Defendants are withholding information is likewise inadequate. To plead a nondisclosure claim, Plaintiff must "allege that facts are missing from the statement, identify those facts, state why they meet the materiality standard and how the omission caused injury." *Skeen v. Jo-Ann Stores, Inc.* 750 A.2d 1170, 1173 (Del. 2000). Plaintiff utterly fails to satisfy any element of this standard. Plaintiff has not provided any clue as to what information that should have been disclosed to this point was withheld. Plaintiff does not even identify categories of information that he feels he needs to know to evaluate whatever proposal is made (if one is). And, of course, all of this ignores the fact that the Special Committee has not yet made any evaluation or, indeed, that there has not yet been a formal and detailed proposal.

While Plaintiff casually brands Defendants as liars, he fails to set forth any fact to support this scurrilous allegation. Somehow, Mr. Sweeney knows that the Special Committee is not going to carry out its responsibilities but rather is going to simply rubber stamp the offer. For such an allegation to survive and overcome the presumption of regularity, Plaintiff must reveal the facts upon which he bases the allegation. He has not done so because he cannot do so.

### 3. *Plaintiff's Allegation that Defendants Are Not Taking Appropriate Steps to Evaluate the Proposal.*

Equally unsupported is Plaintiff's assertion that Defendants are taking steps to avoid competitive bidding by "failing to solicit other potential acquirers or alternative transactions." Compl. ¶ 44. The October 11th press release announcing the buyout proposal is effectively an invitation for other bids.

---

[11]  *See* NRS 78.125 (permitting the board of directors to designate committees); NRS 78.140.

17

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

1   In any event, Defendants are not required to auction the Company to fulfill their fiduciary

2   obligations to the shareholders. *See* NRS § 78.138(4) ("Directors and officers, in exercising their

3   respective powers with a view to the interests of the corporation, may consider: … (d) The long-

4   term as well as short-term interests of the corporation and its stockholders, including the

5   possibility that these interests may be best served by the continued independence of the

6   corporation.") (emphasis added). *See also Barkan v. Amsted Indus., Inc.*, 567 A.2d 1279, 1286-

7   87 (Del. 1989) ("When … the directors possess a body of reliable evidence with which to

8   evaluate the fairness of a transaction, they may approve that transaction without conducting an

9   active survey of the market."); *In re Wheelabrator Techs. Inc. S'holders Litig.*, C.A. No. 11495,

10  1992 WL 212595, at *9, 18 Del. J. Corp. L. 778, 797 (Del. Ch. Sept. 1, 1992) (dismissing breach

11  of fiduciary duty claim based solely on directors' alleged failure to conduct a market check for

12  superior alternative transactions where plaintiff did not allege that director lacked adequate

13  information about the value of the transaction).

14  Here, the only action taken by the Board with respect to the buyout proposal to date is the

15  appointment of a Special Committee to evaluate the proposal. This was indisputably the prudent

16  response to the buyout proposal, and Plaintiff cannot seriously contend otherwise.

17  Finally, because Plaintiff has failed to state a claim for any breach of fiduciary duties

18  against the individual defendants, he necessarily fails to state a claim against Harbin for aiding

19  and abetting any alleged breach of fiduciary duties. *See Manzo v. Rite Aid Corp.*, Civ. A. 18451-

20  NC, 2002 WL 31926606, at *6 (Del. Ch. Dec. 19, 2002) (dismissing aiding and abetting claim

21  where breach of fiduciary duty claim had been dismissed), *aff'd*, 825 A.2d 239 (Del. 2003).

22  **III.   PLAINTIFF'S CLAIMS SHOULD BE DISMISSED OR, ALTERNATIVELY,
23         STAYED TO AVOID DUPLICATIVE LITIGATION.**

24  Even if the Complaint were to survive dismissal under Rules 12(b)(1) and 12(b)(6), this

25  Court should, in the exercise of its discretion and pursuant to *Colorado River*, decline jurisdiction

26  over this matter due to the pendency of duplicative litigation in other jurisdictions.

27  There are currently ten putative shareholder class actions, pending in five courts in two

28  states, all of which seek to declaratory and injunctive relief concerning the proposed buyout. The

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

1   Company and the other defendants have no desire to litigate the same case simultaneously in

2   multiple courts and to do so would not only waste judicial and private resources, but also risk

3   inconsistent judgments.  It is clear that the cases must be brought together in a single location

4   before a single court.  The most appropriate court, however, is not this one because federal

5   subject-matter jurisdiction is lacking,[12] all the claims involve inherently Nevada-law issues, and

6   numerous actions are now pending in the specialized Business Court in Clark County that was

7   designed specifically to hear these types of claims.  *See Landis v. N. Am. Co.*, 299 U.S. 248, 254

8   (1936) ("power to stay proceedings is incidental to the power inherent in every court to control

9   the disposition of the causes on its docket with economy of time and effort for itself, for counsel,

10   and for litigants").

11   In *Colorado River*, the Supreme Court held that where there are parallel actions in both

12   federal and state court, the district court may abstain from entertaining a federal suit when

13   considerations of "wise judicial administration, giving regard to conservation of judicial resources

14   and comprehensive disposition of litigation" so dictate.  424 U.S. at 817 (citation omitted).  The

15   Court has identified several factors that might warrant such abstention, including: (1) whether the

16   suits will result in piecemeal litigation; (2) the order in which the courts obtained jurisdiction; (3)

17   the inconvenience of the federal forum; (4) whether state or federal law controls; and (5) whether

18   the state proceeding is adequate to protect the parties' rights. *Id.* at 818-19 (identifying factors (1)

19   through (3), among others); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S.

20   1, 25-26 (1983) (adding factors (4) and (5) to those identified in *Colorado River*).  All of these

21   factors favor the Court's abstention here.

22   First, retention of federal jurisdiction over this action will unquestionably result in

---

23   [12]   In the *Sellier* action, plaintiff erroneously premises subject-matter jurisdiction upon the

24   Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), which expressly excepts from its jurisdictional reach claims like those asserted here. *See* 28 U.S.C. § 1332(d)(9) ("Paragraph (2)

25   shall not apply to any class action that solely involves a claim— ... (B) that relates to the internal affairs or governance of a corporation or other form of business enterprise and that arises under or

26   by virtue of the laws of the State in which such corporation or business enterprise is incorporated or organized; or (C) that relates to the rights, duties (including fiduciary duties), and obligations

27   relating to or created by or pursuant to any security (as defined under section 2(a)(1) of the Securities Act of 1933 (15 U.S.C. 77b(a)(1)) and the regulations issued thereunder).").

28

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

piecemeal litigation.  The five actions pending in Nevada state court have not been and/or cannot be removed to federal court because subject-matter jurisdiction would be lacking under 28 U.S.C. § 1332(a), CAFA, and SLUSA, as discussed above.  Second, this action was the last-filed suit of the currently pending suits against Harbin and its Board of Directors related to the Proposal, so the timing of its filing does not favor retention of jurisdiction.  Third, litigating this action in the federal forum in Carson City is inconvenient because Harbin has sought to consolidate the Nevada state court actions before the Clark County Business Court in Las Vegas.  Fourth, there is no dispute that Nevada law governs Plaintiff's claims for breach of fiduciary duty, and precisely the same claims have been asserted in the Nevada state court actions.

Fifth, the Clark County Business Court is specifically designed to handle these types of disputes and will more than adequately protect Plaintiff's rights.  Pursuant to Rule 1.61 of the Rules of Practice for the Eighth Judicial District, "Business Matters" include (a) Business matters defined.  "Business matters" shall be:

> (1)  Matters in which the primary claims or issues are based on, or will require decision under NRS Chapters 78-92A or other similar statutes from other jurisdictions, without regard to the amount in controversy;
>
> (2)  Any of the following:
>
> (i)  Claims or cases arising under the Uniform Commercial Code, or as to which the Code will supply the rule of decision;
>
> (ii)  Claims arising from business torts;
>
> (iii)  Claims arising from the purchase or sale of (A) the stock of a business, (B) all or substantially all of the assets of a business, or (C) commercial real estate; or
>
> (iv)  Business franchise transactions and relationships.

EDCR 1.61.

The claims at issue here fit squarely within the mandate of the Business Court—*i.e.*, multiple complex shareholder claims brought in different forums on a class-wide basis against a

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

1    corporation organized under Nevada law, which would benefit from aggressive case management.

2    Given the nature of this case and the existence of the competing substantially identical actions in

3    Clark County, any action against Harbin and its directors arising out of the proposal by the

4    Buyout Group is most appropriately heard in the Business Court in Clark County. *See, e.g.,*

5    *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995) (under federal transfer-of-

6    venue statute, transferor court should consider, among other things, whether practical

7    considerations could make litigating the case easier or less expensive in the transferee court,

8    relative administrative difficulty in the two fora resulting from court congestion, and the

9    transferee court's familiarity with the applicable law).

10    Plaintiff will suffer no particular prejudice from this Court declining to exercise

11    jurisdiction over this action. By his own allegations, he is resident of Michigan, not Nevada.

12    Compl. ¶ 8. To the extent that he wants to serve as a lead plaintiff or his counsel as Lead

13    Counsel, no decision on that issue has been made by any court, including the Court in Clark

14    County. Indeed, in opposition to a pending motion by the counsel in the two Clark County cases

15    – *Necuze* and *Elliott* – Harbin has urged the Business Court to refrain from any decision at least

16    until all the Nevada state court cases have been transferred to a single venue, so that the court

17    may hear from all of the plaintiffs and their counsel on the appropriate structure for plaintiffs'

18    legal representatives in the event any case is permitted to go forward and a class is certified.

19    By contrast, allowing this action to proceed in federal court will prejudice Defendants by

20    requiring them to fight battles on multiple fronts, engage in duplicative discovery, depositions,

21    and motion practice at significant cost and expense to the parties. Even more to the point, the

22    parties will be subject to the possibility of varying and inconsistent judgments being entered in

23    each court. The convenience of the parties and interests of justice therefore counsel strongly in

24    favor of this Court declining to exercise jurisdiction over this Action.

25    . . .

26    . . .

27    . . .

28    . . .

**CONCLUSION**

For the foregoing reasons, Defendant Harbin Electric, Inc. respectfully requests that this Court dismiss Plaintiff's Complaint in its entirety without leave to replead.

DATED this <u>22nd</u> day of November, 2010.

BROWNSTEIN HYATT FARBER
SCHRECK, LLP


By:  <u>/s/ Tamara Beatty Peterson</u>
KIRK B. LENHARD, ESQ.
Nevada Bar No. 1437
TAMARA BEATTY PETERSON, ESQ.
Nevada Bar No. 5218
100 N. City Parkway, Suite 1600
Las Vegas, NV 89106
Telephone: (702) 382-2101
Facsimile:  (702) 382-8135
Email: klenhard@bhfs.com
Email: tpeterson@bhfs.com
*Attorneys for Defendant Harbin Electric, Inc.*

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(b), and section IV of District of Nevada Electric Filing Procedures, I certify that I am an employee of Brownstein Hyatt Farber Schreck, LLP, and that a true and correct copy of **DEFENDANT HARBIN ELECTRIC, INC.'S MOTION TO DISMISS AND SUPPORTING MEMORANDUM OF LAW** was served via electronic service, via CM/ECF, on this 22nd day of November, 2010, and to the address(es) shown below:

David C. O'Mara, Esq.
THE O'MARA LAW FIRM, P.C.
311 East Liberty Street
Reno, NV 89501
Email: david@omarlaw.net
*Attorneys for Plaintiff*

I further certify that I am familiar with the firm's practice of collection and processing documents for mailing; that in accordance therewith, I caused the above-named document to be deposited with the U.S. Postal Service at Las Vegas, Nevada, in a sealed envelope, with first-class postage prepaid, on the date and to the address(es) shown below:

Darren J. Robbins, Esq.
Randall J. Baron, Esq.
A. Rick Atwood, Esq.
David T. Wissbroecker, Esq.
David A. Knotts, Esq.
Eun Jin Lee, Esq.
ROBBINS GELLER RUDMAN & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
*Attorneys for Plaintiff*

Richard A. Maniskas, Esq.
RYAN & MANISKAS, LLP
995 Old Eagle School Road, Suite 311
Wyane, PA 19087
*Attorneys for Plaintiff*

/s/ Erin L. Parcells
Employee of Brownstein Hyatt Farber Schreck, LLP

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

### DECLARATION OF TAMARA BEATTY PETERSON, ESQ. IN SUPPORT OF DEFENDANT HARBIN ELECTRIC, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONSOLIDATION AND APPOINTMENT OF CO-LEAD COUNSEL

I, TAMARA BEATTY PETERSON, ESQ., declares as follows:

1.     I am a shareholder of Brownstein Hyatt Farber Schreck, LLP, attorneys for Defendant Harbin Electric, Inc. ("Harbin" or the "Company") in the above-captioned action.  I respectfully submit this declaration in support of Harbin's Opposition to Plaintiffs' Motion for Consolidation and Appointment of Co-Lead Counsel.[1]

2.     Attached hereto as Exhibit A is a true and correct copy of the SEC Schedule 13D/A filed by Tianfu Yang on October 12, 2010.

3.     Attached hereto as Exhibit B is a true and correct copy of the Company's Form 8-K filed on October 11, 2010.

4.     Attached hereto as Exhibit C is a true and correct copy of the Company's Form 8-K filed on October 29, 2010.

5.     Attached hereto as Exhibit D is a true and correct copy of the Complaint filed in the *Hurewitz* action.

6.     Attached hereto as Exhibit E is a true and correct copy of the Complaint filed in the *Sellier* action.

7.     Attached hereto as Exhibit F is a true and correct copy of the Complaint filed in the *Necuze* action.

8.     Attached hereto as Exhibit G is a true and correct copy of the Complaint filed in the *Elliott* action.

9.     Attached hereto as Exhibit H is a true and correct copy of the Complaint filed in the *Fisher* action.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

---

[1]     Incorporated by referenced herein are the terms defined in Harbin's Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Consolidation and Appointment of Co-Lead Counsel.

1

10.     Attached hereto as Exhibit I is a true and correct copy of the Complaint filed in the *Rosen* action.

11.     Attached hereto as Exhibit J is a true and correct copy of the Complaint filed in the *Sweeney* action.

12.     Attached hereto as Exhibit K is a true and correct copy of the Complaint filed in the *NCRS* action.

13.     Attached hereto as Exhibit L is a true and correct copy of the Complaint filed in the *Yun* action.

14.     Attached hereto as Exhibit M is a true and correct copy of the Complaint filed in the *Gould* action.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED on this 22nd day of November, 2010, in Las Vegas, Nevada.

TAMARA BEATTY PETERSON, ESQ.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

2

# EXHIBIT A

SC 13D/A 1 v198756_sc13da.htm

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

**SCHEDULE 13D/A**
Under the Securities Exchange Act of 1934
(Amendment No. 3)*

**Harbin Electric, Inc.**

(Name of Company)

Common Stock, par value $.00001

(Title of Class of Securities)

41145W 10 9

(CUSIP Number)

Tianfu Yang
Hero Wave Investments Limited
Xi Yuan 17-5, Wan Cheng Hua Fu,
Wan Liu Xi Lu, Hai Dian Qu,
Beijing, China 100089
(86) 45186116757

With copies to:
Michael V. Gisser
Peter X. Huang
Skadden, Arps, Slate, Meagher & Flom LLP
30th Floor, China World Office 2
No. 1, Jianguomenwai Avenue
Beijing 100004
China

(8610) 6535-5599

(Name, Address and Telephone Number of Person Authorized to
Receive Notices and Communications)

October 10, 2010

(Date of Event Which Requires Filing of this Statement)

If the filing person has previously filed a statement on Schedule 13G to report the acquisition that is the subject of this Schedule 13D, and is filing this schedule because of §§240.13d-1(e), 240.13d-1(f) or 240.13d-1(g), check the following box. ☐

Note: Schedules filed in paper format shall include a signed original and five copies of the schedule, including all exhibits. See §240.13d-7 for other parties to whom copies are to be sent.

* The remainder of this cover page shall be filled out for a reporting person's initial filing on this form with respect to the subject class of securities, and for any subsequent amendment containing information which would alter disclosures provided in a prior cover page.

The information required on the remainder of this cover page shall not be deemed to be "filed" for the purpose of Section 18 of the Securities Exchange Act of 1934 ("Act") or otherwise subject to the liabilities of that section of the Act but shall be subject to all other provisions of the Act (however, see the Notes).

NOTE: Mr. Yang, Loeb & Loeb to verify

| CUSIP No. | 41145W 10 9 |
|-----------|-------------|

| 1. | NAME OF REPORTING PERSON: Tianfu Yang<br>I.R.S. IDENTIFICATION NO. OF ABOVE PERSON (ENTITIES ONLY): N/A | | |
|----|----|----|----|
| 2. | CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP<br>(a)  ☐<br>(b)  ☒ | | |
| 3. | SEC USE ONLY | | |
| 4. | SOURCE OF FUNDS<br>OO | | |
| 5. | CHECK BOX IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO ITEM 2(d) OR 2(e): ☐ | | |
| 6. | CITIZENSHIP OR PLACE OF ORGANIZATION<br>People's Republic of China | | |
| NUMBER OF<br>SHARES<br>BENEFICIALLY<br>OWNED BY<br>EACH<br>REPORTING<br>PERSON<br>WITH | 7. | SOLE VOTING POWER<br>7,030,000 | |
| | 8. | SHARED VOTING POWER<br>2,633,354 | |
| | 9. | SOLE DISPOSITIVE POWER<br>7,030,000 | |
| | 10. | SHARED DISPOSITIVE POWER<br>2,633,354 | |
| 11. | AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON<br>9,663,354 | | |
| 12. | CHECK BOX IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES<br>CERTAIN SHARES<br>☐ | | |
| 13. | PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11)<br>31.11% | | |
| 14. | TYPE OF REPORTING PERSON<br>IN | | |

2

NOTE: Mr. Yang, Loeb & Loeb to verify

| CUSIP No. | 41145W 10 9 |

| | |
|---|---|
| 1. | NAME OF REPORTING PERSON: Hero Wave Investments Limited<br>I.R.S. IDENTIFICATION NO. OF ABOVE PERSON (ENTITIES ONLY):  N/A (1) |
| 2. | CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP<br>      (a)   ☐<br>      (b)   ☒ |
| 3. | SEC USE ONLY |
| 4. | SOURCE OF FUNDS<br>OO |
| 5. | CHECK BOX IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO ITEM 2(d) OR 2(e): ☐ |
| 6. | CITIZENSHIP OR PLACE OF ORGANIZATION<br>The People's Republic of China |

| NUMBER OF<br>SHARES<br>BENEFICIALLY<br>OWNED BY<br>EACH<br>REPORTING<br>PERSON<br>WITH | 7. | SOLE VOTING POWER<br>N/A |
|---|---|---|
| | 8. | SHARED VOTING POWER<br>2,633,354 |
| | 9. | SOLE DISPOSITIVE POWER<br>N/A |
| | 10. | SHARED DISPOSITIVE POWER<br>2,633,354 |

| | |
|---|---|
| 11. | AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON<br>2,633,354 |
| 12. | CHECK BOX IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES<br>CERTAIN SHARES<br>☐ |
| 13. | PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11)<br>8.48% |
| 14. | TYPE OF REPORTING PERSON<br>CO |

Footnotes:

(1)   Hero Wave Investments Limited is incorporated in the British Virgin Islands and does not have an I.R.S. Identification Number.

3

**Introductory Note**

This Amendment No. 3 (this "Amendment No. 3") is filed with respect to the company, Harbin Electric, Inc. (the "Company"), by Tianfu Yang ("Mr. Yang") and Hero Wave Investments Limited ("Hero", and together with Mr. Yang, the "Reporting Persons"). This Amendment No. 3 amends and supplements the schedule, as amended and supplemented to date, with respect to the Company filed by the Reporting Persons with the Securities and Exchange Commission on Schedule 13D (as amended and supplemented, the "Schedule 13D"). Except as provided herein, this Schedule 13D does not modify any of the information previously reported on the Schedule 13D.

The Reporting Persons are participants in the proposal discussed in Item 4 below, and may be deemed to constitute a "group" within the meaning of Section 13(d)-5(b) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"). As a member of a group, each Reporting Person may be deemed to beneficially own any Common Stock, par value $0.00001 per share, of the Company ("Common Stock") that may be beneficially owned by the members of the group as a whole. This Schedule 13D may be amended, or one or more additional statements on Schedule 13D may be filed, as necessary and appropriate.

**Item 1.        Security and Company**

This statement relates to shares of the common stock, par value $.00001 per share, of Harbin Electric, Inc., a Nevada corporation (the "Company"). The Company has its principal executive office at No. 9, Ha Ping Xi Lu, Ha Ping Lu Ji Zhong Qu, Harbin Kai Fa Qu, Harbin, Postal Code: 150060, China.

**Item 2.        Identity and Background**

(a) This Amendment No. 3 to Schedule 13D is filed by Tianfu Yang ("Mr. Yang") and Hero Wave Investments Limited ("Hero").

(b) Each of the Reporting Persons' residence or business address is as follows:

Mr. Yang's business address is Xi Yuan 17-5, Wan Cheng Hua Fu, Wan Liu Xi Lu, Hai Dian Qu, Beijing, China 100089.

Hero's business address is Xi Yuan 17-5, Wan Cheng Hua Fu, Wan Liu Xi Lu, Hai Dian Qu, Beijing, China 100089.

(c) Mr. Yang is a citizen of the People's Republic of China. Mr. Yang is the Chairman and Chief Executive Officer of the Company. Mr. Yang maintains an office at Xi Yuan 17-5, Wan Cheng Hua Fu, Wan Liu Xi Lu, Hai Dian Qu, Beijing, China 100089.

Hero is a holding company organized in the British Virgin Islands. Its sole business is making equity investments in operating companies. Its principal business address is Xi Yuan 17-5, Wan Cheng Hua Fu, Wan Liu Xi Lu, Hai Dian Qu, Beijing, China 100089.

(d) During the past five years, neither Hero nor any officer, director or control person of Hero has been convicted in a criminal proceeding (excluding traffic violations or similar misdemeanors).

4

During the past five years, Mr. Yang has not been convicted in a criminal proceeding (excluding traffic violations or similar misdemeanors).

(e) During the past five years, Mr. Yang has not been a party to a civil proceeding of a judicial or administrative body of competent jurisdiction, pursuant to which such person, was or is subject to a judgment, decree or final order enjoining future violations of, or prohibiting or mandating activities subject to, federal or state securities laws or finding any violation with respect to such laws.

During the past five years, neither Hero nor has any officer, director or control person of Hero been a party to a civil proceeding of a judicial or administrative body of competent jurisdiction, pursuant to which such person, was or is subject to a judgment, decree or final order enjoining future violations of, or prohibiting or mandating activities subject to, federal or state securities laws or finding any violation with respect to such laws.

(f) Mr. Yang is a citizen of the People's Republic of China. Hero is incorporated under the laws of the British Virgin Islands.

Information with respect to each of the Reporting Persons is given solely by such Reporting Person and no Reporting Person has responsibility for the accuracy or completeness of information supplied by another Reporting Person.

Item 3.       Source and Amount of Funds or Other Consideration

Mr. Yang is the beneficial owner of an aggregate of 9,663,354 shares of Common Stock, representing approximately 31.11% of the total issued and outstanding shares of Common Stock. This number includes the 2,633,354 shares of Common Stock, representing approximately 8.48% of the total issued and outstanding shares of Common Stock, beneficially owned by Hero.

The shares of Common Stock that Mr. Yang and Hero beneficially own were acquired (i) in connection with the reverse merger of Tech Full International, Inc. with and into a subsidiary of Torch Executive Services, Ltd (the predecessor of the Company), (ii) through a grant of stock options pursuant to the Company's 2005 Stock Option Plan, (iii) pursuant to the transfer of certain shares from a former employee of the Company, and (iv) in connection with the Company's acquisition of Harbin Taifu Auto Electric Co., Ltd.

The Acquirer (as defined below) intends to finance the proposed acquisition described in Item 4 of this Schedule through equity from the Reporting Persons and Baring as well as debt financing in amounts sufficient to finance the proposed consideration in the Acquisition (as defined below).

Item 4.       Purpose of Transaction

Mr. Yang acquired all of the shares of Common Stock owned by him for investment purposes, and to ensure that his interests are aligned with the Company's. He intends to remain the largest holder of the Common Stock over the long term, whether or not the possible acquisition discussed below in this Item 4 is successful.

5

On October 10, 2010, Mr. Yang and Baring Private Equity Asia Group Limited ("Baring") signed a consortium agreement (the "Consortium Agreement") providing that they would work with each other on an exclusive basis to negotiate and consummate the acquisition of all of the outstanding Common Stock in a going-private transaction (the "Acquisition"). The period of exclusivity under the Consortium Agreement currently in effect will end on the first to occur of: (i) April 10, 2011, (ii) the date of the definitive documentation providing for an Acquisition ("Definitive Documentation") and (iii) the consensual termination of the Consortium Agreement, provided that if Definitive Documentation is not signed before January 10, the exclusivity will terminate unless Mr. Yang consents. Pursuant to the Consortium Agreement, for a period of 6 months from the execution of such agreement, Mr. Yang agrees to vote his beneficially owned shares against a Competing Transaction (as defined in the Commission Agreement attached as Exhibit 7.03) not involving Baring, unless advised by Nevada counsel that such action would be contrary to law or Mr. Yang is prohibited from voting in the Competing Transaction by the independent directors of the Board. The Consortium Agreement also provides that upon consummation of an Acquisition all fees and expenses incurred by Mr. Yang and Baring will be reimbursed by the Acquirer. If there is no successful Acquisition, as a general matter Mr. Yang and Baring will each bear their own costs and fees associated with pursuing the Acquisition. The references to the Consortium Agreement in this Schedule 13D are qualified in its entirety by reference to the Consortium Agreement itself, which is attached hereto as an Exhibit and incorporated by reference as if set forth in its entirety.

Later on October 10, 2010, Mr. Yang and Baring submitted to the Company's Board of Directors (the "Board") a preliminary, non-binding letter (the "Proposal Letter") proposing an Acquisition at a purchase price of $24 per share of Common Stock. The Proposal Letter contemplates that the Reporting Persons and an investment fund advised by Baring will form an acquisition vehicle (the "Acquirer") for the purpose of pursuing the Acquisition through a merger, and that the Acquirer intends to finance the acquisition with a combination of debt and equity capital. The Proposal Letter contemplates that the equity portion of the financing will be provided by Mr. Yang, the Baring investment fund and related sources. The references to the Proposal Letter in this Schedule 13D are qualified in their entirety by reference to the Proposal Letter itself, which is attached hereto as an Exhibit and incorporated by reference as if set forth in its entirety. If the Acquisition is consummated, the Common Stock will no longer be traded on the Nasdaq Global Select Market and the registration of the Common Stock under Section 12 of the Exchange Act will be terminated.

Goldman Sachs (Asia) LLC ("Goldman Sachs") is acting as the Acquirer's financial advisor, and commitments for the debt financing for the Acquisition are expected to be in place when the Definitive Documentation is signed. Goldman Sachs has issued a letter dated October 10, 2010 (the "Goldman Sachs Letter") stating its preliminary indication of interest to potentially provide debt financing as specified in the Letter to finance the Acquisition, to refinance the Company's existing debt and to fund capital expenditure requirements of the Company. In the Goldman Sachs Letter, Goldman Sachs states that it is highly confident that the debt financing for the Acquisition can be arranged and underwritten in the market. This statement has significant assumptions and conditions set forth in the Goldman Sachs Letter. The references to the Goldman Sachs Letter in this Schedule 13D are qualified in their entirety by reference to the Goldman Sachs Letter itself, which is attached hereto as an Exhibit and incorporated by reference as if set forth in its entirety.

No assurances can be given that any agreement with the Company relating to the proposed Acquisition will be entered into or be consummated. The Proposal Letter provides that no binding obligation on the part of the Company or the Acquirer shall arise with respect to the proposed Acquisition unless and until Definitive Documentation has been executed and delivered.

Except as described above and elsewhere herein, the Reporting Persons do not have any present plan or proposal which relates to, or could result in the occurrence of, any of the events referred to in subparagraphs (a) through (j) of Item 4 of Schedule 13D (although they reserve the right to develop such plans).

6

The information set forth in this Item 4 shall be deemed to amend and restate Item 4 of the Schedule 13D filed by Mr. Yang and Hero, as previously amended, in its entirety. .

Item 5.        Interest in Securities of the Company

Item 5 is hereby amended and restated in its entirety as follows:

(a)-(b) The third and fourth pages of this Schedule 13D are incorporated herein by reference as if set forth in their entirety.

By virtue of the relationships among the Reporting Persons described herein, the Reporting Persons may be deemed to constitute a "group" within the meaning of Rule 13d–5(b) under the Exchange Act. As a member of a group, each Reporting Person may be deemed to beneficially own the Common Stock beneficially owned by the members of the group as a whole. The Reporting Persons beneficially own in the aggregate 9,663,354 shares of Common Stock, which represents approximately 31.11% of the outstanding Common Stock.

(c) To the best knowledge of each of the Reporting Persons, none of the Reporting Persons and no other person described in Item 2 hereof has effected any transactions relating to the Common Stock of the Company during the past 60 days.

(d) Other than Mr. Yang, no person has the right to receive or the power to direct the receipt of dividends from, or the proceeds from the sale of the shares owned by Hero.

Other than Hero, with respect to the 2,633,354 shares of Common Stock owned by Hero, no person has the right to receive or the power to direct the receipt of dividends from, or the proceeds from the sale of the shares owned by Mr. Yang.

(e) Not applicable.

Item 6.        Contracts, Arrangements, Understandings or Relationships with Respect to Securities of the Company.

Tianfu Yang is the holder of record of 100% of the equity interests of Hero, which holds approximately 8.48% of the issued and outstanding shares of the Common Stock of the Company. Mr. Yang has voting and dispositive control over the shares of the Company held by Hero. Mr. Yang is thereby deemed to have beneficial ownership of such shares.

Items 3 and 4 of this Schedule 13D are incorporated herein by reference.

Item 7.        Material to Be Filed as Exhibits

The following is filed herewith as Exhibits to this Statement:

Exhibit 7.01      Joint Filing Agreement by and among the Reporting Persons, dated October 12, 2010

Exhibit 7.02      Proposal Letter to the Board of Directors of Harbin Electric, Inc., dated October 10, 2010.

Exhibit 7.03      Consortium Agreement by and among Mr. Yang and Baring, dated October 10, 2010.

Exhibit 7.04      Goldman Sachs Letter dated October 10, 2010.

7

## SIGNATURE

After reasonable inquiry and to the best of our knowledge and belief, the undersigned certify that the information set forth in this statement is true, complete and correct.

Dated:   October 12, 2010

Tianfu Yang
/s/ Tianfu Yang
Name: Tianfu Yang

Hero Wave Investments Limited
By:     /s/ Tinfu Yang
Name: Tianfu Yang
Title: Director

8

EX-7.01 2 v198756_ex7-01.htm

**EXHIBIT 7.01**

### AGREEMENT OF JOINT FILING

The parties listed below agree that the Amendment No. 3 to Schedule 13D to which this agreement is attached as an exhibit, and all further amendments thereto, shall be filed on behalf of each of them. This Agreement is intended to satisfy Rule 13d-1(k) under the Securities Exchange Act of 1934, as amended. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

Dated:   October 12, 2010

Tianfu Yang
/s/ Tianfu Yang
Name: Tianfu Yang

Hero Wave Investments Limited
By:      /s/ Tinfu Yang
Name: Tianfu Yang
Title: Director

EX-7.02 3 v198756_ex7-02.htm

EXHIBIT 7.02

## PROPOSAL LETTER

YANG TIANFU
BARING PRIVATE EQUITY ASIA GROUP

October 10, 2010

The Board of Directors
Harbin Electric, Inc.
No. 9 Ha Ping Xi Lu,
Ha Ping Lu Ji Zhong Qu
Harbin Kai Fa Qu, Harbin
P.R. China 150060

Dear Sirs:

Mr. Yang Tianfu ("Mr. Yang") and Baring Private Equity Asia Group Limited ("Baring") are pleased to submit this preliminary non-binding proposal to acquire Harbin Electric, Inc. (the "Company") in a going-private transaction (the "Acquisition").

We believe that our proposal of $24.00 in cash per share will provide a very attractive alternative to the Company's shareholders. Our proposal represents a premium of 20.2% to the Company's closing price on October 8, 2010 and a premium of 35.1% to the volume-weighted average closing price during the last 60 trading days.

As you are aware, Baring has been evaluating a possible investment in the Company over the past several months, and have come away tremendously impressed with the high quality of the Company's business and its management team.

The terms and conditions upon which we are prepared to pursue the Acquisition are set forth below. We are confident in our ability to consummate an Acquisition as outlined in this letter.

1. Buyer. Mr. Yang and Baring have entered into a letter agreement dated October 10, 2010, pursuant to which Mr. Yang and an investment fund advised by Baring (the "Baring Fund") would form an acquisition vehicle ("Buyer") for the Acquisition for the purpose of pursuing the Acquisition on an exclusive basis over the next six months.

2. Purchase Price. The consideration payable for each publicly held share of outstanding common stock of the Company (other than those held by Mr. Yang and his affiliates ) will be $24.00 per share in cash.

3. Financing. We intend to finance the Acquisition with a combination of debt and equity capital. Goldman Sachs (Asia) LLC ("Goldman") is acting as Buyer's financial advisor and we expect commitments for the debt financing to be in place when the Definitive Agreements (as defined below) are signed. Goldman has indicated that it is highly confident that the underwriting and arranging of this financing in the market can be done subject to satisfaction with the terms specified in the Highly Confident Letter issued on October 10, 2010. Equity financing would be provided from Mr. Yang and the Baring Fund and related sources.

1

4. Due Diligence. We believe that we will be in a position to complete our due diligence for the Acquisition within thirty days after receiving access to the relevant materials.

5. Definitive Agreements. We are prepared to negotiate and finalize definitive agreements (the "Definitive Agreements") concurrently with our due diligence review. This proposal is subject to execution of Definitive Agreements. Those documents will provide for covenants and conditions typical and appropriate for transactions of this type.

6. Confidentiality. Mr. Yang will, as required by law, promptly file an amendment to his Schedule 13D to disclose this letter and his agreement with Baring. However, we are sure you will agree with us that it is in all of our interests to ensure that we proceed in a confidential manner, unless otherwise required by law, until we have executed Definitive Agreements or terminated our discussions.

7. About Baring. Baring Private Equity Asia is the largest regional growth equity firm in Asia with US$2.5 billion under management. The firm specializes in growth equity investments and mid-market buyouts targeting growing businesses with enterprise values between US$100 million and US$1 billion that require capital for expansion, recapitalization or for M&A. Primary investment markets include China, India, Japan, Singapore, Hong Kong, and Taiwan. The firm has invested in Asia since 1997, and today has 31 active portfolio companies.

8. Process. We believe that the Acquisition will provide superior value to the Company's shareholders. We recognize of course that the Board will evaluate the proposed Acquisition independently before it can make its own determination whether to endorse it. Given Mr. Yang's involvement in the proposed Acquisition, we appreciate that the independent members of the Board will proceed to consider the proposed Acquisition and that Mr. Yang will recuse himself from participating in any Board deliberations and decisions related to the Acquisition.

9. No Binding Commitment. This letter constitutes only a preliminary indication of our interest, and does not constitute any binding commitment with respect to an Acquisition. Such a commitment will result only from the execution of Definitive Agreements, and then will be on the terms provided in such documentation.

2

In closing, each of us would like to personally express our commitment to working together in bringing this Acquisition to a successful and timely conclusion. Should you have any questions regarding this proposal, please do not hesitate to contact Jean Salata of Baring at +852 2843 9318 and Richard Campbell-Breeden of Goldman at +852 2978 1887. We look forward to hearing from you.

Sincerely,

Mr. Yang Tianfu

Baring Private Equity Asia Group Limited

By: _____

Name: Jean Eric Salata
Title:  Founder and CEO

3

BX-7.03 4 v198756_ex7-03.htm

EXHIBIT 7.03

CONSORTIUM AGREEMENT

[BARING ASIA LETTERHEAD]

October 10, 2010

Mr. Tianfu Yang
No. 9, Ha Ping Xi Lu
Ha Ping Lu Ji Zhong Qu
Harbin Kai Fa Qu
P.R. China 150060

Dear Mr. Yang:

As you are aware, Baring Private Equity Asia Group Limited ("Baring") has been reviewing and evaluating various investment opportunities concerning Harbin Electric, Inc. (the "Company"). We are interested in pursuing with you a possible acquisition of the Company (the "Transaction") through a special purpose vehicle ("Bidco") to be owned by an investment fund advised by Baring and related affiliates, and you and your nominees (collectively, the "Shareholder"). As a condition to the delivery of a preliminary non-binding proposal letter to the Company (the "Proposal Letter", the form of which is set forth in Exhibit A hereto) and to further our discussions relating to the Transaction, the Shareholder and Baring agree to the following:

1.   Certain Definitions.

"Competing Transaction" shall mean (i) any direct or indirect acquisition by any person or entity of 10% or more of the securities of the Company or any of its material subsidiaries or all or substantially all of its assets, and (ii) a recapitalization, restructuring, merger, consolidation or other business combination involving the Company or any of its material subsidiaries. For the avoidance of doubt, the Competing Transaction does not include the senior bank debt financing transaction being contemplated by the Company (the "Bank Debt Transaction").

"Exclusivity Period" shall mean the period from beginning on the date hereof and ending on the first to occur of: (i) the date six months after the date hereof, (ii) the date of execution and delivery of definitive documentation providing for the Transaction ("Definitive Agreements") and (iii) the mutually agreed termination of this letter agreement; provided that if Definitive Agreements are not entered into prior to the date three months after the date hereof, the Exclusivity Period shall be terminated, unless with your written consent.

"Representatives" shall mean, with respect to a person, such person's employees, directors, officers, partners, members, affiliates, agents, advisors (including but not limited to legal counsel, accountants, consultants and financial advisors), and any representatives of the foregoing. The Representatives shall include the Advisors as defined in Section 3 (c).

"Shareholder Shares" shall mean all capital stock of the Company owned by the Shareholder as of the date hereof either directly or through a holding vehicle.

2.   Commitment to the Consortium.

(a)   Within the Exclusivity Period, Mr. Yang shall recuse himself from any discussions, negotiations or related activities on behalf of the Company and its Board of Directors (the "Board") in connection with any Competing Transaction; provided that, if Mr. Yang determines, consistent with the advice of legal counsel, that he is obligated (in his capacity as Chief Executive Officer, Chairman or a member of the Board) to cooperate with the Company (as requested by the Company) concerning a Competing Transaction in order for him to comply with his fiduciary duties under applicable law, Mr. Yang may provide such cooperation to the extent required to comply with such fiduciary duties.

(b)   Within the Exclusivity Period and subject to Section 2(a), the Shareholder and Baring agree to deal exclusively with each other with respect to the Transaction and neither the Shareholder nor Baring will, and will cause Bidco and their respective Representatives not to, without the written consent of the other or otherwise in the context of pursuing the Transaction: (i) directly or indirectly initiate, solicit, encourage or otherwise engage in discussions or negotiations with the Company or any third party with respect to a Competing Transaction, (ii) provide any information to any third party with a view to the third party or any other person pursuing or considering to pursue a Competing Transaction, or (iii) enter into any written or oral agreement, arrangement or understanding (whether legally binding or not) regarding, or do or omit to do, anything which is directly inconsistent with the Transaction as contemplated under this letter agreement.

(c)   The Shareholder agrees that, within the Exclusivity Period, it will not, and will not permit any of its Representatives to, directly or indirectly: (i) sell, offer to sell, give, pledge, encumber, assign, grant any option for the sale of or otherwise transfer or dispose of, or enter into any agreement, arrangement or understanding to sell, any Shareholder Shares ("Transfer"), or enter into any contract, option or other arrangement or understanding with respect to a Transfer or limitation on voting rights of the Shareholder Shares, or any right, title or interest thereto or therein, (ii) deposit any Shareholder Shares into a voting trust or grant any proxies or enter into a voting agreement, power of attorney or voting trust with respect to any Shareholder Shares, (iii) take any action that would make have the effect of preventing, disabling or delaying the Shareholder from performing its obligations under this letter agreement or (iv) agree (whether or not in writing) to take any of the actions referred to in the foregoing clauses (i), (ii) or (iii) of this Section 2(c), except in order to comply with the Shareholder's contractual obligation relating to the Bank Debt Transaction, if any.

2

(d)     Subject to Section 2(a), the Shareholder will, and will cause its Representatives to, immediately cease and terminate any existing activities, discussions and negotiations in connection with any Competing Transaction other than with Baring or its affiliates.  During the Exclusivity Period, the Shareholder shall provide Baring notice of any unsolicited offer or proposal received in relation to any Competing Transaction, including the terms of any such offer or proposal, and any written communications with respect thereto.

(e)     Mr. Yang shall, and shall cause the Shareholder to, vote all of the Shareholder Shares against any Competing Transaction not involving Baring or its affiliates within 6 months after the date hereof, unless (i) Mr. Yang is advised by Nevada counsel reasonably acceptable to Baring (details of which advice are provided to Baring), advising him that he is prohibited by Nevada law from voting against the Competing Transaction, or (ii) the Board or the independent Directors has notified Mr. Yang in writing prohibiting him from voting in relation to the Competing Transaction.

3.     Process.

(a)     Upon signing of this letter agreement, Baring and Mr. Yang will promptly deliver the Proposal Letter to the Board of Directors of the Company.  The Shareholder intend to prepare and submit a joint filing with the U.S. Securities and Exchange Commission to amend its existing Schedule 13D and to disclose the execution of this letter agreement and the delivery of the Proposal Letter.

(b)     Within the Exclusivity Period and as permitted by the Board of Directors of the Company, Baring and the Shareholder shall as promptly as reasonably practicable conduct a joint assessment of the Company and shall in good faith and with mutual cooperation use their reasonable best efforts to work together to structure, negotiate and do all things necessary or desirable, subject to Company approval, to enter into the Definitive Agreements within three months after the date hereof. This letter does not constitute any binding commitment with respect to a Transaction.  Such a commitment will result only from the execution of Definitive Agreements, and then will be on the terms provided in such documentation. Baring shall coordinate with the Shareholder in performing due diligence, securing senior and mezzanine debt (as applicable) and equity financing, and structuring and negotiating the Transaction; provided, however, that in no event will either party hereto be obligated without such party's consent to enter into or otherwise be a party to any Definitive Agreements.  This letter constitutes only a preliminary arrangement relating to a Transaction, and does not constitute any binding commitment with respect to a Transaction.

(c)     Goldman Sachs (Asia) LLC ("GS") is acting as financial and placement advisor to the consortium in connection with the Transaction.  All other advisors to the consortium (collectively with GS, the "Advisors") shall be jointly selected by Baring and the Shareholder.

3

4.   **Confidentiality.** Each of the Shareholder and Baring shall, and shall direct its Representatives to, keep this letter agreement and the Transaction confidential and shall not make any public statement or announcement concerning or disclose to any third party the fact that discussions or negotiations are taking place concerning the Transaction or any of the terms, conditions or other facts with respect thereto, including the status thereof, other than as mutually agreed in writing by the Shareholder and Baring or as required by applicable laws, rules or regulations. Each of Baring and the Shareholder will coordinate in good faith all press releases and other public relation matters relating to the Transaction.

5.   **Shareholders Agreement.** The Shareholder and a special purpose subsidiary of an investment fund advised by Baring shall, and shall cause Bidco to, enter into a shareholders agreement (the "**Shareholders Agreement**") at or prior to the completion of the Transaction, on terms and conditions mutually agreed by Baring and the Shareholder.

6.   **Certain Fees and Expenses.**

(a)   If the Transaction is not eventually consummated without any breach by either Baring or the Shareholder of this letter agreement, the parties agree to share (in proportion to their respective equity participation in the Transaction) fees and out-of-pocket expenses payable by them in connection with the Transaction incurred prior to the termination of this letter agreement, including any fees and expenses (i) payable to the Advisors, (ii) payable to any lenders and other financing sources, and (iii) incurred in the defense, pursuit or settlement of any disputes or litigation relating to the Transaction (whether incurred prior to the termination of this letter agreement or not); provided that, Baring shall be solely responsible for the fees and expenses of Bain, Deloitte and Weil, Gotshal & Manges, LLP and the Shareholder shall be solely responsible for the fees and expenses of Skadden, Arps, Slate, Meagher & Flom LLP; provided further that each party shall bear its own fees and expenses incurred prior to October 10, 2010.

(b)   Upon consummation of the Transaction, Bidco shall reimburse each party hereto for all fees and out-of-pocket expenses incurred by them in connection with the Transaction. Notwithstanding the foregoing, in the event this letter agreement is terminated and one of the parties consummates the Transaction within twelve months of such termination, such party shall reimburse the other party for the fees and out-of-pocket expenses incurred by such other party in connection with the Transaction within two business days of the consummation of the Transaction.

(c)   Each of the Shareholder and Baring shall share, ratably based on such party's planned equity participation in the Transaction, any termination, topping, break-up or other fees or amounts (including amounts paid in settlement of any dispute or litigation relating to the Transaction) payable by the Company or Bidco (or one or more of its affiliates or designees), net of the expenses required to be borne by them pursuant to Section 6(a).

4

7.   Remedies. It is understood and agreed that money damages may not be a sufficient remedy for a breach of this letter agreement by any party hereto and that each party hereto shall be entitled to seek equitable relief, including injunction and specific performance, as a remedy for any such breach by the other party. Such remedies shall not be deemed to be the exclusive remedies for a breach by a party of this letter agreement but shall be in addition to all other remedies available at law or equity to the other party hereto. Each of the parties hereto further agrees not to raise as a defense or objection to the request or granting of such relief that any breach of this letter agreement is or would be compensable by an award of money damages, and each party hereto agrees to waive any requirements for the securing or posting of any bond in connection with such remedy.

8.   Governing Law; Arbitration. This letter agreement and all matters arising out of or relating to this letter agreement shall be governed by and construed in accordance with the laws of Hong Kong, without reference to conflict of laws principles. Any dispute, controversy or claim arising out of or relating to this letter agreement, including the validity, invalidity, breach or termination thereof, shall be settled by arbitration in Hong Kong under the Hong Kong International Arbitration Centre Administered Arbitration Rules (the "Rules") in force when the notice of arbitration is submitted in accordance with these Rules. There shall be three arbitrators. The arbitration proceedings shall be conducted in English.

9.   No Modification. No provision in this letter agreement can be waived, modified or amended except by written consent of the parties, which consent shall specifically refer to the provision to be waived, modified or amended and shall explicitly make such waiver, modification or amendment.

10.   No Waiver of Rights. It is understood and agreed that no failure or delay by any party hereto in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege hereunder.

11.   Counterparts; Entire Agreement. This letter agreement may be signed and delivered by facsimile or portable document format via electronic mail and in one or more counterparts, each of which shall be deemed an original but all of which shall be deemed to constitute a single instrument. This Agreement sets forth the entire agreement and understanding among the parties and supersedes all prior agreements, discussions and documents relating thereto. No party hereto will be entitled to punitive, exemplary, special, unforeseen, incidental, indirect or other consequential damages.

12.   Severability. If any provision of this letter agreement is found to violate any statute, regulation, rule, order or decree of any governmental authority, court, agency or exchange, such invalidity shall not be deemed to affect any other provision hereof or the validity of the remainder of this letter agreement, and such invalid provision shall be deemed deleted herefrom to the minimum extent necessary to cure such violation.

14.   Successors. This letter agreement shall inure to the benefit of, and be binding upon, the parties and their respective successors and assigns. Neither party may assign or transfer, directly or indirectly, its rights or obligations under this letter agreement without the prior written consent of the other except as provided herein. No assignment will receive the assignor of its obligations hereunder.

5

15.    No Third Party Beneficiaries.  Unless otherwise specifically provided herein, the parties hereto each agree and acknowledge that nothing herein expressed or implied is intended to confer upon or give any rights or remedies to person not party to this agreement under or by reason of this letter agreement.

16.    Term.  This letter agreement shall terminate on the earlier of (i) the first anniversary of the date hereof and (ii) the execution and delivery of the Definitive Agreements; provided that Sections 2(e) and 6 through 15 shall survive any termination of this letter agreement.

6

Please confirm your agreement with the foregoing by having a duly authorized officer of your organization sign and return one copy of this letter to the undersigned, whereupon this letter agreement shall become a binding agreement among Mr. Yang and Baring.

Very truly yours,

BARING PRIVATE EQUITY ASIA GROUP LIMITED

By: _____
      Name:
      Title:

CONFIRMED AND AGREED
as of the date written above:

By: _____
      Tianfu Yang

Signature Page to Consortium Agreement

Exhibit A

Proposal Letter

8

Page 1 of 2

EX-7.04 5 v198756_ex7-04.htm

EXHIBIT 7.04

## GOLDMAN SACHS LETTER

PRIVATE AND CONFIDENTIAL

Mr. Dar Chen
Baring Private Equity Asia
Suite 2801, Two International Finance Centre
Central, Hong Kong

10 October, 2010

Dear Mr. Chen,

Goldman Sachs (Asia) L.L.C. is pleased to present its preliminary indication of interest to Baring Private Equity Asia and Mr. Tianfu Yang, Chairman and CEO of Harbin Electric Incorporated (the "Sponsors") to potentially provide debt financing (the "Debt Financing") in the form of US$425mm senior secured credit facilities and US$45mm junior secured mezzanine facility, as part of the financing you may require to acquire all of the shares in Harbin Electric Incorporated (the "Target"), to refinance the Target's existing debt (the "Acquisition") and to fund capital expenditure requirements of the Target.

We expect that the Debt Financing should attract positive interest in both the senior and mezzanine debt markets. Goldman Sachs (Asia) L.L.C. and or its affiliates ("Goldman Sachs") is therefore highly confident that the Debt Financing can be arranged and underwritten in the market subject to the terms of this letter and we believe that we should be able to work expeditiously with you towards completing the Acquisition based on our understanding of the capital markets and industry sector, together with our substantial US, European and Asian financing experience in the senior bank loan, mezzanine and high yield capital markets in recent comparable transactions

This letter of interest is subject to customary conditions, including, amongst others: (i) satisfactory determination of the structure of the Acquisition and the terms and conditions of the Debt Financing, (ii) satisfactory completion of due diligence, including but not limited to Deloitte's review of the Target's historical financials as well as other third-party due diligence (iii) receipt of all internal credit committee and other required external approvals, (iv) no material adverse change in the capital and/or broader financing markets or in the business, financial condition, assets or prospect of the Sponsors and the Target, and (v) execution of documentation relating to the Acquisition and the Debt Financing in a form satisfactory to Goldman Sachs.

The terms of this letter and its existence are confidential. This letter of interest is issued for your benefit only and no other person or entity may rely on it, except that you may disclose a copy to Harbin Electric Incorporated (the "Vendor") and its advisers for the purpose only of substantiating our interest in the Debt Financing, subject always to the terms of this letter and on the basis that the Vendor and its advisers may place no reliance on it and may not disclose it to any other party. Goldman Sachs shall not be responsible or liable to you or to any other person or entity for any damages or loss that may be alleged as a result of this letter.

Save for your obligation of confidentiality described above, this letter is not intended to create legal relations between us and is not an offer of financing or a commitment with respect to the Debt ·

Financing or any other financing and creates no obligation or liability on Goldman Sachs to provide, arrange, underwrite or participate in any financing.

We look forward to working with you to complete the Acquisition and Debt Financing.

For and on behalf of
Goldman Sachs (Asia) L.L.C.

Eric Greenberg
Managing Director