# EXHIBIT I

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

F. DeARMOND SHARP, ESQ.
Nevada State Bar No. 780
Robison, Belaustegui, Sharp & Low
71 Washington Street
Reno, NV 89503
Tel:    775-329-3151
Fax:    775-329-7941
Email: dsharp@rbsllaw.com

I. STEPHEN RABIN, ESQ.
Rabin & Peckel LLP
317 Madison Avenue, 21st Floor
New York, NY 10017
Tel:    212-880-3722
Fax:    212-880-3716
Email: srabin@rabinpeckel.com

JEFFREY H. SQUIRE, ESQ.
Bragar Wexler Eagel & Squire, P.C.
885 Third Avenue, Suite 3040
New York, NY 10022
Tel:    212-308-5858
Fax:    212-208-2519

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| BERTRAND SELLIER, On Behalf of Himself and All Others Similarly Situated<br><br>Plaintiff,<br><br>v.<br><br>HARBIN ELECTRIC, INC., TIANFU YANG, CHING CHUENG CHAN, BOYD PLOWMAN, DAVID GATTOM, YUNYUE YE, and LANXIANG GAO,<br><br>Defendants. | Case No.<br><br><br>**SHAREHOLDER CLASS ACTION COMPLAINT** |

Plaintiff Bertrand Sellier, as and for his class action complaint, alleges upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.    This is a stockholder class action brought by plaintiff on behalf of the public holders of the common stock of Harbin Electric, Inc. ("Harbin" or the "Company") against Harbin and its directors for injunctive and other relief arising from a proposal from defendant Tianfu Yang and an investment fund advised by Baring Private Equity Asia Group Limited to acquire the Company for inadequate consideration in a transaction pursuant to which Mr. Yang and his affiliates will own the resulting private company.

## JURISDICTION

2.    This Court has original jurisdiction of this civil action in which the matter in controversy exceeds the sum of $5,000,000.00 exclusive of interest and costs and is a Class Action in which the Plaintiff is a citizen of the State of New York and the Defendant Harbin is a Nevada corporation whose registered agent is located in Carson City, Nevada, and whose headquarters are located at No. 9 Ha Ping Xi Lu, Lu Ji Zhong Qu, Harbin Kai Fa Qu, Harbin, People's Republic of China 150060, and Defendants Yang, Chan, Ye and Gao are citizens of China.

## PARTIES

3.    Plaintiff Bertrand Sellier has been the beneficial owner of the Company's common stock at all relevant times and continues to be the beneficial owner of such shares.

4.    Defendant Harbin is a Nevada corporation with its headquarters located at No. 9 Ha Ping Xi Lu, Lu Ji Zhong Qu, Harbin Kai Fa Qu, Harbin, People's Republic of China 150060. The Company's registered agent is The Corporation Trust Company of Nevada which is located

at 311 S. Division Street, Carson City, NV 89703.  The Company's United States offices are located at 20 Ramblewood Road, Shoreham, NY 11786.  The Company designs, develops, and manufactures linear motors and special electric motors. The Company's common stock trades on the Nasdaq under the symbol "HRBN."

5.     Defendant Tianfu Yang has served as Chairman of the Board of Directors and Chief Executive of the Company since January 24, 2005.  Defendant Yang owns 31.1% of the Company's common stock.

6.     Defendant Ching Chuen Chan has served as a director of the Company since February 1, 2005.

7.     Defendant Boyd Plowman has served as a director of the Company since December 1, 2009.

8.     Defendant David Gatton has served as a director of the Company since February 1, 2005.

9.     Defendant Yunye Ye has served as a director of the Company since October 12, 2006.

10.    Defendant Lanxiang Gao has served as a director of the Company since September 26, 2008.  The Company's proxy statement indicates that Gao is not an independent director.

11.    The directors and executive officers as a group control 35.2% of the Company's common stock.

12.    The Individual Defendants (named herein in paragraphs 4 to 9), as officers and/or directors of the Company, and/or substantial shareholders of the Company stand in a fiduciary relationship to plaintiff and the other public stockholders of the Company and owe them the highest fiduciary obligations of good faith, fair dealing, and full and candid disclosure.

3

### DEMAND FOR JURY

13.     Plaintiff hereby demands a jury for the trial of this matter.

### CLASS ACTION ALLEGATIONS

14.     Plaintiff, a shareholder of the Company, brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all public common stock holders of the Company.  Excluded from the Class are defendants, members of the immediate families of the defendants, their heirs and assigns, and those in privity with them.

15.     The members of the Class are so numerous that joinder of all of them would be impracticable.  While the exact number of Class members is unknown to plaintiff, and can be ascertained only through appropriate discovery, plaintiff believes there are many thousands of Class members.  As of August 6, 2010, the Company had 31,067,471 shares of common stock outstanding.

16.     Plaintiff's claims are typical of the claims of the Class, since plaintiff and the other members of the Class have and will sustain damages arising out of defendants' breaches of their fiduciary duties.  Plaintiff does not have any interests that are adverse or antagonistic to those of the Class.  Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff is committed to the vigorous prosecution of this action and has retained counsel competent and experienced in this type of litigation.

17.     There are questions of law and fact common to the members of the Class including, among others, whether: (a) the defendants have and are breaching their fiduciary duties to the detriment of the Company's shareholders; and (b) the Class has been damaged and the extent to which members of the Class have sustained damages, and what is the proper measure of those damages.

4

18.    The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for defendants, or adjudications with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

19.    Defendants have acted, or refused to act, on grounds generally applicable to, and causing injury to, the Class and, therefore, preliminary and final injunctive relief on behalf of the Class as a whole is appropriate.

## SUBSTANTIVE ALLEGATIONS

20.    On October 11, 2010, before the market open, the Company announced, in pertinent part, the following:

> its Board of Directors has received a proposal letter from its Chairman and Chief Executive Officer, Mr. Tianfu Yang ("Mr. Yang") and Baring Private Equity Asia Group Limited ("Baring") for Mr. Yang and an investment fund advised by Baring (the "Baring Fund") to acquire all of the outstanding shares of Common Stock of Harbin not currently owned by Mr. Yang and his affiliates in a going private transaction for $24.00 per share in cash, subject to certain conditions. Mr. Yang owns 31.1% of Harbin's Common Stock. According to the proposal letter, an acquisition vehicle for the purpose of completing the acquisition will be formed and the acquisition is intended to be financed with a combination of debt and equity capital. The proposal letter states that the equity portion of the financing would be provided by Mr. Yang, the Baring Fund and related sources. The proposal letter also states that Goldman Sachs (Asia) LLC ("Goldman") is acting as financial advisor to the acquisition vehicle to be formed by Mr. Yang and the Baring Fund.

21.    Prior to the announcement, the Company's common stock closed at $19.96 per share on October 8, 2010.

22.    The proposed purchase price of $24.00 per share represents only a 20% premium over the Company's closing price.

23.   The proposed purchase price is substantially below the premium to share price typically associated with such transactions.

24.   The proposed purchase price is unfair and inadequate consideration because, among other things, the intrinsic value of the Company's stock is materially in excess of the price per share that defendant Yang is offering, giving due consideration to the Company's prospects for growth and profitability in light of its business, earnings power, present and future. For example, revenue more than doubled in the second quarter on sharply improving demand and net income also increased significantly.

25.   Recognizing the increasing value of the Company's performance and the potential for even greater growth, defendant Yang has determined to deny the Company's public shareholders the opportunity to obtain fair value for their equity interest by proposing a transaction at an inadequate and unfair price.

26.   Given defendant Yang's ownership of 31.1% of the Company and his presence on the Board of Directors, he is able to dominate and control the other directors.  Under the circumstances, the other director defendants cannot be expected to protect the Company's public shareholders in a transaction which will benefit defendant Yang at the expense of the Company's public shareholders.

27.   Because of the stock ownership of the Company by defendant Yang, no third party, as a practical matter, can attempt any competing bid for the Company as the success of any such bid would require the consent and cooperation of defendant Yang.

28.   The Individual Defendants' fiduciary obligations under the circumstances of the proposal are obligated to:

        (a)   undertake an appropriate evaluation of the Company's net worth as a merger/acquisition candidate;

6

(b)     actively evaluate the proposal in an attempt to obtain the best value for the Company's public shareholders;

(c)     act independently so that the interests of the Company's public shareholders will be protected and enhanced;

(d)     ascertain whether there are other prospective acquirers of Harbin at a price higher than the proposal; and

(e)     adequately ensure that no conflicts of interest exist between the Individual Defendants' own interests and their fiduciary obligations, and, if such conflicts exist, to ensure that all conflicts are resolved in the best interests of the Company's public shareholders.

29.     The Individual Defendants cannot fulfill their fiduciary duties by reason of the acts and transactions complained of herein.

30.     Plaintiff and the other members of the Class will suffer irreparable injury unless defendants are enjoined from breaching their fiduciary duties to the Company's public shareholders in a proposed transaction which will benefit the defendant Yang at the expense of the Company's public shareholders.

31.     By reason of the foregoing, plaintiff and each member of the class is suffering irreparable injury and damages.

32.     Plaintiff and other members of the class have no adequate remedy at law.

WHEREFORE, Plaintiff demands judgment against defendants, jointly and severally, as follows:

a)     certifying this action as a class action and plaintiff as a Class representative and plaintiff's counsel as Class counsel;

b)     enjoining the proposal preliminarily and permanently;

7

c)   to the extent the proposal is consummated prior to the entry of this Court's final judgment, rescinding it or granting the Class rescissory damages;

d)   awarding plaintiff and the Class compensation for all damages they sustain as a result of defendants' unlawful contact;

e)   directing that the defendants account to plaintiff and the other members of the Class for all profits and any special benefits obtained as a result of their unlawful conduct.

f)   awarding plaintiff the costs and disbursements of this action, including a reasonable allowance of attorneys' fees and expenses; and

g)   granting such other relief as the Court may find just and proper.

Dated: October 13, 2010

ROBISON, BELAUSTEGUI, SHARP & LOW

*/s/ F. DeArmond Sharp*
F. DeArmond Sharp
71 Washington Street
Reno, NV 89503
Tel: 775-329-3151
Fax: 775-329-7941

RABIN & PECKEL LLP
I. Stephen Rabin
317 Madison Avenue, 21st Floor
New York, NY 10017
Telephone: 212-880-3722
Facsimile: 212-880-3716

BRAGAR WEXLER EAGEL & SQUIRE, P.C.
Jeffrey H. Squire
885 Third Avenue, Suite 3040
New York, NY 10022
Telephone: 212-308-5858
Facsimile: 212-208-2519

*Attorneys for Plaintiff*

Case 3:10-cv-00645   Document 1   Filed 10/13/10   Page 9 of 23

℀JS 44   (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| BERTRAND SELLIER | HARBIN ELECTRIC, INC., TIANFU YANG, CHING CHUENG CHAN, BOYD PLOWMAN, DAVID GATTOM, YUNYUE, AND☒ |
| **(b)** County of Residence of First Listed Plaintiff _____<br>(EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant _____<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE<br>LAND INVOLVED. |
| **(c)** Attorney's (Firm Name, Address, and Telephone Number)<br>F. DeArmond Sharp, Robison, Belaustegui, Sharp & Low, 71<br>Washington St., Reno, NV  89503 775-329-3151 | Attorneys (If Known) |

| II. BASIS OF JURISDICTION (Place an "X" in One Box Only) | III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff |
|---|---|
|  | (For Diversity Cases Only)   and One Box for Defendant) |

| II. BASIS OF JURISDICTION | | III. CITIZENSHIP OF PRINCIPAL PARTIES | | | | |
|---|---|---|---|---|---|---|
| ☐ 1  U.S. Government<br>Plaintiff | ☐ 3  Federal Question<br>(U.S. Government Not a Party) | | **PTF   DEF** | | **PTF   DEF** | |
| | | Citizen of This State | ☐ 1    ☐ 1 | Incorporated or Principal Place<br>of Business In This State | ☐ 4    ☐ 4 | |
| ☐ 2  U.S. Government<br>Defendant | ☒ 4  Diversity<br>(Indicate Citizenship of Parties in Item III) | Citizen of Another State | ☒ 2    ☐ 2 | Incorporated and Principal Place<br>of Business In Another State | ☐ 5    ☐ 5 | |
| | | Citizen or Subject of a<br>Foreign Country | ☐ 3    ☒ 3 | Foreign Nation | ☐ 6    ☐ 6 | |

## IV.  NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment<br>   & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted<br>   Student Loans<br>   (Excl. Veterans)<br>☐ 153 Recovery of Overpayment<br>   of Veteran's Benefits<br>☒ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product<br>   Liability<br>☐ 320 Assault, Libel &<br>   Slander<br>☐ 330 Federal Employers'<br>   Liability<br>☐ 340 Marine<br>☐ 345 Marine Product<br>   Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle<br>   Product Liability<br>☐ 360 Other Personal<br>   Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury -<br>   Med. Malpractice<br>☐ 365 Personal Injury -<br>   Product Liability<br>☐ 368 Asbestos Personal<br>   Injury Product<br>   Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal<br>   Property Damage<br>☐ 385 Property Damage<br>   Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure<br>   of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational<br>   Safety/Health<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal<br>   28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and<br>   Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/<br>   Exchange<br>☐ 875 Customer Challenge<br>   12 USC 3410 |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | **SOCIAL SECURITY** | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/<br>   Accommodations<br>☐ 444 Welfare<br>☐ 445 Amer. w/Disabilities -<br>   Employment<br>☐ 446 Amer. w/Disabilities -<br>   Other<br>☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate<br>   Sentence<br>   **Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | ☐ 710 Fair Labor Standards<br>   Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt.Reporting<br>   & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc.<br>   Security Act<br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 463 Habeas Corpus -<br>   Alien Detainee<br>☐ 465 Other Immigration<br>   Actions | ☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff<br>   or Defendant)<br>☐ 871 IRS—Third Party<br>   26 USC 7609 | ☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information<br>   Act<br>☐ 900 Appeal of Fee Determination<br>   Under Equal Access<br>   to Justice<br>☐ 950 Constitutionality of<br>   State Statutes |

| V. ORIGIN (Place an "X" in One Box Only) | | | | | | | Appeal to District |
|---|---|---|---|---|---|---|---|
| ☒ 1  Original<br>Proceeding | ☐ 2  Removed from<br>State Court | ☐ 3  Remanded from<br>Appellate Court | ☐ 4  Reinstated or<br>Reopened | ☐ 5  Transferred from<br>another district<br>(specify) | ☐ 6  Multidistrict<br>Litigation | ☐ 7  Judge from<br>Magistrate<br>Judgment | |

| VI.  CAUSE OF ACTION | Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):<br>28 U.S.C. Sec. 1332(d)<br>Brief description of cause:<br>breach of fiduciary duty |
|---|---|

| VII.  REQUESTED IN<br>COMPLAINT: | ☒ CHECK IF THIS IS A CLASS ACTION<br>UNDER F.R.C.P. 23 | DEMAND $ | CHECK YES only if demanded in complaint:<br>JURY DEMAND:   ☒ Yes   ☐ No |
|---|---|---|---|

| VIII.  RELATED CASE(S)<br>IF ANY | (See instructions):   JUDGE _____ | DOCKET NUMBER _____ |
|---|---|---|

| DATE<br>10/13/2010 | SIGNATURE OF ATTORNEY OF RECORD<br>/s/ F. DeArmond Sharp |
|---|---|

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

| | |
|---|---|
| BERTRAND SELLIER | ) |
| | ) |
| _Plaintiff_ | ) |
| | ) |
| v. | )    Civil Action No. |
| | ) |
| HARBIN ELECTRIC, INC., TIANGU YANG, CHING | ) |
| CHUENG CHAN, BOYD PLOWMAN, DAVID GATTO | ) |
| _Defendant_ | ) |

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_    HARBIN ELECTRIC, INC.
c/o THE CORPORATION TRUST COMPANY OF NEVADA
311 S. DIVISION STREET
CARSON CITY, NV  89703

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

_CLERK OF COURT_

Date: _____    _____
_Signature of Clerk or Deputy Clerk_

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____

I declare under penalty of perjury that this information is true.

Date: _____          _____
                                                              *Server's signature*

                                                        _____
                                                              *Printed name and title*

                                                        _____
                                                              *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 12/09) Summons In a Civil Action

# UNITED STATES DISTRICT COURT
### for the

| | | |
|---|---|---|
| BERTRAND SELLIER | ) | |
| | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. |
| HARBIN ELECTRIC, INC, TIANFU YANG, CHING | ) | |
| CHUENG CHAN, BOYD PLOWMAN, DAVID GATTO | ) | |
| *Defendant* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  TIANFU YANG

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                                 *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

☐ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify)*:



My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                                          *Server's signature*

                                               _____
                                                          *Printed name and title*


                                               _____
                                                          *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

BERTRAND SELLIER, On Behalf of Himself and All
Others Similarly Situated

*Plaintiff*

v.

HARBIN ELECTRIC, INC., et al.

*Defendant*

)
)
)
)
)
)
)

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  CHING CHUENG CHAN

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____                    _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                              *Server's signature*

                                         _____
                                         *Printed name and title*


                                         _____
                                              *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

BERTRAND SELLIER, On Behalf of Himself and All
Others Similarly Situated

*Plaintiff*

v.

HARBIN ELECTRIC, INC., et al,

*Defendant*

)
)
)
)
)
)
)

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  BOYD PLOWMAN

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____                                    _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____

☐ I personally served the summons on the individual at *(place)* _____
_____  on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____  on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

BETRAND SELLIER, On Behalf of Himself and All
Others Similarly Situated
_____
*Plaintiff*

v.

HARBIN ELECTRIC, INC., et al.
_____
*Defendant*

)
)
)
)
)
)
)

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  DAVID GATTOM

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                                                                  *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $  0.00  .

I declare under penalty of perjury that this information is true.


Date: _____          _____
                                    *Server's signature*

                               _____
                                    *Printed name and title*

                               _____
                                    *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

| | |
|---|---|
| BERTRAND SELLIER, On Behalf of Himself and All Others Similarly Situated | ) ) ) |
| _Plaintiff_ | ) |
| v. | ) ) Civil Action No. |
| HARBIN ELECTRIC, INC., et al. | ) ) |
| _Defendant_ | ) |

### SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_  YUNYUE YE

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

_CLERK OF COURT_

Date: _____                    _____
                                           _Signature of Clerk or Deputy Clerk_

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

☐ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify)*:


My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____                    _____
                                                                *Server's signature*

                                                                _____
                                                                *Printed name and title*

                                                                _____
                                                                *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

BERTRAND SELLIER, On Behalf of Himself and All
Others Similarly Situated

*Plaintiff*

v.

HARBIN ELECTRIC, INC.

*Defendant*

)
)
)
)
)
)
)
)

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  LANXIANG GAO

A lawsuit has been filed against you.

    Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

    If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____

☐ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or.

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify)*:


My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.


Date: _____          _____
                                              *Server's signature*

                                 _____
                                              *Printed name and title*

                                 _____
                                              *Server's address*

Additional information regarding attempted service, etc:

# EXHIBIT J

THE O'MARA LAW FIRM, P.C.
WILLIAM M. O'MARA (Nevada Bar No. 837)
DAVID C. O'MARA (Nevada Bar No. 8599)
311 East Liberty Street
Reno, NV 89501
Telephone: 775/323-1321
775/323-4082 (fax)

Attorneys for Plaintiff

[Additional counsel appear on signature page.]

### UNITED STATES DISTRICT COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| PATRICK SWEENEY, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>    vs.<br><br>HARBIN ELECTRIC, INC., TIANFU YANG, CHING CHUEN CHAN, BOYD PLOWMAN, DAVID GATTON, YUNYUE YE and LANXIANG GAO,<br><br>                Defendants. | No.<br><br>CLASS ACTION<br><br>COMPLAINT FOR BREACH OF FIDUCIARY DUTIES |

Plaintiff, by his attorneys, submits this complaint against the defendants named herein and alleges as follows:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332(a)(1) and (2) in that plaintiff and defendants are citizens of different states or subjects of a foreign state and the matter in controversy exceeds $75,000, exclusive of interest and costs. The Court also has jurisdiction over this action pursuant to 15 U.S.C. §78bb(f)(3)(A)(i), because it is a class action based on the statutory or common law of Nevada, defendant Harbin Electric, Inc.'s ("Harbin" or the "Company") state of incorporation, and thus may be maintained in federal court. This Court has supplemental jurisdiction under 28 U.S.C. §1367.

2.     This Court has jurisdiction over each defendant because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

3.     Venue is proper in this District pursuant to 28 U.S.C. §1391 because Harbin is incorporated in Nevada and defendants include officers and/or directors of a Nevada corporation.

## SUMMARY OF THE ACTION

4.     This is a stockholder class action brought by plaintiff on behalf of the holders of Harbin common stock against Harbin and its Board of Directors (the "Board") arising out of their efforts to complete a management-led buyout of Harbin via an unfair process at a grossly inadequate and unfair price of $24 per share (the "Buyout"). The individuals seeking to purchase the Company include Tianfu Yang ("Yang"), the Company's Chairman and Chief Executive Officer ("CEO"), Hero Wave Investments Limited ("Hero"), a company affiliated with Yang that, collectively with

- 1 -

Yang, controls over 30% of the Company's common stock, and Baring Private Equity Asia Group Limited, the largest regional growth equity firm in Asia (collectively referred to as the "Buyout Group").

5.      In pursuing the unlawful plan to squeeze out Harbin's public stockholders for grossly inadequate consideration, and without a fair process, including full and fair disclosure of all material information, the defendants have breached their fiduciary duties of loyalty, due care, independence, candor, good faith and fair dealing, and/or have aided and abetted such breaches by Harbin officers and directors. Instead of attempting to obtain the highest price reasonably available for the Company's stockholders, defendants are spending a substantial effort to tailor the Buyout to meet the specific needs of the Buyout Group.

6.      Because defendants dominate and control the business and corporate affairs of Harbin and are in possession of private corporate information concerning Harbin's assets, business and future prospects, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of Harbin, which makes it inherently unfair for them to pursue any proposed transaction wherein they will reap disproportionate benefits to the exclusion of maximizing stockholder value.

7.      In short, the Buyout is designed to unlawfully divest Harbin's public stockholders of a large portion of the valuable assets of the Company for grossly inadequate consideration. Defendants know that the Company possesses numerous assets that will continue to produce substantial revenue and earnings, which defendants wish to keep for themselves. Although the Company has formed a so-called Special Committee to evaluate the Buyout, the Buyout is essentially a *fait accompli* because the Special Committee is acting to appease the Buyout Group,

- 2 -

which has no interest in a fair evaluation of the Buyout. Accordingly, plaintiff seeks to enjoin the Buyout.

<strong>PARTIES</strong>

8.      Plaintiff Patrick Sweeney ("Sweeney") is, and at all times relevant hereto was, a shareholder of Harbin. Sweeney is a resident of the State of Michigan.

9.      Defendant Harbin is a holding company incorporated in Nevada. Through its U.S. and China-based subsidiaries, it designs, develops, manufactures, supplies and services a wide range of electric motors, including linear motors, specialty micro-motors and industrial rotary motors, with a focus on innovation, creativity and value-added products.

10.     Defendant Yang is and at all relevant times has been the Chairman and CEO of Harbin. Yang beneficially owns 31.11% of the Company's common stock. Yang is a resident of China.

11.     Defendant Ching Chuen Chan ("Chan") is a member of Harbin's Board. Chan is a resident of China.

12.     Defendant Boyd Plowman ("Plowman") is a member of Harbin's Board. Plowman is a resident of the State of California.

13.     Defendant David Gatton ("Gatton") is a member of Harbin's Board. Gatton is a resident of the State of Virginia.

14.     Defendant Yunyue Ye ("Ye") is a member of Harbin's Board. Ye is a resident of China.

15.     Defendant Lanxiang Gao ("Gao") is a member of Harbin's Board. Gao is a resident of China.

- 3 -

16.     The defendants named above in ¶¶10-15 are collectively referred to herein as the "Individual Defendants."

### DEFENDANTS' FIDUCIARY DUTIES

17.     Where the directors of a publicly traded corporation undertake a transaction that will result in either (i) a change in corporate control or (ii) a break up of the corporation's assets, the directors have an affirmative fiduciary obligation to obtain the highest value reasonably available for the corporation's shareholders, and if such transaction will result in a change of corporate control, the shareholders are entitled to receive a significant premium.  To diligently comply with these duties, the directors and/or officers may not take any action that:

(a)     adversely affects the value provided to the corporation's shareholders;

(b)     will discourage or inhibit alternative offers to purchase control of the corporation or its assets;

(c)     contractually prohibits themselves from complying with their fiduciary duties;

(d)     will otherwise adversely affect their duty to search and secure the best value reasonably available under the circumstances for the corporation's shareholders; and/or

(e)     will provide the directors and/or officers with preferential treatment at the expense of, or separate from, the public shareholders.

18.     In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Harbin, are obligated under Nevada law to refrain from:

(a)     participating in any transaction where the directors' or officers' loyalties are divided;

- 4 -

(b)    participating in any transaction where the directors or officers receive, or are entitled to receive, a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

(c)    unjustly enriching themselves at the expense or to the detriment of the public shareholders.

19.    Plaintiff alleges herein that defendants, separately and together, in connection with the Buyout, are knowingly or recklessly violating their fiduciary duties, including their duties of loyalty, good faith, and independence owed to plaintiff and the other public shareholders of Harbin. Defendants stand on both sides of the transaction, are engaging in self-dealing, are obtaining for themselves personal benefits, including personal financial benefits, not shared equally by plaintiff or the Class (as defined herein), and are choosing not to provide shareholders with all information necessary to make an informed decision in connection with the Buyout and/or are aiding and abetting other defendants' breaches. As a result of defendants' self-dealing and divided loyalties, neither plaintiff nor the Class are being treated fairly in connection with the proposed Buyout.

20.    Defendants also owe the Company's stockholders a duty of truthfulness under Nevada law, which includes the disclosure of all material facts concerning the Buyout and, particularly, the fairness of the price offered for the stockholders' equity interest. Defendants are knowingly or recklessly breaching their fiduciary duties of candor and good faith by failing to disclose all material information concerning the Buyout, and/or aiding and abetting other defendants' breaches.

21.    Defendants are knowingly or recklessly breaching their duties of loyalty, good faith, independence and candor in connection with the Buyout, and/or aiding and abetting other

- 5 -

defendants' breaches, and have the burden of proving the inherent or entire fairness of the Buyout, including all aspects of its negotiation, structure, price and terms.

## BACKGROUND

22.     Harbin is a holding company incorporated in Nevada. Through its U.S. and China-based subsidiaries, it designs, develops, manufactures, supplies and services a wide range of electric motors, including linear motors, specialty micro-motors and industrial rotary motors, with a focus on innovation, creativity and value-added products.

23.     Harbin has recently reported excellent financial results and has tremendous prospects. For example, in an August 9, 2010 press release entitled "Harbin Electric Reports Significantly Higher Second-Quarter Earnings," the Company stated:

> Harbin Electric, Inc. ("Harbin Electric" or the "Company"), a leading developer and manufacturer of a wide array of electric motors in the People's Republic of China, today reported its financial results for the second quarter of 2010.
>
> Financial Highlights
>
> -- Total revenues were $105.44 million, up 175% from $38.36 million in 2Q09
>
> -- Operating income totaled $28.08 million, up 219% from $8.82 million in 2Q09
>
> -- Adjusted net income attributable to controlling interest was $24.02 million, up 224% compared to $7.42 million in 2Q09
>
> -- GAAP earnings per diluted share attributable to controlling interest were $0.82, compared to a net loss of $0.24 in 2Q09
>
> -- Adjusted earnings per diluted share attributable to controlling interest were $0.77 per diluted share, compared to $0.33 in 2Q09
>
> *     *     *
>
> "We are very pleased with our outstanding second quarter earnings," said Mr. Yang, Chairman and Chief Executive Officer of Harbin Electric. "Adjusted net income, by which we judge our management performance, was up 224% year-over-year at $24.02 million. We have made remarkable progress in the restructuring and integration of Xi'an Tech Full Simo Motor, which has led to a significant improvement in our operating efficiency. During this quarter, we restructured its

subsidiaries, acquiring full ownership in four partially owned subsidiaries and disposing of non-strategic businesses. This brings us enhanced synergies across our diversified product lines and strengthens profit margins and earnings power. While our top line benefited from the acquisition of Xi'an Tech Full Simo Motor, earlier strategic moves continued to add to revenues. Weihai revenues were up 39% and oil pumps and coal transportation project performed strongly."

Revenues

For the second quarter of 2010, total revenues were $105.44 million, up 175% compared with $38.36 million in the second quarter of 2009, which was negatively impacted by the global financial crisis. The significant sales growth was mainly the result of higher sales across all product lines and a contribution of $44.57 million from Xi'an Tech Full Simo which was acquired in October 2009. Excluding the acquisition, organic growth was 59% year over year.

By product line, linear motor sales were up 76% driven by higher oil pump sales (150 units in the second quarter of 2010 compared to 105 units in the second quarter of 2009) and revenues from coal transportation project ($5.31 million), which started to contribute in the fourth quarter of 2009. Sales of specialty micro motors were up 77% from the second quarter of 2009. Sales of industrial rotary motors increased from $17.00 million to $68.12 million including $44.57 million from Xi'an Tech Full Simo. Sales of rotary motors at Weihai Tech Full Simo totaled $23.56 million for the quarter, up 39% compared with $17 million in the second quarter of 2009.

International sales totaled $5.60 million, or 5.3% of total sales, for the quarter, an increase of 56% compared with $3.58 million in the second quarter of 2009, when the global economic downturn hit our international business severely. The international sales growth was driven primarily by increased sales in our specialty micro motor and rotary motor products.

\*　　\*　　\*

Operating Income

Operating income in the second quarter of 2010 totaled $28.08 million, compared with $8.82 million in the second quarter of 2009, representing a 219% year over year growth. Higher operating income was mainly due to increased sales, the acquisition of Xi'an Tech Full Simo, and improved operating efficiency. Total operating costs including selling, general and administrative ("SG&A") expenses and research & development (R&D) expenses totaled $7.25 million, compared with $4.05 million a year ago. The higher operating costs were mainly due to the addition of Xi'an Tech Full Simo, higher expenses related to higher sales such as shipping and handling costs, higher depreciation expense, and higher costs associated with the production start-up at our Shanghai facility. As a percentage of total sales, total operating costs decreased from 10.6% to 6.9%. Operating margin improved to

- 7 -

26.6% in the current quarter from 23.0% in the second quarter of 2009, reflecting a significant improvement in operating efficiency as a result of business integration and consolidation.

\*     \*     \*

Outlook

"Despite concerns about the slowing down of the Chinese economy, we continue to see strong demand for many of our products. As we expect continued strong order volume for our rotary motors, our focus in the months ahead is to address production capacity constraints at our Weihai and Xi'an facilities. In our specialty motor lines including linear motors and specialty micro-motors, where speed of product development and market launch is the key to future growth, we have made substantial capital investments. We believe that capacity expansion and the expected and long-awaited launch of new products, coupled with our success in business integration, restructuring, and consolidation, will help us further extend our leadership position in the industry."

24.     These tremendous results came on the heels of earlier excellent results. As the Company stated in a May 10, 2010 press release entitled "Harbin Electric Delivers Record Quarterly Earnings":

Harbin Electric, Inc. ("Harbin Electric" or the "Company"), a leading developer and manufacturer of a wide array of electric motors in the People's Republic of China, today reported its financial results for the first quarter of 2010.

Financial Highlights

– Total revenues were $105.49 million, up 243% from $30.72 million in 1Q09

– Operating income totaled $27.73 million, up 246% from $8.03 million in 1Q09

– Adjusted net income attributable to controlling interest (excluding non-cash item due to change in fair value of warrant) was $20.79 million, up 242% from $6.08 million in 1Q09

– GAAP earnings attributable to controlling interest were $0.66 per diluted share, compared with $0.39 in 1Q09

– Adjusted earnings attributable to controlling interest (excluding non-cash item due to change in fair value of warrant) were $0.66 per diluted share, compared with $0.27 in 1Q09

\*     \*     \*

- 8 -

Revenues

In the first quarter of 2010, total sales more than tripled to $105.49 million compared to $30.72 million in 1Q09, which was negatively impacted by the global financial crisis. The acquisition of Xi'an Tech Full Simo Electric Motor Co. Ltd. ("Xi'an Simo") in October 2009 contributed $45.03 million. Excluding this acquisition, sales increased by 97% year over year. The higher sales were primarily driven by increased sales in all product lines resulting from strong economic recovery in China.

By product line, linear motor sales were up 60% driven by higher oil pumps sales (105 units in 1Q10 compared to 30 units in 1Q09) and sales from our linear motor propulsion systems developed for coal transportation trains ($5.5 million), which started to contribute in the fourth quarter of 2009. Sales of specialty micro motors were up 165% from 1Q09. Sales of industrial rotary motors increased from $10.8 million to $67.5 million including $45.03 million from Xi'an Simo. Sales of rotary motors at our Weihai facility more than doubled.

International sales totaled $7.06 million, up 117% compared with $3.26 million in 1Q09, when the global economic downturn hit our international business severely. The international sales growth was driven by increased sales in our specialty micro motor and rotary motor products.

\*     \*     \*

Net Income

Net income attributable to controlling interest in the quarter totaled $20.55 million ($0.66 per diluted share), up 137% from $8.65 million ($0.39 per diluted share) in 1Q09. Excluding non-cash charges due to the change in fair value of warrants related to the debt issued in 2006, adjusted net income attributable to controlling interest in the quarter totaled $20.79 million ($0.66 per diluted share), compared with $6.08 million ($0.27 per diluted share) a year ago. The higher net income was primarily driven by higher sales across all product lines, contributions from the acquisition of Xi'an Simo, and higher other income ($1.12 million in 1Q10 versus $0.54 million in 1Q09).

\*     \*     \*

Operating Income

Operating income totaled $27.73 million, compared with $8.03 million in 1Q09, representing a 246% year over year growth. Higher operating income was mainly due to increased sales and the acquisition of Xi'an Simo. Total operating costs including selling, general and administrative ("SG&A") expenses and research & development (R&D) expenses totaled $8.01 million, compared with $2.90 million a year ago. The higher operating costs were mainly due to the addition of Xi'an

- 9 -

Simo, higher expenses related to higher sales such as shipping and handling costs, higher depreciation expense, and higher costs associated with the production start-up at our Shanghai facility. As a percentage of total sales, the Company's total operating costs decreased from 9.4% to 7.6%. Operating margin was relatively stable at 26.3% and 26.1% in 1Q10 and 1Q09, respectively.

"Despite a long Chinese new-year holiday, we maintained the momentum from the fourth quarter 2009 and delivered another set of strong results, thanks to the hard work of our employees even during the traditional holiday season. While we are quite pleased to see the significant impact of our recent acquisition on all our revenues and profits, we are very satisfied with the progress made across all our existing business lines and in our international sales." said Mr. Yang, Chairman and Chief Executive Officer of Harbin Electric.

Outlook

"We believe that our business diversification efforts are paying off. We exited the quarter seeing continued strength in demand, setting us up nicely for the seasonally stronger second quarter. We are also encouraged by signs of stronger global economic activity, particularly in our North American market," commented Mr. Yang.

"We understand that some of our investors are concerned that the recent Chinese government efforts to cool down the real estate market and combat inflation might impact our business negatively. However, we believe that our business is a key foundation of China's overall economic growth and supports a wide range of economic sectors from agriculture to industry and manufacturing. Thanks to our diversification strategy, we do not expect a slowdown in the real estate sector in China to negatively impact our business. We continue to be very focused on restructuring our newly acquired Xi'an Simo business and improving manufacturing efficiency in Weihai. Our first quarter results reflect some early achievements in a very short period of time. We expect to expand on these positive results in the coming quarters."

25.     These results in turn came on the heels of record fourth quarter and fiscal year 2009 results, as the Company disclosed in a March 10, 2010 press release entitled "Harbin Electric Reports Record Fourth Quarter and Full Year 2009 Results":

Harbin Electric, Inc. ("Harbin Electric" or the "Company"), a leading developer and manufacturer of a wide array of electric motors in the People's Republic of China, today reported its preliminary full-year and fourth quarter 2009 financial results. The Company will release fully audited financials in its 10K filing in the coming days and does not expect any material changes.

- 10 -

Fourth Quarter 2009 Financial Highlights

-- Total revenues were $107.2 million, up 209% from $34.7 million in 4Q08

-- Adjusted net income attributable to controlling interest (excluding non-recurring items) was $19.4 million, up 220% from $6.0 million in 4Q08

-- GAAP earnings attributable to controlling interest were $0.59 per diluted share, compared with $0.27 in 4Q08

-- Adjusted earnings attributable to controlling interest (excluding non-recurring items) were $0.62 per diluted share

Fiscal Year 2009 Financial Highlights

-- Total revenues were $223.2 million, up 85% from $120.8 million in 2008

-- Adjusted net income attributable to controlling interest (excluding non-recurring items) was $43.8 million, up 73% from $25.4 million in 2008

-- GAAP earnings attributable to controlling interest were $0.77 per diluted share, compared with $1.19 in 2008

-- Adjusted earnings attributable to controlling interest (excluding non-recurring items) were $1.71 per diluted share

\*      \*      \*

In the fourth quarter of 2009, total sales more than tripled to $107.2 million compared to $34.7 million in 4Q08, which was negatively impacted by the global financial crisis. The acquisition of Xi'an Tech Full Simo Electric Motor Co. Ltd. ("Xi'an Simo") in October 2009 contributed approximately $44 million in the fourth quarter. Excluding this acquisition, sales in the fourth quarter increased 82% year over year. The higher sales were primarily driven by increased sales in all product lines resulting from strong economic growth in China. The linear motor propulsion systems developed by the Company for coal transportation trains contributed $7.3 million to total sales as the Company started the delivery during the quarter and 116 oil pumps were sold in 4Q09, up from 31 units in 4Q08.

Net income attributable to controlling interest in the quarter totaled $18.3 million ($0.59 per diluted share), up from $6.0 million ($0.27 per diluted share) in 4Q08. Excluding the $1.04 million non-cash charge for the change in fair value of warrants, adjusted net income for 4Q09 was $19.4 million ($0.62 per diluted share).

\*      \*      \*

For the year 2009, revenues increased by 85% to $223.2 million from $120.8 million in 2008. Strong sales growth resulted from the acquisition of Xi'an Simo

- 11 -

($44 million) as well as higher sales across all product lines.  The Company delivered 519 oil pumps compared to 214 units in 2008.  Linear motor propulsion systems developed for coal transportation trains contributed $7.3 million to our sales as the Company started to deliver units during the 4th quarter.

Net income attributable to controlling interest in 2009 totaled $19.6 million ($0.77 per diluted share), which included $24.2 million charges related to non-recurring and non-cash items.  Excluding these non-recurring and non-cash charges, adjusted net income attributable to controlling interest for 2009 was $43.8 million ($1.71 per diluted share) compared to net income of $1.19 per diluted share in 2008.

*     *     *

Overall gross profit margin declined to 34.3% in 2009 from 39.3% in 2008 due to changes in the product mix as sales of lower-margin industrial rotary motors expanded, in part as a result of the acquisition of Xi'an Simo.  Operating profits in 2009 were $55.8 million compared to $34.4 million in 2008.

"We are extremely pleased to have delivered the best quarter and the best year in our Company's history despite weak economic conditions early on," said Mr. Tianfu Yang , Chairman and Chief Executive Officer of Harbin Electric. "2009 was also a year of great strategic, operational and financial accomplishments as we further strengthened our leadership position in the electric motor industry in China. The acquisition of Xi'an Simo, one of China's leading electric motor companies, and its successful integration allowed us to start realizing synergies and provided a solid platform for continuous growth.  Faster economic growth in the second half of the year fueled by the massive government stimulus program created a positive environment for our business.  On the financial front, we raised additional equity capital which allowed us to repay a significant portion of our existing indebtedness, complete the acquisition of Xi'an Simo, and maintain a strong balance sheet as we continue to implement our growth strategy.  We view these record results, accomplished with the hard work and dedication of our employees, as well as the continuous support of our shareholders, as a validation of our vision, strategic focus and relentless execution."

Looking ahead, Mr. Yang commented, "We are ready to move the Company forward to a sustained profitability in 2010 supported by a solid platform that we have built over the past years as we expect continuous growth and leverage our strong financial position and promising portfolio of products.  Although the first quarter is traditionally slower with the long Chinese new-year holiday, we do not expect this seasonality to impact our business significantly compared to the fourth quarter.  We also expect that the Chinese government's commitment to sustainable economic growth and the accelerated industrialization and urbanization of China will continue to drive our business and support our long term growth objectives.  We look forward to a productive 2010 as we continue to capture the synergies of the Xi'an

Simo acquisition, advance R&D and strengthen growth in all core businesses. We believe that 2010 will be another strong year for Harbin Electric and we remain committed to our strategies to achieve both our near and long term goals and maximize value for our shareholders."

26.     These results in turn followed still other excellent results. As a consequence, the Company's stock traded at nearly $25 per share in mid-2010, and analysts had target prices substantially higher than that.

## THE BUYOUT

27.     On October 11, 2010, Harbin's shareholders were dismayed when they learned that defendants had been diligently working to sell Harbin – to themselves. The Company issued a release entitled "Harbin Electric, Inc. Announces Receipt of 'Going Private' Proposal at $24.00 Per Share," which stated:

> Harbin Electric, Inc. ("Harbin" or the "Company"), a leading developer and manufacturer of a wide array of electric motors in the People's Republic of China, today announced that its Board of Directors has received a proposal letter from its Chairman and Chief Executive Officer, Mr. Tianfu Yang ("Mr. Yang") and Baring Private Equity Asia Group Limited ("Baring") for Mr. Yang and an investment fund advised by Baring (the "Baring Fund") to acquire all of the outstanding shares of Common Stock of Harbin not currently owned by Mr. Yang and his affiliates in a going private transaction for $24.00 per share in cash, subject to certain conditions. Mr. Yang owns 31.1% of Harbin's Common Stock. According to the proposal letter, an acquisition vehicle for the purpose of completing the acquisition will be formed and the acquisition is intended to be financed with a combination of debt and equity capital. The proposal letter states that the equity portion of the financing would be provided by Mr. Yang, the Baring Fund and related sources. The proposal letter also states that Goldman Sachs (Asia) LLC ("Goldman") is acting as financial advisor to the acquisition vehicle to be formed by Mr. Yang and the Baring Fund.

> Harbin's Board of Directors has formed a special committee of independent directors consisting of David Gatton, Boyd Plowman and Ching Chuen Chan (the "Special Committee") to consider this proposal. The Special Committee intends to retain independent advisors, including an independent financial advisor, to assist it in its work. No decisions have been made by the Special Committee with respect to Harbin's response to the proposal. There can be no assurance that any definitive offer will be made, that any agreement will be executed or that this or any other transaction will be approved or consummated.

- 13 -

28.   The release was false and misleading as the defendants were aware that the so-called "Special Committee" was appointed for the sole purpose of immunizing defendants from liability for their unlawful conduct and the approval of a sale of Harbin to the Buyout Group was a *fait accompli*. Moreover, the $24 per share offered does not properly take into account the expected growth in earnings potential that the Company can expect from its assets and operations.

## DEFENDANTS FAILED TO MAXIMIZE SHAREHOLDER VALUE

29.   As a result of defendants' conduct, Harbin's public stockholders have been and will continue to be denied the fair process and arm's-length negotiated terms to which they are entitled in a sale of their Company. In order to meet their fiduciary duties, defendants are obligated to refrain from structuring a preferential deal for themselves.

30.   The process used to sell Harbin was defective and did not reflect the true inherent value of the Company, which far exceeds the $24 per share Buyout offer.

## CLASS ACTION ALLEGATIONS

31.   Plaintiff brings this action on his own behalf and as a class action on behalf of all holders of Harbin stock who are being and will be harmed by defendants' actions described below (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

32.   This action is properly maintainable as a class action.

33.   The Class is so numerous that joinder of all members is impracticable. According to Harbin's U.S. Securities and Exchange Commission ("SEC") filings, there were more than 31 million shares of Harbin common stock outstanding as of August 6, 2010.

- 14 -

34.    There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, *inter alia*, the following:

(a)    whether the Individual Defendants are breaching their fiduciary duties of undivided loyalty, independence, or due care with respect to plaintiff and the other members of the Class in connection with the Buyout;

(b)    whether defendants are engaging in self-dealing in connection with the Buyout;

(c)    whether defendants are unjustly enriching themselves and other insiders or affiliates of Harbin;

(d)    whether the Individual Defendants are breaching any of their other fiduciary duties to plaintiff and the other members of the Class in connection with the Buyout, including the duties of good faith, diligence, honesty and fair dealing;

(e)    whether the Individual Defendants are breaching their fiduciary duties of candor to plaintiff and the other members of the Class in connection with the Buyout by failing to disclose all material information concerning the Buyout;

(f)    whether defendants, in bad faith and for improper motives, are impeding or erecting barriers to discourage other offers for the Company or its assets;

(g)    whether the Buyout terms are unfair and inadequate to plaintiff and the other members of the Class; and

(h)    whether plaintiff and the other members of the Class would be irreparably harmed were the Buyout complained of herein consummated.

- 15 -

35.    Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff does not have any interests adverse to the Class.

36.    Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

37.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

38.    Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

39.    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

### COUNT I

**Claim for Breach of Fiduciary Duties**
**Against the Individual Defendants**

40.    Plaintiff repeats and realleges each allegation set forth herein.

41.    The Individual Defendants are knowingly or recklessly and in bad faith violating fiduciary duties of care, loyalty, good faith, candor, and independence owed to the public shareholders of Harbin and have acted to put their personal interests ahead of the interests of Harbin shareholders;

- 16 -

42.   By the acts, transactions and courses of conduct alleged herein, the Individual Defendants, individually and as a part of a common plan, have acted knowingly or recklessly and in bad faith.

43.   The Individual Defendants have knowingly or recklessly and in bad faith violated their fiduciary duties by approving the Buyout without regard to the fairness of the transaction to Harbin shareholders and by failing to disclose all material information concerning the Buyout to such shareholders.

44.   As demonstrated by the allegations above, the Individual Defendants are knowingly or recklessly failing to exercise the care required, and breaching their duties of loyalty, good faith, candor and independence owed to the shareholders of Harbin because, among other reasons:

(a)   they are taking steps to avoid competitive bidding, to cap the price of Harbin stock and to give the Buyout Group an unfair advantage, by, among other things, failing to solicit other potential acquirers or alternative transactions;

(b)   they are ignoring or are not protecting against the numerous conflicts of interest resulting from the directors' own interrelationships or connection with the Buyout; and

(c)   they are failing to disclose all material information that would permit Harbin stockholders to cast a fully informed vote on the Buyout, including both financial information and regulatory information which may materially affect the Company and the Company's shareholders.

45.   Because the Individual Defendants dominate and control the business and corporate affairs of Harbin, and are in possession of private corporate information concerning Harbin's assets, business and future prospects, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of Harbin which makes it inherently unfair for

- 17 -

them to pursue any proposed transaction wherein they will reap disproportionate benefits to the exclusion of maximizing stockholder value.

46.    By reason of the foregoing acts, practices and course of conduct, the Individual Defendants are knowingly or recklessly and in bad faith failing to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward plaintiff and the other members of the Class.

47.    Unless enjoined by this Court, the Individual Defendants will continue to knowingly or recklessly and in bad faith breach their fiduciary duties owed to plaintiff and the Class, and may consummate the proposed Buyout which will exclude the Class from its fair share of Harbin's valuable assets and businesses, and/or benefit them in the unfair manner complained of herein, all to the irreparable harm of the Class.

48.    The Individual Defendants are engaging in self-dealing, are not acting in good faith toward plaintiff and the other members of the Class, and knowingly or recklessly have breached and are continuing to breach their fiduciary duties to the members of the Class.

49.    As a result of defendants' unlawful actions, plaintiff and the other members of the Class are being harmed in that defendants will deprive plaintiff and the Class of a fair sale process. Unless the proposed Buyout is enjoined by the Court, the Individual Defendants will continue to knowingly or recklessly and in bad faith breach their fiduciary duties owed to plaintiff and the other members of the Class, will not engage in arm's-length negotiations on the Buyout terms, and will not supply to Harbin's minority stockholders sufficient information to enable them to cast informed votes on the proposed Buyout and may consummate the proposed Buyout, all to the irreparable harm of the members of the Class.

- 18 -

50.     Plaintiff and the other members of the Class have an inadequate remedy at law. Only through the exercise of this Court's equitable powers can plaintiff and the other members of the Class be fully protected from the immediate and irreparable injury which defendants' actions threaten to inflict.

## COUNT II

### Claim for Aiding and Abetting Breaches of Fiduciary Duty
### Against Harbin

51.     Plaintiff repeats and realleges each allegation set forth herein.

52.     Harbin aided and abetted the Individual Defendants in breaching their fiduciary duties owed to the public shareholders of Harbin, including plaintiff and the other members of the Class.

53.     The Individual Defendants owed to plaintiff and the other members of the Class certain fiduciary duties as fully set out herein.

54.     By committing the acts alleged herein, the Individual Defendants breached their fiduciary duties owed to plaintiff and the other members of the Class.

55.     Harbin colluded in or aided and abetted the Individual Defendants' breaches of fiduciary duties, and was an active and knowing participant in the Individual Defendants' breaches of fiduciary duties owed to plaintiff and the other members of the Class.

56.     Plaintiff and the other members of the Class shall be irreparably injured as a direct and proximate result of the aforementioned acts.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff demands injunctive relief, in his favor and in favor of the Class and against defendants as follows:

A.     Declaring that this action is properly maintainable as a class action;

- 19 -

B.    Declaring and decreeing that any Buyout agreement entered into by the Company was approved in breach of the fiduciary duties of defendants and is therefore unlawful and unenforceable;

C.    Enjoining defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Buyout, unless and until the Company adopts and implements a fair sale process;

D.    Directing defendants to exercise their fiduciary duties to obtain a transaction which is in the best interests of Harbin's shareholders;

E.    Rescinding, to the extent already implemented, the Buyout or any of the terms thereof;

F.    Awarding plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

G.    Granting such other and further equitable relief as this Court may deem just and proper.

November 1, 2010.

THE O'MARA LAW FIRM, P.C.
WILLIAM M. O'MARA
DAVID C. O'MARA

DAVID C. O'MARA

311 East Liberty Street
Reno, NV 89501
Telephone: 775/323-1321
775/323-4082 (fax)

- 20 -

ROBBINS GELLER RUDMAN
    & DOWD LLP
DARREN J. ROBBINS
RANDALL J. BARON
A. RICK ATWOOD, JR.
DAVID T. WISSBROECKER
DAVID A. KNOTTS
EUN JIN LEE
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

RYAN & MANISKAS, LLP
RICHARD A. MANISKAS
995 Old Eagle School Road, Suite 311
Wayne, PA 19087
Telephone: 484/588-5516
484/450-2582 (fax)

Attorneys for Plaintiff

S:\Cpl\Draft\Death\Cpt Harbin Electric_Fed.doc

- 21 -