KIRK B. LENHARD, ESQ.
Nevada Bar No. 1437
TAMARA BEATTY PETERSON, ESQ.
Nevada Bar No. 5218
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 N. City Parkway, Suite 1600
Las Vegas, NV 89106
Telephone: (702) 382-2101
Facsimile:  (702) 382-8135
Email: klenhard@bhfs.com
Email: tpeterson@bhfs.com
*Attorneys for Defendant Harbin Electric, Inc.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| PATRICK SWEENEY, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>HARBIN ELECTRIC, INC., TIANFU YANG, CHING CHUEN CHAN, BOYD PLOWMAN, DAVID GATTON, YUNYUE YE and LANZIANG GAO<br><br>Defendant(s). | CASE NO.:  3:10-CV-00685-LRH-VPC<br><br>**DEFENDANT HARBIN ELECTRIC, INC.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS** |

Defendant Harbin Electric, Inc., by and through its attorneys of record, respectfully submits this reply memorandum of law in further support of its motion to dismiss Plaintiff's Complaint for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6), or, in the alternative, dismissing or staying this action under the *Colorado River* abstention doctrine.

**I.  THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT-MATTER JURISDICTION.**

**A.  Plaintiff has not and cannot demonstrate that 28 U.S.C. § 1332(a)'s minimum amount in controversy is satisfied here.**

---

[1] Abbreviations and definitions used in Harbin's moving memorandum of law are also used herein.

1

1    Plaintiff does not and cannot satisfy the $75,000 minimum amount in controversy
2    precisely because his claims are too premature to be quantified. In his Opposition, Plaintiff fails
3    to comprehend the burden of Harbin's argument and rather conclusorily claims that the stock is
4    worth way more than non-binding offer price of $24 per share, pointing out that (a) it
5    momentarily traded at a price slightly above that number and (b) unidentified analysts, at some
6    unidentified time and for unidentified reasons, predicted a higher share price. Opp. at 6. While
7    such allegations are obviously not the averments of fact to which this Court must give deference,
8    it does not matter. Harbin was making a different point.

9    Harbin's point was that neither the offeror's binding offer nor the Company's response to
10   it are yet known, and therefore it is simply not possible to do the math to determine whether the
11   amount in controversy has been satisfied. When the offeror makes his binding offer (if he does)
12   and the Special Committee responds and negotiates a final supported offer (if it does), then
13   Plaintiff can complain (if there is a sufficient basis under FRCP 11 to do so) and seek federal
14   jurisdiction, <u>provided</u> that the difference between **the actual offer price** and the price that
15   Plaintiff in good faith believes to be the fair price exceeds the jurisdictional amount, when
16   multiplied by the number of shares held by Plaintiff (which is nowhere alleged in the Complaint).
17   That time has not yet come.

18   Plaintiff's argument that Harbin got the test wrong, and the only math that is important is
19   the aggregate loss to the class, is both wrong and still misses the point. As to the latter, even if
20   aggregation were the proper measure for purposes of determining the amount in controversy –
21   and it is not – Plaintiff would fare no better. Given the absence of an actual offer price for
22   Harbin's stock, not to mention any good-faith allegation of what a fair price would be, there still
23   is no means of calculating the amount in controversy regardless of whether the multiplicand is the
24   number of shares held by Plaintiff or the number of shares held by all class members.

25   Moreover, Plaintiff's reliance on *Eagle v. American Telephone and Telegraph Co.*, 769
26   F.2d 541 (9th 1985), where aggregation was permitted, is misplaced. In *Eagle*, the court described
27   plaintiffs' claims as "akin to shareholder derivative claims" to remedy an injury to the
28   corporation's assets, the shareholders' rights to which was common and indivisible under

California law. *Id.* at 547. Thus, it made sense to view the loss as the aggregate suffered by the corporation, since the derivative plaintiff is "'favored with the fiction that plaintiffs' possible recovery is not the measure of the amount involved for jurisdictional purposes but that the test is the damage asserted to have been sustained by the defendant corporation.'" *Id*. (citation omitted). The court contrasted the direct shareholder class action claims in *Snyder v. Harris*, 392 U.S. 332 (1969), where the Supreme Court did not permit aggregation of minority shareholder claims to recover the premium that certain majority shareholders had received for the sale of their controlling stock, which the shareholders were entitled to recover under Missouri law. "[N]o right accrued to the corporation and no injury was done to the corporation. The claim of the [] shareholders was in no way dependent upon or derivative of an injury to the corporation." *Eagle*, at 547. Plaintiff's claims are like those in *Snyder*, not *Eagle*.[2]

### B. Plaintiff fails to rebut Harbin's showing that SLUSA provides no independent basis for subject-matter jurisdiction.

Equally unavailing is Plaintiff's contention that this Court has subject-matter jurisdiction pursuant to the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. § 78bb(f)(3)(A)(i). *See* Opp. at 10-11. As Harbin has already shown (Mem. at 10-12), SLUSA **precludes claims** rather than allows them and, in any event, provides no independent basis for federal subject-matter jurisdiction. Claims falling within the so-called Delaware Carve-Out, into which Plaintiff attempts to climb, can survive, but they must find their way into federal court on some independent basis such as diversity jurisdiction. Plaintiff's misrepresentation of the statute is, bluntly, shocking.

---

[2] Plaintiff's allegations of complete diversity are likewise deficient because he fails to plead his own citizenship. Plaintiff alleges only that he is a "resident" of the State of Michigan (Compl. ¶ 8). A person's state citizenship is based upon his state of domicile—i.e., his "permanent home, where []he resides with the intention to remain or to which []he intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Because residency and citizenship are not the same for purposes of 28 U.S.C. § 1332, Plaintiff's allegations of residency cannot establish diversity jurisdiction. *See, e.g., Tylka v. Gerber Products Co.*, 211 F.3d 445, 448 (7th Cir. 2000) ("allegations of residence are insufficient to establish diversity jurisdiction"); *Guaranty Nat. Title Co., Inc. v. J.E.G. Assocs.*, 101 F.3d 57, 58 (7th Cir. 1996) ("[w]hen the parties allege residence, but not citizenship, the court must dismiss the suit").

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

Plaintiff attempts to distinguish the cases cited by Harbin on the ground that they all "involve the propriety of remand under SLUSA" (Opp. at 11), but that is precisely the point. As noted in Harbin's opening brief (Mem. at 11-12), and not contested by Plaintiff, under SLUSA the federal court has only two options with regard to actions for which there is no independent basis for federal jurisdiction (usually diversity, since the issue would not arise if the case were premised on a federal statute): dismissal or remand. Plaintiff cites no authority to the contrary because there is none.

### C. Plaintiff Failed to Establish that His Claims are Ripe For Adjudication.

Harbin argued in its opening brief that subject-matter jurisdiction is lacking for the additional reason that the claims here are not ripe for adjudication. Plaintiff responded (Opp. at 15-16) that he is complaining only about what has happened so far. His allegations about extant conduct, however, are, and perforce must be, aimed at defendants other than the movant here. Thus, he makes the (nonsensical) claims that Mr. Yang has a conflict of interest, that Mr. Yang's non-binding offer is somehow made on purloined inside information, and that somehow the timing and circumstances of Mr. Yang's non-binding offer damages the class.

While these allegations are vacuous and bear no relation to the relief requested, they nonetheless do not manifest themselves on anyone other than Mr. Yang. There is no allegation of fact that any of the directors has a conflict of interest or will benefit disproportionately from the consummation of the offer. There is no allegation that any of the directors, or anyone else other than the offeror, knew about the offer until it was made public or had any inkling of the terms, conditions (to the extent any terms and conditions have been set), or timing of the offer. Indeed, leaving aside Plaintiff's convenient use of the collective term "defendants" for his broad-brush and baseless allegations, the only thing that Plaintiff says the movant here has done "so far" is appoint a special committee to do exactly what needs to be done: evaluate the offer and advise the Company.

Plaintiff is simply being disingenuous. His allegations are that the announced non-binding offer price is too low and that he anticipates, for reasons not pleaded in the Complaint (because

4

they do not exist), that the Company, acting through its personnel, will not properly acquit its responsibilities. That anticipated conduct does not constitute a case or controversy ripe for adjudication and thus there is no subject-matter jurisdiction in this Court.

Unable to show that his claims are ripe, Plaintiff argues that he should not be "powerless to protect the Company's shareholders until after defendants lock up a deal" (Opp. at 15), or be required to wait until a merger agreement has been signed before filing suit. *See id.* That is not what Harbin contends, and Plaintiff's suggestion that dismissal of his claims will leave the shareholders "unprotected" is wrong. Before a shareholder can legitimately file suit to enjoin a proposed buyout as unfair, there at least must be a binding offer establishing what the buyout price will be. Otherwise the parties are litigating about nothing more than a hypothetical deal, which is antithetical to the limitation on the Court's jurisdiction to hear only ripe cases or controversies and not to issue advisory opinions.

## II. PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY.

In its opening brief (Mem. at 13-18), Harbin pointed out that the meager and conclusory allegations against it are insufficient to overcome Nevada's presumption in favor of business judgments made by directors because the alleged conduct <u>by Harbin</u>, rather than by the offeror, even taken as true, is not actionable. Plaintiff dismisses the business judgment rule on a false premise that it does not apply because the directors whose judgment is at issue have a conflict. *See* Opp. at 12. Plaintiff's fallacy is that the conflict on which he bases his position is Mr. Yang's alleged conflict. Of course, it is not Mr. Yang's business judgment that is at issue on this motion. Similarly, Plaintiff claims that his pleading, which must be taken as true, is sufficient, but he points only to factual averments regarding the conduct of Mr. Yang, rather than any conduct by the Company. Moreover, as addressed above, the claims against the Company are premature. As a result, Harbin's arguments remain unrefuted.

In his Opposition (at 12-13), Plaintiff relies heavily on the requirement that this Court accept his pleading as true, regardless of whether it is or not. Harbin does not disagree, but there are limits. First, only the well-pleaded facts are accepted as true. Conclusory statements without

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 NORTH CITY PARKWAY, SUITE 1600
LAS VEGAS, NV 89106
(702) 382-2101

5

1  any disclosed basis in fact can be ignored.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)
2  ("the tenet that a court must accept as true all of the allegations contained in a complaint is
3  inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action,
4  supported by mere conclusory statements, do not suffice.").  Second, only the logical inferences
5  from those facts must be drawn.  *See Ashcroft*, 129 S. Ct. at 1949.  Finally, because of the
6  presumptive truth of the allegations, Plaintiff must have a good-faith basis for making the
7  allegations or suffer sanctions pursuant to Rule 11.  Leaving aside (for now) whether Plaintiff can
8  satisfy his Rule 11 obligations, it is clear that there are no well-pleaded facts about Harbin to
9  overcome the business judgment rule.

10  Once again, Plaintiff intentionally blurs the lines between the defendants to try to salvage
11  his Complaint.  Apparently abandoning the conclusory allegations in the Complaint, each of
12  which was dealt with in Harbin's opening brief with no response from Plaintiff, Plaintiff now
13  argues that Mr. Yang used his control over the company to craft his going-private transaction, and
14  to gain access to and funnel to his associates private information about the Company (Opp. at 12).
15  All of this was intended to benefit unspecified "insiders" by virtue of the low-ball offer (Opp. at
16  13).  There is no hint as to how anyone other than the offeror could possibly benefit from the
17  allegedly low-ball offer, and Plaintiff, when he makes his outrageous claim that the "defendants"
18  have a conflict of interest, points only to Mr. Yang (Opp. at 12 & n.8).

19  Apparently finally recognizing that the movant here is not Mr. Yang, Plaintiff tries to blur
20  the distinction by claiming that the Harbin Board "made no attempt to address and/or rectify the
21  misconduct by Yang and his affiliates" (Opp. at 13).  What Plaintiff failed to allege, because he
22  cannot consistent with Rule 11, is that the Board had any prior knowledge of the offer or Yang's
23  intent to make the offer, or any of the recklessly pleaded shenanigans that form the basis of this
24  specious Complaint.  Thus, while Plaintiff can seek solace in the presumptive accuracy of his
25  allegations, he gains no solace from what he has not and cannot plead.  Here, he has not and
26  cannot plead that the Company or its Board[3] have done anything wrong at all, much less conduct

---

[3]  Plaintiff doubtlessly would point out that Mr. Yang is Chairman of the Board.  Like most of Plaintiff's argumentation, that is a true, but irrelevant, fact.  As an interested party he would have to recuse himself from Board consideration of the offer.

6

that would overcome the presumption of regularity embodied in Nevada's business judgment rule.

Plaintiff tries to skirt the business judgment rule by pointing out that it is inapplicable where the relevant directors – here the Special Committee – are conflicted. Plaintiff, however, only attempts to claim that Mr. Yang has a conflict and, on that basis, claims that the business judgment rule is inapplicable. The fallacy of the argument cries out from its very recitation. Moreover, even if Plaintiff had intoned that the Special Committee has a conflict, he would have to aver, under penalty of Rule 11 sanctions, the factual basis for that allegation. If a plaintiff could avoid the business judgment rule by simply reciting that the directors have a conflict, without making specific factual averments, the business judgment rule would be entirely emasculated. Plaintiff has not and cannot make such factual averment and therefore has not and cannot overcome the business judgment rule.

### III. PLAINTIFF SHOULD NOT BE GRANTED LEAVE TO AMEND THE COMPLAINT.

The deficiencies in Plaintiff's Complaint warrant dismissal of this action for lack of subject-matter jurisdiction and for failure to state a claim upon which relief may be granted. Plaintiff argues, however, that the appropriate remedy is to grant him leave to amend the Complaint pursuant to FRCP 15(a)(2). However, leave to amend need not and should not be granted here because amendment would be futile. *See Townsend v. University of Alaska*, 543 F.3d 478, 485 (9th Cir. 2008) ("Leave to amend need not be granted, however, where the amendment would be futile.").

There are no extant facts that Plaintiff can point to that he could plead and thereby salvage his claims. Indeed, Plaintiff does not even try to claim that such facts exist. Rather, Plaintiff makes the somewhat strange argument that his Complaint should be treated as an organic instrument and that he should be allowed to amend his complaint "to include any subsequent additional information regarding the Buyout" (Opp. at 16) – apparently whenever that might be. Plaintiff, of course, provides no authority for his novel, creative, and entirely lawless proposal.

1  Indeed, offering a Complaint for which there is no current good-faith basis, on the premise that if
2  we wait long enough there will be such a basis, flies in the face of Rule 11.

3  Plaintiff must point this Court to some current fact that he would allege in an amended
4  complaint that would allow the Complaint to survive. He has not even attempted to do so.
5  Dismissal without leave to amend is appropriate in those circumstances.

**IV.   THIS ACTION SHOULD BE DISMISSED OR STAYED UNDER THE *COLORADO RIVER* DOCTRINE OF ABSTENTION.**

Even if Plaintiff could cure the deficiencies in his allegations, the Court should abstain from exercising jurisdiction over this action under the *Colorado River* doctrine. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). As Harbin demonstrated in its moving brief (Mem. at 18-21), abstention is warranted here owing to the existence of five parallel actions against Harbin and its directors in Nevada state court, all of which involve the same state law claims as asserted in this action and all of which were filed before this action. Plaintiff offers nothing to refute Harbin's showing that all of the factors favoring abstention apply here.

Rather than conceding the argument, however, Plaintiff asserts that "there is no reason to believe that plaintiff's rights will be adequately protected in the state litigation and plaintiff will be prejudiced by a stay of this action." Opp. at 17. Plaintiff's only apparent reason for making this argument is that the Nevada state courts have not yet consolidated all of the cases into a single jurisdiction and appointed lead counsel, a position that Plaintiff's counsel has aggressively pursued in the Carson City actions. Indeed, that Plaintiff's counsel makes this argument is both shocking and disingenuous. Two of the panoply of extant state court suits that Plaintiff claims not to adequately protect the putative class were commenced by Plaintiff's counsel in this action. Plaintiff's counsel raced to the Carson City courthouse to file the first of the actions (*Hurewitz*) against Harbin and its directors only days after the announcement of the buyout proposal, which was followed by a second virtually identical action (*Fisher*). If Plaintiff's counsel truly believed that Nevada state courts could not adequately protect the rights of shareholders, they would not have commenced two actions there.

In any event, there is absolutely no merit to Plaintiff's claim. In fact, there is ample reason to believe that Plaintiff's rights will be adequately protected in Nevada state court, particularly in the Clark County Business Court where Harbin seeks to aggregate all of the related cases. The Clark County Business Court has the expertise to handle cases like these and is the most convenient forum for defendants. Absent the Court declining to exercise jurisdiction over this action, Defendants will have to defend duplicative actions at great expense and with the risk of inconsistent judgments. Accordingly, Harbin requests that this Court dismiss or, alternatively, stay this action pending the resolution of the five virtually identical actions proceeding in Nevada state court.

## CONCLUSION

For the foregoing reasons, Defendant Harbin Electric, Inc. respectfully requests that this Court dismiss Plaintiff's Complaint in its entirety without leave to replead or, alternatively, stay this action.

DATED this 5th day of January, 2011.

BROWNSTEIN HYATT FARBER SCHRECK, LLP

By: /s/ Tamara Beatty Peterson
KIRK B. LENHARD, ESQ.
Nevada Bar No. 1437
TAMARA BEATTY PETERSON, ESQ.
Nevada Bar No. 5218
100 N. City Parkway, Suite 1600
Las Vegas, NV 89106
Telephone: (702) 382-2101
Facsimile:  (702) 382-8135
Email: klenhard@bhfs.com
Email: tpeterson@bhfs.com
*Attorneys for Defendant Harbin Electric, Inc.*

9

# CERTIFICATE OF SERVICE

Pursuant to Fed.R.Civ.P.5(b), and Section IV of District of Nevada Electronic Filing Procedures, I certify that I am an employee of Brownstein Hyatt Farber Schreck, LLP, and that a true and correct copy of **DEFENDANT HARBIN ELECTRIC, INC.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS** was served via electronic service, via CM/ECF, on this 5th day of January, 2011, to the e-mail address shown below:

David C. O'Mara, Esq.
THE O'MARA LAW FIRM, P.C.
311 East Liberty Street
Reno, NV 89501
Email: david@omarlaw.net
*Attorneys for Plaintiff*

/s/ Olivia A. Rodriguez
Employee of Brownstein Hyatt Farber Schreck, LLP