**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| PATRICK SWEENEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 3:10-cv-00685-RCJ-VPC |
| vs. ) | |
| ) | |
| HARBIN ELECTRIC, INC. et al., ) | **ORDER** |
| ) | |
| Defendants. ) | |
| ) | |

This shareholder derivative action arises out of the proposed buyout of nominal Defendant Harbin Electric, Inc. ("Harbin"). Pending before the Court is a Motion to Dismiss (ECF No. 4). For the reasons given herein, the Court grants the motion.

**I.      FACTS AND PROCEDURAL HISTORY**

Harbin is a Nevada holding corporation whose subsidiaries in the United States and China design, develop, and manufacture electric motors. (Compl. ¶ 22, Nov. 1, 2010, ECF No. 1). On October 11, 2010, Plaintiff learned through a press release that Harbin's board of directors had received an offer for Harbin's CEO Tianfu Yang and an investment fund to purchase all outstanding shares at $24 per share. (*Id.* ¶ 27). Plaintiff alleges that this is not adequate consideration and that the shareholders will be harmed if the offer is accepted and the sale is consummated because it "does not properly take into account the expected growth in earnings potential that the Company can expect from its assets and operations." (*Id.* ¶ 28).

Plaintiff sued Harbin, Yang, and directors Ching Chuen Chan, Boyd Plowman, David Gatton, Yunyue Ye, and Lanxiang Gao in this Court on two causes of action: (1) Breach of

1  Fiduciary Duty (all Defendants except Harbin); and (2) Aiding and Abetting Breach of Fiduciary
2  Duty (Harbin).  Defendants have moved to dismiss for lack of subject matter jurisdiction,
3  unripeness, and failure to state a claim under the business judgment rule.  In the alternative,
4  Defendants ask the Court to decline jurisdiction under *Colorado River Water Conservation Dist.*
5  *v. United States*, 424 U.S. 800, 817 (1976).

## II.  LEGAL STANDARDS

Federal courts are of limited jurisdiction, possessing only those powers granted by the Constitution or statute. *See United States v. Marks*, 530 F.3d 799, 810 (9th Cir. 2008) (citations omitted).  The party asserting federal jurisdiction bears the burden of overcoming the presumption against it. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal Rule of Civil Procedure 12(b)(1) provides an affirmative defense via a motion to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).  Additionally, a court may raise the question of subject matter jurisdiction, *sua sponte*, at any time during pendency of the action. *United States v. Moreno-Morillo*, 334 F.3d 819, 830 (9th Cir. 2003).  "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (citing 16 J. Moore et al., Moore's Federal Practice § 106.66[1], pp. 106-88 to 106-89 (3d ed. 2005)).

## III.  ANALYSIS

The Court must first determine from the body of the Complaint whether it in fact comprises a direct class action or a derivative action, because the title of "Class Action" chosen by Plaintiff's attorneys does not determine the question. *See* 3 Stephen A. Radin, *The Business Judgment Rule: Fiduciary Duties of Corporate Directors* 3626 (6th ed. 2009) (citing *In re Sunrise Sec. Litig.*, 916 F.2d 874, 882 (3d Cir. 1990)).  Except where an individual shareholder has a special relationship with a director, shareholders "have only a right to bring a derivative suit, not a direct suit, for violation of the [fiduciary] dut[ies directors owe them]." 18B Am. Jur.

*Corporations* § 1462 (2011). In the present case, Plaintiff complains on behalf of himself and all other shareholders of indistinguishable harm done to them in their general capacity as shareholders, and the suit is therefore a derivative suit, despite the "Class Action" title on the pleading. As Radin forcefully and convincingly notes, the present case is a classic example of a derivative suit:

> The principles used by courts to distinguish between derivative claims brought by shareholders on behalf of a corporation and direct, non-derivative claims brought by shareholders on their own behalf and/or as class action claims "have been articulated many times" and are easy to apply in many cases: it is a "well-established corporate law principle 'that shareholders of a corporation may not maintain actions at law in their own names to redress an injury to the corporation even if the value of their stock is impaired as a result of the injury,'" that a decline in the value of shares is a "classic derivative injury," that "a shareholder cannot bring a direct action for damages against management on the theory their alleged wrongdoing decreased the value of his or her stock (e.g., by reducing corporate assets and net worth)," that "waste and misappropriation of corporate assets 'are traditional derivative claims that rightfully belong to the corporation,'" that [a]ctions to enforce corporate rights or redress injuries to [a] corporation cannot be maintained by a stockholder in his own name . . . even though the injury to the corporation may incidentally result in the depreciation or destruction of the value of the stock,'" and that "alleged shareholder injuries deriving from diminution of corporate assets" are "quintessentially remediable by shareholders only through a derivative action." Accordingly, "[c]ourts have repeatedly held that an allegation of diminution in the value of stock based on a breach of fiduciary duty gives rise to a derivative action only."

3 Radin, *supra*, at 3631–32 (footnotes omitted) (alterations in original); *accord Pan Pac. Retail Props. Inc. v. Gulf Ins. Co.*, 471 F.3d 961, 968 (9th Cir. 2006) (citing *Schuster v. Gardner*, 127 Cal. App. 4th 305, 312 (2005)) (California law). The rule is the same in Nevada:

> A derivative action is distinguishable from a direct action in two significant respects. First, a derivative action must be brought for injury to the corporation as opposed to injury to the stockholder. Injury to the corporation is often asserted in connection with alleged breaches of fiduciary duty by the directors or officers. Second, a successful derivative action results in a recovery by the corporation while a direct action results in a recovery by the stockholder.

Keith Paul Bishop, *Nevada Law of Corporations & Business Organizations* § 6.15, at 6-30 (1998). The Nevada Supreme Court has found claims analogous to the claims in this case to constitute derivative claims. In *Cohen v. Mirage Resorts, Inc.*, 62 P.3d 720 (Nev. 2003), the

1  Court noted that claims for "harm to the corporation, shared by all stockholders and not related
2  to an individual stockholder" are "derivative in nature." *See id.* at 733–34.  That is the type of
3  harm alleged here—that the directors issued (more accurately, that they may be preparing to
4  issue) shares of stock at below market value, thereby depriving the corporation of income and
5  depressing the price of the shareholders' stock as a general matter. *See Lochhead v. Alacano*, 662
6  F. Supp. 230, 232–33 (D. Utah 1987) (holding that plaintiff's action against former officers and
7  directors of a corporation in which plaintiff held stock was a derivative action, not a direct
8  action, where plaintiff alleged that "that defendants fraudulently issued to themselves options to
9  purchase [the corporation's] stock from the corporation at prices far below fair market value,
10 thereby diluting plaintiff's interest in the company without giving fair consideration").

11      Even if the present case were ripe, which it is not, it would be a derivative action
12 requiring a demand on the directors or a claim of futility.  The recovery in this case would inure
13 to the corporation itself via payment of the difference as a measure of damages by Defendants to
14 the corporation itself.  This harm to the corporation can be measured by comparing the market
15 value of the stock at the time of issuance to the actual issue price.  But Plaintiff would have no
16 way to measure his putative damages in this case in a direct action.  To do so, he would have to
17 prove what the price of his stock would be today if the directors had not made the contested
18 issuance, which is an impossibly speculative endeavor, especially where there has been no sale.

19      A plaintiff–shareholder may bring a direct action (or a class action) where the plaintiff
20 (or class) suffers an injury unlike the injury suffered by shareholders generally, in which case the
21 plaintiff's (or class's) injury is distinguishable from the injury suffered by the corporation itself.
22 3 Radin, *supra*, at 3634–37.  "In order to state a direct claim, the plaintiff must have suffered
23 some individualized harm not suffered by all of the stockholders at large." *Id.* at 3637 (quoting
24 *Feldman v. Cutaia*, 951 A.2d 727, 733 (Del. 2008)).  Plaintiff here does not allege any special
25 injury, but only an injury suffered by all shareholders in proportion to their interest in the

1  corporation. The Complaint is therefore derivative.[1]

2  Defendants noted at oral argument that there are currently five essentially identical suits
3  consolidated before a state court judge in Clark County, Nevada, and that counsel in the present
4  case informed the judge in the consolidated cases that they did not intend to pursue the present
5  federal case. Incidentally, another nearly identical case pending before this Court has been
6  voluntarily dismissed.

7  Defendants also argue that Plaintiff has not alleged that he has been personally injured in
8  an amount greater than $75,000, which is required for diversity jurisdiction. Plaintiff simply
9  claims to be a "shareholder" and a Michigan resident. (Compl. ¶ 8). Because the Complaint is in
10 fact derivative, and not a direct or class action, the law of diversity as it applies to derivative
11 complaints applies here. Defendants invoke the law of diversity as it applies to class actions and
12 note that a named plaintiff must himself satisfy the amount-in-controversy requirement.
13 However, "[i]n a stockholders' derivative action the corporation, not the complaining
14 shareholder, is the real party in interest, and the jurisdictional amount is measured by the damage
15 sustained by the corporation." *Bernstein v. Levinson*, 437 F.2d 756, 757 (4th Cir. 1971) (citing
16 *Koster v. (American) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 522 (1947)); *Cucci v. Edwards*,
17 510 F. Supp. 2d 479, 485 (C.D. Cal. 2007) (citing *Koster*, 330 U.S. at 523); *see also Troup v.*
18 *McCart*, 238 F.2d 289, 297 (5th Cir. 1957). Plaintiff therefore need only allege damage to
19 Harbin of more than $75,000. But he has not done so. He has simply alleged in conclusory
20 fashion that the stock is worth more than $24 per share, and that the proposed buyout would

---

[1] The second claim against Harbin for aiding and abetting the alleged breach of fiduciary duty is therefore legally unmeritorious on its face. A corporation cannot be directly liable for aiding and abetting the breach of a duty that is owed to itself. *Cf. In re Del-Mat Corp.*, 322 B.R. 781, 818 (Bankr. M.D. Tenn. 2005) (citing *Pepper v. Litton*, 308 U.S. 295, 307 (1939)) ("Actions for breach of fiduciary duties and for aiding and abetting breach of fiduciary duties . . . accrue to the corporation itself because fiduciary duties are owed to the corporation and it is the corporation that suffers injury when fiduciary duties are breached.").

1   therefore be unfair to Harbin. Harbin Electric, Inc. currently trades at 19.08 per share on the
2   NASDAQ exchange. *See* Harbin Electric, Inc., Yahoo! Finance (July 19, 2011, 12:59 PM),
3   http://finance.yahoo.com/q?s=HRBN&ql=0. The price has never exceeded $24 per share since
4   the Complaint was filed, and has only previously (and very briefly) exceeded $24 per share in
5   late 2007 and early 2010. *See id.* Since 2007, the price has fluctuated between $6 and $24 per
6   share, which would appear to make an issuance of stock at $24 per share well within the business
7   judgment of the board and fair even under a de novo review with no deference to the board's
8   judgment. But in any case, Plaintiff has not alleged what loss a $24 offer would cause to the
9   company.
10       Next, Defendants argue that the Securities Litigation Uniform Standards Act ("SLUSA"),
11  15 U.S.C. § 78bb(f)(3)(A)(i), provides no independent basis for original jurisdiction, but simply
12  provides when remand is and is not required in certain removed securities class actions. This is
13  correct. But even assuming there were an independent basis for original jurisdiction, SLUSA
14  only creates federal question jurisdiction over securities fraud claims of a type that Plaintiff does
15  not allege. Plaintiff does not claim to be a victim of securities fraud, but the victim of the
16  directors' breach of their fiduciary duty. Also, this is not a class action, but a derivative action.
17  SLUSA does not apply for this additional reason. Plaintiff filed a motion to amend to add a
18  securities fraud claim this morning immediately before the hearing, but the motion was not
19  scheduled for consideration at the hearing, and Defendants had no time to respond to it. In any
20  case, such amendment is futile, because, like the derivative claims here, a putative securities
21  fraud claim is unripe, as Plaintiff still does not allege any issuance of securities.
22       Next, Defendants argue that the controversy is not yet ripe because there is only a
23  proposal to sell stock, not an agreement or a completed sale. Defendants are correct.
24       Next, Defendants argue that Plaintiff has pleaded no facts sufficient to overcome the
25  business judgment rule. In Nevada, "[d]irectors and officers, in deciding upon matters of

1  business, are presumed to act in good faith, on an informed basis and with a view to the interests
2  of the corporation." Nev. Rev. Stat. § 78.138(3). Because the claim is unripe, the Court need not
3  consider this argument, although it appears $24 per share is a fair and reasonable price for the
4  stock.

5  Finally, Defendants argue that the Court should decline jurisdiction under *Colorado*
6  *River*. The Court need not address this argument. The present case is unripe, and if it were ripe
7  it would be a derivative action, not a direct action (either individual or class), and Defendants
8  would almost certainly be protected by the business judgment rule.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 4) is GRANTED and all other pending motions are DENIED.

IT IS FURTHER ORDERED that the Clerk shall enter judgment and close the case accordingly.

IT IS SO ORDERED.

Dated this 26th day of July, 2011.

_____
ROBERT C. JONES
United States District Judge